## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

WILLIAM DRUMMOND, individually   )
and on behalf of all others similarly   )
situated,   )
        )
     Plaintiff,   )    Civil Action File
        )    No. _____ 2:22-CV-174-RWS
v.   )
        )
SOUTHERN COMPANY SERVICES,   )
INC.; THE SOUTHERN COMPANY   )
PENSION PLAN; and THE BENEFITS   )
ADMINISTRATION COMMITTEE;   )
        )
     Defendants.   )

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff William Drummond, by and through his attorneys, on behalf of himself and all others similarly situated, and alleges the following:

## I.  NATURE OF THE ACTION

1.    This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), concerning Defendants' violations of ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the Southern Company Pension Plan (the "Plan").

2.    Plaintiff and the Classes (as defined below) are vested participants and/or beneficiaries of participants in the Plan, which denies them their full ERISA-

protected pension benefits. Specifically, Plaintiff and Class members receive pension benefits in the form of a joint and survivor annuity—a benefit that pays out a participant's annuity both for the participant's life and, once the participant dies, for the life of the participant's surviving spouse.

3.     In determining the amount of Plaintiff's and Class members' joint and survivor annuities, Defendants employed actuarial assumptions that are more than *70 years* out of date. Defendants employed outdated and unreasonable assumptions with respect to calculating the amount of Plaintiff's and Class members' joint and survivor annuities. As part of the calculation of Plaintiff's and Class members' joint and survivor annuities, Defendants deducted a charge for the qualified preretirement survivor annuity ("QPSA") benefit, which was directly applied to and reduced Plaintiff and Class members' joint and survivor annuities. As a result, Plaintiff and Class members have received and continue to receive less than the "actuarial equivalent" of their vested accrued benefit, contrary to ERISA.

4.     Generally, a participant's pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit to the participant for his entire life (*i.e.*, from the time he retires until his death). This is the default form of pension payment for an unmarried participant.

5.     For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." A joint and survivor annuity

provides the participant a payment stream for his own life, and then, if he has a surviving spouse when he dies, for the life of his spouse. 29 U.S.C. § 1055(a)-(d). The survivor annuity is expressed as a percentage of the benefit paid during the participant's life; typically, the surviving spouse will receive 50%, 75%, or 100% of the benefit the participant received.

6.      To calculate a married participant (and their spouse's) joint and survivor annuity, the Plan starts with the participant's single life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity. When the Plan makes that conversion, ERISA requires the joint and survivor annuity to be the "actuarial equivalent" of the single life annuity. 29 U.S.C. § 1055(d).

7.      Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of pension payments have the same economic value. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the mortality table accounts for the expected likelihood of that future payment being paid to the participant or their survivor based on the statistical life expectancy of a person at a given age.

8.      When plans make these actuarial conversions, several provisions of ERISA and the relevant regulations require that the employer in fact provide

participants a joint and survivor annuity with the same economic value as the single life annuity.

9.        First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).

10.        Second, ERISA requires that, if an employee's accrued benefit "is to be determined as an amount other than an annual benefit commencing at normal retirement age [of 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit." 29 U.S.C. § 1054(c)(3).

11.        Third, 29 U.S.C. § 1053(a) provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of their accrued benefit results in an illegal forfeiture of vested benefits.

12.        Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors." 26 CFR § 1.401(a)-11(b)(2).[1]

---

[1]  The Tax Code contains numerous provisions which correspond to ERISA; here the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

13.     The Plan violates each of these rules. When the Plan converts a single life annuity to a joint and survivor annuity, it uses mortality tables that are as much as 70 years out of date, despite massive increases in life expectancy in the intervening decades.

14.     On information and belief, the Plan uses similarly outdated mortality tables when calculating charges, including QPSA charges, for Class members.

15.     A QPSA is a death benefit paid in the form of a life annuity to the surviving spouse of a vested pension-plan participant who dies before retirement. Under the Treasury regulations, a tax-qualified plan (like the one at issue here) must provide a QPSA to all married participants unless the participant and spouse both consent in writing to waive the QPSA. Treasury regulations provide that a plan may impose a charge that "reasonably reflects the cost of providing the QPSA." 26 CFR § 1.401(a)-20 Q/A-21. Most plans, however, do not charge for QPSA benefits.

16.     Unlike most other pension plans, the Plan here imposed a charge for the QPSA in the form of a reduction to Plaintiff's and certain Class members' joint and survivor annuities. The QPSA charge thus reduced their joint and survivor annuities below the actuarial equivalent of their accrued benefits. The QPSA charge was also excessive and based on flawed actuarial assumptions.

17.     As a result of the Plan's use of outdated actuarial assumptions and/or imposition of unreasonable QPSA charges, Plaintiff and Class members who sought to ensure their spouse's financial well-being were required to sacrifice ERISA-protected pension benefits.

18.     The members of the Classes are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

19.     The Class members are additionally harmed by Defendants' disclosures because Class members did not receive accurate information that is mandated by law and thus made retirement decisions based on misimpressions about the value of benefits available to them and the reasonableness and actuarial equivalence of the Plan's actuarial assumptions.

20.     Plaintiff brings this action on behalf of the Classes pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's actuarial assumptions violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Classes; a declaration that the Plan's QPSA charges imposed against the QPSA Class's annuities are excessive and violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Classes; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members;

reformation of the Plan to provide for proper actuarial assumptions as to Class members; and recalculation of benefits for all Class members and payment to them of the amounts owed under an ERISA-compliant plan.

## II.  JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

22.     Defendant Southern Company Services, Inc. ("Southern" or "Southern Company") is a corporation organized and duly existing pursuant to the laws of the state of Alabama. Southern is qualified to do business in Georgia. Southern's registered agent in Georgia is Myra Bierria, 30 Ivan Allen Jr. Blvd, Atlanta, Fulton County, Georgia 30308. Southern may be served with the Summons and a photocopy of the Complaint upon said registered agent. This Court has personal jurisdiction over Southern because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

23.     This Court has personal jurisdiction over the Plan because it offers and pays pension benefits to participants and beneficiaries in this District, because

it is in part administered and managed from this District, and because ERISA provides for nationwide service of process.

24.     This Court has personal jurisdiction over the Benefits Administration Committee because it transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process.

25.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because Southern may be found in, employed Plaintiff and other Class members in, and otherwise does business in this District, and also because Plaintiff and many other Plan participants and Class members reside in this District. Venue is proper in this Division because Plaintiff resides in Blairsville, Georgia within this Division and receives his pension benefit payments in this Division, and because Southern has substantial operations in this Division.

### III.  PARTIES

**Plaintiff**

26.     **Plaintiff William Drummond** resides in Blairsville, Georgia, and is a participant in the Plan. He worked for Southern as a financial analyst, became vested and accrued benefits in the Plan, and left employment with the company before he retired. When Mr. Drummond retired, he elected the 100% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity.

His benefits were calculated and continue to be calculated based on actuarial assumptions that are more than 70 years out of date. Had Mr. Drummond's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), including without the excessive QPSA charge, his monthly and lifetime pension payments would be substantially higher. As a result, Plaintiff suffered and continues to suffer harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions and excessive QPSA charges to his pension.

**Defendants**

27.    **Southern Company Services, Inc.** ("Southern") is a gas and electric utility holding company based in the United States. It is one of the largest American utility companies. Southern is headquartered in Birmingham, Alabama according to its annual registration filing with Georgia's Secretary of State. Southern operates throughout the country. Southern has numerous employees in Georgia, including substantial offices in Atlanta, Georgia, and it conducts substantial operations in this District and Division.

28.    Southern is the "plan sponsor" for the Plan within the meaning of 29 U.S.C. § 1002(16)(B).

29.    Southern makes contributions to the Plan to fund retirement benefits promised under the Plan.

30.        **The Southern Company Pension Plan** (the "Plan") is a defined benefit plan within the meaning of 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

31.        Pursuant to 29 U.S.C. § 1102, the Plan was established and maintained pursuant to a written instrument known as a "Plan Document."

32.        The Plan was established on November 1, 1949 and has been amended from time to time thereafter.

33.        **The Benefits Administration Committee** is the Plan's "administrator" within the meaning of 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan. The Committee consists of individuals appointed by the Fiduciary Oversight Committee of Southern's Board of Directors.

34.        Under the Plan Document, the Benefits Administration Committee is and was a "named fiduciary" of the Plan at all relevant times within the meaning of 29 U.S.C. § 1102(a). As such, the Benefits Administration Committee had and has the authority to control and manage the operation and administration of the Plan.

35.        The Plan Document further provides that the Benefits Administration Committee has "exclusive discretionary authority" for "construing and interpreting the Plan" and "determining all questions affecting the amount of the

benefit payable" under the Plan. In addition, the Plan Document grants the Benefits Administration Committee the authority to amend or modify the Plan in order to comply with ERISA.

36.     Based on the Benefits Administration Committee's discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, the Benefits Administration Committee is also a Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(iii).

## IV.  LEGAL BACKGROUND

**A.    Actuarial Equivalence and Joint and Survivor Annuities.**

37.     Actuarial equivalence is a computation that is designed to ensure that, all else being equal, two (or more) forms of benefit payments have the same economic value as each other.

38.     Generally, an actuarial equivalence computation considers the expected longevity of a participant and their spouse, and an interest rate which reflects the time value of money through a reasonable rate of return based on current market conditions.

39.     To comply with ERISA, as well as to be considered a qualified plan under the Tax Code, a plan must comply with specified valuation rules. See 26 C.F.R. § 1.411(a)–11(a)(1).

40.      ERISA provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit." 29 U.S.C. § 1054(c)(3).

41.      ERISA defines "normal retirement age" as age 65, or younger if provided by the pension plan. 29 U.S.C. § 1002(24); *see also* 26 U.S.C. § 411(a)(8); 26 C.F.R. § 1.411(a)–7(b).

42.      This actuarial equivalence requirement set forth in 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision, 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm this actuarial equivalence rule. 26 C.F.R. § 1.411(c)-1(e) (referring to the "actuarial equivalen[ce]" of the participant's accrued benefit in conformance with Treasury regulations).

43.      In addition to the valuation rules referenced above, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan also must comply with certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a)(1).

44.      The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

45.     For a "qualified joint and survivor annuity," 29 U.S.C. § 1055(a) requires that pension plans offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." 29 U.S.C. § 1055(a)-(d).

46.     For unmarried participants, the single annuity for the life of the participant is deemed the "qualified joint and survivor annuity." 26 C.F.R. § 1.401(a)-20 Q/A-25.

47.     ERISA also provides that the joint and survivor annuity shall be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant") and § 417(g)(1)(B) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant").

48.     Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors . . . ." 26 C.F.R. § 1.401(a)-11(b)(2).

49.        Treasury regulations explain this means "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be *at least as valuable as any other optional form of benefit payable under the plan at the same time.*" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added).

**B.    Non-Forfeitability.**

50.        29 U.S.C. § 1053(a) sets forth "Nonforfeitability requirements" that provide that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age."

51.        The Treasury regulation that "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "*adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable.*" 26 C.F.R. § 1.411(a)-4(a) (emphasis added).

52.        Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

**C.    Qualified Pre-Retirement Survivor Annuities (QPSAs).**

53.        A pre-retirement survivor annuity, or QPSA, is a benefit provided to the surviving spouse when a vested pension plan participant dies before retirement.

54.      A QPSA qualifies under 29 U.S.C. § 1055(e) only if it provides the surviving spouse an annuity equal to the survivor annuity portion of the qualified joint and survivor annuity the participant would have been entitled to had he not died (or the actuarial equivalent thereof).

55.      As such, ERISA required the Plan to provide QPSA benefits that are actuarially equivalent to the "single annuity for the life of the participant" (*i.e.* the default form of benefit paid to unmarried participants). *See* 29 U.S.C. §§ 1055(e)(1)(A), (d)(1)(B).

56.      In effect, if a married plan participant dies before retiring, the QPSA benefit would provide a surviving spouse the survivor annuity payable under the QJSA at the time of the participant's death.

57.      As a result, a QPSA benefit that is not the "actuarial equivalent" of the "single annuity for the life of the participant" violates ERISA's spousal protections.

58.      A tax-qualified ERISA retirement plan must provide the QPSA to all married participants unless the participant and spouse both consent in writing to waive the QPSA. *See* 26 U.S.C. § 417(a).

59.      Plans must also provide participants with "a written explanation with respect to the qualified preretirement survivor annuity comparable to" the

disclosure required for a joint and survivor annuity. 26 U.S.C. § 417(a)(3)(B); *see also* 26 C.F.R. §§ 1.417(a)(3)-1.

60.     The Treasury has advised:

Once the participant is given the opportunity to waive the QPSA or the notice of the QPSA is later [sic], the plan may charge the participant for the cost of the QPSA. A charge for the QPSA that reasonably reflects the cost of providing the QPSA will not fail to satisfy [the Tax Code's minimum vesting standards, 26 U.S.C. § 411] even if it reduces the accrued benefit.

26 C.F.R. § 1.401(a)-20 Q/A-21. Thus, the regulations interpreting the QPSA requirements specify that, at a minimum, any charge must be reasonable.

61.     This is consistent with the Treasury's anti-forfeiture requirements that provide that "[c]ertain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions can result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a).

62.     Accordingly, any excessive or unreasonable QPSA charge that takes the form of a reduction directly against participants' joint and survivor annuities also causes an illegal forfeiture.

## V.  FACTUAL ALLEGATIONS

**A.    The Plan Employed Highly Outdated and Unreasonable Actuarial Assumptions in Determining Class Members' Benefits, Resulting in Significant Harm.**

63.     The Plan provides retirement benefits to substantially all employees of Southern Company and its affiliates following completion of one year

of service. As of the beginning of 2020, the Plan collectively had more than 56,000 participants and assets valued at approximately $16 billion.

64.     Under the Plan, a participant's normal retirement benefit is expressed as a single life annuity, meaning a series of monthly benefit payments beginning at retirement and continuing until a participant's death. This is the default form of payment for unmarried participants.

65.     For married participants, the default form of payment is a 50% joint and survivor annuity. That means the participant's surviving spouse receives 50% of whatever amount the participant received during his lifetime.

66.     ERISA plans are also required to provide participants the option of selecting a "Qualified Optional Survivor Annuity," which is an actuarially equivalent joint and survivor annuity that has a different survivor annuity percentage than the Plan's default option for married participants. 29 U.S.C. § 1055(d)(2).

67.     Accordingly, Plan participants may elect one of several optional forms of benefits, including a joint and survivor annuity that provides a survivor annuity ranging anywhere from 1% to 100% of the monthly benefit paid to the retiree.

68.     In certain circumstances, the spouse of a participant who dies before commencing retirement benefits is entitled to a "pre-retirement survivor annuity" (or QPSA) benefit. Under 29 U.S.C. § 1055(e), the pre-retirement survivor

annuity must provide the surviving spouse an annuity equal to the survivor annuity portion of the qualified joint and survivor annuity the participant would have been entitled to had he not died. Under the Plan, the qualified joint and survivor annuity is a 50% joint and survivor annuity, meaning that the surviving spouse receives 50% of the amount the participant would have received upon commencement of benefits.[2]

69.     The Plan permits participants to elect 50%, 75% and 100% joint and survivor annuities without spousal consent.

70.     Plaintiff Drummond and his spouse did not waive their right to a qualified joint and survivor annuity.

71.     For Plan participants who do not waive the QPSA benefit with the consent of their spouse and who later elect a joint and survivor annuity, the Plan imposes an excessive QPSA charge in the form of a reduction of the joint and survivor annuity. This QPSA charge is, on information and belief, based on the same outdated and erroneous actuarial assumptions that the Plan uses to calculate joint and survivor annuities.

72.     The Plan utilizes various outdated mortality tables to calculate Plan participants' benefits and QPSA charges.

---

[2]  Because the amount of the pre-retirement survivor annuity is a reflection of how the Plan calculates the joint and survivor annuity the participant would otherwise have received, references herein to the Plan's calculation of joint and survivor annuities also include and apply equally to the Plan's calculation of pre-retirement survivor annuities.

73.     For example, to determine the amount of the joint and survivor annuities for many participants, such as Mr. Drummond, as well as survivors of many participants who received a pre-retirement survivor annuity, the Plan utilized the following assumptions: "[F]ive percent (5%) interest per annum, compounded annually and the 1951 Group Annuity Mortality Table for males. The ages for all Employees under the above table shall be set back six (6) years and the ages for such Employees' spouses shall be set back one year."

74.     The Society of Actuaries is an actuarial professional organization that gathers and reviews mortality data for actuarial purposes. The Society periodically measures mortality experience among populations and prepares the predominant mortality trend analyses that are relied upon by insurers, pensions, and healthcare professionals, among others. These mortality trends are published in studies referred to as mortality tables.

75.     In 1951, the Society of Actuaries published the 1951 Group Annuity Mortality Table ("1951-GAM"). The 1951-GAM was a sex-specific table, meaning it was based on mortality data for males, with a five-year setback typically utilized to calculate female mortality. In preparing the 1951-GAM, the Society of Actuaries studied life experience during the years 1946 to 1950 among persons at or near retirement age (i.e., persons born in the late 1800s).

76.     The Society of Actuaries replaced the 1951-GAM with the 1971 Group Annuity Mortality Table ("1971-GAM"). They did so after a committee of the Society of Actuaries concluded that the 1951-GAM was materially out of date given the considerable reduction in mortality rates (meaning people were living significantly longer on average than the 1951-GAM table would predict). The 1971-GAM was developed utilizing mortality data ranging from 1964 to 1968.

77.     The Society of Actuaries replaced the 1971-GAM with the Unisex Pension (UP) – 1984 Mortality Table ("UP-1984"). This updated table was based on mortality experience data among non-insured private pensioners observed over the years 1965-1970. Because this data was compiled in an era when the American workforce was predominately male, only 20% of the mortality reflected in the UP-1984 Mortality Table is based on female employee experience. The UP-1984 Mortality Table was also based on a cross-section of "blue-collar" workers, who generally have decreased longevity compared to "white-collar workers."

78.     In 1995, the Society of Actuaries released a replacement table for the UP-1984 Mortality Table, called the Unisex Pension (UP) – 1994 ("UP-1994 Mortality Table"). It was developed by the Society of Actuaries to replace the UP-1984 Mortality Table after a study of 1985 mortality experience found mortality rates were between 82 percent and 86 percent of those expected under the UP-1984 Mortality Table (meaning people were living longer than expected).

79.     The Society of Actuaries has continued to update its published mortality tables to reflect steady long-term improvements in American's longevity resulting from changes in lifestyle and medical technology.

80.     The Plan, however, continues to utilize various outdated mortality assumptions when calculating joint and survivor benefits and QPSA charges for participants. For example, the Plan assumes many participants like Mr. Drummond are likely to die at the same rate as people born in the 1800s—*i.e.*, much sooner than recent actuarial experience data supports.

81.     As a result of the Plan's outdated mortality assumptions, the Plan did not and does not in fact pay to Class members the "actuarial equivalent" of their accrued benefit for joint and survivor annuities.

82.     The mortality tables employed by the Plan to calculate Plaintiff's and Class members' joint and survivor annuities are between 40 and 70 years out of date, despite dramatic increases in the longevity of the American public and of the population of workers. Those increases are reflected in the more accurate mortality tables provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department.

83.     Nonetheless, for Plaintiff and Class members who received a joint and survivor annuity, the Plan's actuarial assumptions are outdated, are unreasonable, and result in paying joint and survivor annuities that are less than the

actuarial equivalent value of Plaintiff's and Class members' single life annuity benefits.

84.     Indeed, the calculation of a joint and survivor annuity using reasonable mortality assumptions (for example, those prescribed by 26 U.S.C. § 417(e), which employ regularly updated assumptions published by the Treasury Department and reflecting the Society of Actuary's recent analyses), is substantially more favorable for Class members than the use of the Plan's outdated and unreasonable assumptions.

85.     Mr. Drummond retired at age 65 and elected a 100% joint and survivor annuity. The Plan calculated his joint and survivor annuity utilizing the modified 1951-GAM mortality table and 5% interest rate.[3]

86.     Had Mr. Drummond's joint and survivor annuity been calculated using reasonable actuarial assumptions, such as those the Treasury Department promulgates under 26 U.S.C. § 417(e), his monthly payment would be hundreds of dollars more than he is currently receiving.

87.     As part of its calculation of Mr. Drummond's joint and survivor annuity, Southern imposed a QPSA charge against Mr. Drummond's accrued benefit. That QPSA charge was a 0.875% per-year charge (starting at age 50 and

---

[3] Mr. Drummond received these calculations in a benefits package and elected his form of pension benefit within six years of the filing of this Complaint.

continuing until retirement) that was applied as a reduction to Mr. Drummond's joint and survivor annuity benefit by multiplying his accrued benefit by 0.86875 (100% - (0.875% x 15 years)). On information and belief, this charge, like Mr. Drummond's joint and survivor annuity, was also calculated utilizing the 1951-GAM and 5% interest rate.

88.    Because the Plan utilizes outdated, unreasonable, and inappropriate mortality assumptions, Mr. Drummond's QPSA charge was excessive and unreasonable, and his joint and survivor annuity was unlawfully reduced.

89.    By using severely outdated actuarial assumptions, the Plan dramatically overestimated the probability Mr. Drummond would pass in any given year and therefore overestimated the likelihood it would be providing Mr. Drummond's wife the statutorily required death benefit. A reasonable QPSA adjustment for Mr. Drummond based on appropriate and updated actuarial assumptions would, at most, be no more than approximately 0.3% per year rather than the 0.875% the Plan charged. By making an adjustment using the Plan's outdated and unreasonable actuarial factor, Mr. Drummond's accrued benefit was reduced by nearly 300% more than any reasonable actuarial assumption would support.

90.     Accordingly, the Plan's use of outdated mortality tables has reduced Mr. Drummond's joint and survivor annuity benefit below the actuarial equivalent of his single life annuity, resulting in a forfeiture of his accrued benefits.[4]

91.     The Plan's use of outdated mortality tables and excessive charges has also reduced Class members' joint and survivor annuities below the actuarial equivalent of their single life annuities, resulting in a forfeiture of their accrued benefits.

92.     These underpayments will reoccur in Plaintiff's and the Class members' monthly pension payments.

93.     In aggregate, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused (and will cause) Class members to lose millions of dollars in benefits.

94.      The Benefits Administration Committee, as the Plan's named fiduciary and plan administrator, was responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties required the Benefits Administration Committee to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

---

[4] Mr. Drummond is also the beneficiary of his spouse's pension benefit through the Plan, which, on information and belief, was also calculated utilizing outdated and unreasonable mortality assumptions.

95.     Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Benefits Administration Committee must act loyally and prudently to ensure that all participants are receiving the actuarial equivalent of their single life annuity. But, despite having authority under the Plan to provide actuarially equivalent benefits, the Benefits Administration Committee breached its fiduciary duties and instead calculated retirement benefits using the Plan's outdated and unreasonable assumptions, which penalize Plaintiff and Class members compared to those who are single at retirement and thus receive an (unreduced) single life annuity. That breach, in turn, allowed the entity that ultimately controls the Benefits Administration Committee, Southern Company, to save money by reducing the amount it had to contribute to the Plan to fund benefits.

96.     Moreover, Defendants failed to disclose to Plaintiff and Class members that they would receive less than the actuarial equivalent value of their accrued, vested pension benefit if they selected a joint and survivor annuity.

**B.     The Plan Uses Updated Actuarial Assumptions for Other Purposes.**

97.     For purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the

actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1083(h).

98.     Here, the Plan's minimum funding requirements were determined for 2020 using mortality assumptions from an updated 2019 mortality table that incorporates projected future mortality improvements based on present assumptions.

99.     As a publicly traded company, Southern must also disclose the present value of its pension benefit obligations ("PBO") to investors in SEC Filings.

100.    The actuarial assumptions Southern uses to calculate these disclosures must be reasonable in order for Southern to accurately report the size of its PBO to the market.

101.    Based on information and belief, Southern uses the same updated mortality assumptions to calculate its PBO as it uses to calculate its 29 U.S.C. § 1083(h) minimum funding obligation.

102.    Moreover, for individuals who elect to receive a lump sum payment in lieu of an annuity, the Plan applies the reasonable and regularly updated actuarial assumptions established pursuant to 26 U.S.C. § 417(e).

103.    In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements, SEC disclosures, cash balance joint and survivor annuity conversions, and lump sum payments assume significantly greater longevity than the Plan does when calculating participants' joint and survivor

annuities. The Plan therefore used different assumptions, regarding the same variables, to calculate ERISA funding requirements, SEC disclosures, and lump sum payments (using updated assumptions), from those it used to calculate QPSA charges and benefit reductions for joint and survivor annuities (using outdated assumptions).

104.    For Plaintiff and Class members—married participants that retained statutorily required spousal protections—the Plan continues to employ its outdated and unreasonable assumptions.

## C.    Defendants Misrepresented the Amount of Plaintiff and Class Members' ERISA-Protected Benefits, Reducing Southern's Funding Obligations and Expenses.

105.    ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 104 (2d Cir. 2020); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007).

106.    When participants are deciding when to retire and what form of benefit to elect, Treasury Regulations require plans to communicate the value of their pension options "in a manner that provides a meaningful comparison of the relative economic values of the two forms of benefit without the participant having

to make calculations using interest or mortality assumptions." 26 C.F.R.
§ 1.417(a)(3)-1(c)(2)(i).

107.    Treasury Regulations require that, when preparing these communications, plans use "a single set of interest and mortality assumptions that are reasonable and that are applied uniformly with respect to all such optional forms payable to the participant (regardless of whether those assumptions are actually used under the plan for purposes of determining benefit payments)." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B).

108.    Treasury regulations further permit plan administrators to compare the value of the QJSA and other optional forms of benefit "to the value of a QJSA for an unmarried participant (*i.e.*, a single life annuity), *but only if that same single life annuity is available to that married participant*." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(ii)(B).

109.    When deciding if and when to retire, and what form of benefit to elect, Plaintiff and the Class members relied upon the accuracy and sufficiency of information provided to them by Defendants to plan for retirement.

110.    Defendants provided information to Plaintiff and Class members concerning the amount of retirement benefits they would receive under various forms of retirement benefit.

111.     When communicating to Plaintiff and the Class members, Defendants compared the value of married participants' optional forms of benefit to a form of benefit Defendant called a "Single Life Annuity."

112.     However, the "Single Life Annuity" used for their comparison was *not* the "QJSA for an unmarried participant (*i.e.*, a single life annuity)," 26 C.F.R. § 1.417(a)(3)-1(c)(2)(ii)(B), and therefore was not a permissible basis for comparison.

113.     As a result of this impermissible comparison, Defendants overstated the relative value of Plaintiff and the Classes' qualified joint and survivor annuities and hid the magnitude of the actuarial adjustments made to their accrued benefits.

114.     Defendants did not disclose to Plaintiff and Class members the amount of pension benefit they would have been entitled to if Defendants had utilized reasonable actuarial equivalence assumptions required by ERISA.

115.     Defendants also failed to disclose to Plaintiff and Class members that the actuarial assumptions applied to determine their joint and survivor annuities resulted in pensions that were less than the actuarial equivalent value of the single life annuity available to unmarried participants when they retired.

116.     Thus, Plaintiff and Class members were forced to choose between improperly reduced joint and survivor annuities and forms of benefit that did not

necessarily meet their retirement needs, such as a single life annuity or single lump sum payment. Plaintiff and Class members sacrificed economic value by selecting the joint and survivor annuities, the full actuarial value of which is protected by ERISA but not disclosed or provided to Class members.

117.    These misrepresentations and failures to disclose material information prevented Plaintiff and Class members from adequately assessing what form of benefit to elect and how best to plan for their retirements.

118.    Southern financially benefitted by failing to disclose to Plaintiff and Class members that they were receiving less than the actuarially equivalent value of their ERISA-protected pensions.

119.    Southern in fact received and continues to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, which reduces Southern's funding obligations to the Plan.

**D.    Defendants Denied Plaintiff's Request for Relief on Behalf of the Plan.**

120.    Plaintiff, by and through his counsel, filed a request for relief on behalf of himself and the Plan pursuant to the Plan's administrative procedures.

121.    Southern responded "on behalf of the Southern Company Services Retirement Department," to which the Benefits Administration Committee delegated authority to review claims. Plaintiff's claim on behalf of himself and the Plan was denied in full.

122.     The letter denying Plaintiff's claims sets forth the Retirement Department's position that the Benefits Administration Committee had no choice but to follow the Plan's allegedly unlawful provisions incorporating the outdated mortality tables. Accordingly, given the Retirement Department's position (which is incorrect), any appeal or request for review of the denial by Plaintiff, and additional administrative claims on behalf of individual Class members, would be futile.

123.     Nevertheless, Plaintiff submitted a request for review of the denial of his claim. Plaintiff has not yet received a response to his request for review but anticipates his request for review will be denied shortly.

## VI.  CLASS ALLEGATIONS

124.     Plaintiff brings this action on behalf of himself and classes defined as follows:

**JSA Class**
All participants of the Plan (and their beneficiaries) who are receiving a joint and survivor annuity (or, for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity) through the Plan that is less than the value of the single life annuity available to unmarried participants, when converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

**QPSA Class**
All participants of the Plan (and their beneficiaries) whose accrued benefit was reduced by a QPSA charge that was greater in magnitude than a QPSA charge calculated using the interest rates and mortality table set forth in 26 U.S.C. § 417(e).

**A.    Numerosity.**

125.    The members of the Classes are so numerous that joinder of all members is impractical. To the best of Plaintiff's knowledge based on the available information, the Classes include thousands of individuals.

**B.    Commonality.**

126.    There are questions of law and fact common to the Classes and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.    Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to, and charges imposed upon, Class members violate the actuarial equivalence and other requirements of ERISA.

B.    Whether those assumptions and charges illegally caused Class members to forfeit their vested benefits.

C.    For the QPSA Class, whether the QPSA charge reduced Class members' joint and survivor annuities below the actuarial equivalent of their single life annuity benefits, or were unreasonable.

D.    Whether the Benefits Administration Committee violated its ERISA fiduciary duties of loyalty, of prudence, and to follow the Plan Document only if its terms are consistent with ERISA.

E.    Whether the Benefits Administration Committee should be enjoined from applying the outdated actuarial assumptions and charges to the Classes and instead be required to calculate benefits for Class members based on accurate and reasonable assumptions.

F.    Whether the Plan should be reformed to eliminate any actuarial assumptions or charges that reduce pension benefits paid or payable to Class members below the actuarial equivalent value of those benefits.

G.   Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent and reasonable value of their benefit.

## C.   Typicality.

127.    Plaintiff's claims are typical of the claims of the members of the Classes because they arise out of the same policies and practices as alleged herein, and all members of the Classes are affected by Defendants' wrongful conduct.

## D.   Adequacy.

128.    Plaintiff will fairly and adequately represent the Classes, and he has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests antagonistic to those of other members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

## E.   Rule 23(b)(1) Requirements.

129.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants.

130.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members who are non-

parties to the action, or would substantially impair or impede the ability of other members of the Classes to protect their interests.

**F.    Rule 23(b)(2) Requirements.**

131.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

132.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

**G.    Rule 23(b)(3) Requirements.**

133.    If the Classes are not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Classes predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include but are not limited to those listed above in Section VI.B.

134.      There are no difficulties in managing this case as a class action. A class action is the superior method for adjudicating Plaintiff and the Classes' claims.

## VII.  CAUSES OF ACTION

### COUNT I: Violation of the joint and survivor annuity requirement of 29 U.S.C. § 1055

### (ON BEHALF OF THE JSA CLASS against all Defendants)

135.      Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

136.      29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity," and 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

137.      Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan . . . determined[] on the basis of consistently applied reasonable actuarial factors." 26 C.F.R. § 1.401(a)-11(b)(2).

138.      In other words, ERISA and 29 U.S.C. § 1055(d) require that at the time a participant retires, if he takes his benefit as a joint and survivor annuity, the

value of the joint annuity must be no less the actuarial equivalent of the single life annuity available to an unmarried participant.

139.    As explained above, the actuarial assumptions applicable to Class members' joint and survivor annuities, including any QPSA charges applied to the annuities, reduced Plaintiff's and Class members' benefits to less than the actuarial equivalent value of their ERISA-protected benefits expressed as the single life annuity at the same retirement date.

140.    Thus, the Plan's actuarial assumptions for joint and survivor annuities applicable to Plaintiff and Class members violate 29 U.S.C. § 1055(a)-(d).

141.    29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

142.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the JSA Class seek all available and appropriate equitable relief against Defendants to redress the violations of 29 U.S.C. § 1055 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

143.    29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

144.     29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

145.     Pursuant to 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiff and the JSA Class seek all available and appropriate remedies against the Benefits Administration Committee to redress violations of 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer for Relief.

### COUNT II: Violation of the actuarial equivalence requirement of 29 U.S.C § 1054

### (ON BEHALF OF THE JSA CLASS against all Defendants)

146.     Plaintiff re-alleges and incorporate herein by reference all prior allegations in this Complaint.

147.     29 U.S.C. § 1054(c)(3) requires that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing

at normal retirement age [here 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit."[5]

148.    Relevant here, in determining the joint and survivor annuities for Class members, including any QPSA charge, the Plan applied actuarial assumptions that were unreasonable and inaccurate, resulting in the payment of less than the actuarial equivalent of Class members' single life annuities.

149.    29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

150.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer for Relief.

---

[5] Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if she takes her benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of the single life annuity payable at retirement, even if the participant retires early. *See* Count I, *supra*. Thus, Count I provides an independent claim from Count II, which is based on a comparison of the value of a participant's annuity on the date the participant retires to her annuity at normal retirement age, even if she retires early.

151.    29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

152.    29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

153.    Pursuant to 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiff and the JSA Class seek all available and appropriate remedies against Defendants to redress violations of 29 U.S.C. § 1054 described herein, including, but not limited to the relief set forth below in the Prayer for Relief.

## COUNT III: Violation of the anti-forfeiture rules of 29 U.S.C. § 1053

### (ON BEHALF OF THE JSA CLASS against all Defendants)

154.    Plaintiff re-alleges and incorporate herein by reference all prior allegations in this Complaint.

155.    29 U.S.C. § 1053(a) sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is nonforfeitable." The Treasury regulation that "defines the term

'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a).

156.    Thus, paying a participant less than the actuarial equivalent of his vested normal retirement benefit results in an illegal forfeiture of his vested benefits. 29 U.S.C. § 1053(a).

157.    As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities, including any QPSA charge, provided them with less than the actuarial equivalent of their ERISA-protected benefits.

158.    29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

159.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of 29 U.S.C. § 1054(a) described herein, including but not limited to the relief set forth below in the Prayer for Relief.

160.     29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

161.     29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

162.     Pursuant to 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff and the JSA Class seek all available and appropriate remedies against Defendants to redress violations of 29 U.S.C. § 1053 described herein, including, but not limited to the relief set forth below in the Prayer for Relief.

## COUNT IV: Breaches of fiduciary duty

### (ON BEHALF OF THE JSA CLASS against the Benefits Administration Committee)

163.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

164.     During all relevant times, the Benefits Administration Committee was a named fiduciary of the Plan and was responsible for paying benefits in

accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

165.    29 U.S.C. § 1104(a)(1)(A) requires the Benefits Administration Committee, as the plan administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Benefits Administration Committee to communicate with Plaintiff and other Plan participants honestly and accurately.

166.    29 U.S.C. § 1104(a)(1)(B) requires that the Benefits Administration Committee, as the plan administrator charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

167.    29 U.S.C. § 1104(a)(1)(D) requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

168.    The Benefits Administration Committee breached these fiduciary duties by, *inter alia*:

a)   Disloyally reducing Plaintiff's and Class members' pension benefits through application of inaccurate and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Plaintiff and Class members receiving less than the actuarial equivalent of their vested accrued benefit and; (ii) enabled Southern, as Plan Sponsor, to save money by reducing the amount it contributed and contributes to the Plan to fund benefits;

b)   Disloyally reducing Plaintiff's and Class members' pension benefits by using inaccurate and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which resulted in Plaintiff and Class members receiving less than the actuarial equivalent of their vested accrued benefit and enabled Southern, as Plan Sponsor, to increase profits by reducing its pension funding obligations to the Plan;

c)   Disloyally providing inaccurate and misleading information to Plaintiff and Class members by misrepresenting that the joint and survivor annuities paid by the Plan were the actuarial equivalent of their single life annuities and by failing to tell Plaintiff and Class members that the joint and survivor annuities—which are

the default option for married participants—are worth less than their single life annuities;

d)     Failing to act prudently when determining benefits owed to Plaintiff and Class members by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 1053, 1054, and 1055, which caused Plaintiff and Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Benefits Administration Committee's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

e)     Failing to update the unreasonable and inaccurate assumptions applied to Plaintiff's and Class members' benefits, despite having discretionary authority under the Plan's terms to update the assumptions; and

f)     Following Plan terms that violate ERISA (specifically 29 U.S.C. §§ 1053, 1054, and 1055), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit

and also results in participants forfeiting a portion of their vested accrued benefit.[6]

169.     As a direct and proximate result of these fiduciary breaches, Class members lost millions of dollars in vested accrued pension benefits.

170.     29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

171.     29 U.S.C. § 1109(a)provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

172.     Pursuant to 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff, on behalf of the Plan, seeks all available and appropriate remedies against the Benefits Administration Committee to redress and make good to the Plan all losses caused by

---

[6]  To be clear: each Count of this complaint sets forth actions that constitute a fiduciary breach (in addition to involving a statutory violation). For the sake of completeness, Plaintiff pleads this separate fiduciary breach Count that includes all of these breaches and others.

its violations of 29 U.S.C. § 1104, including but not limited to the relief to the Plan requested below in the Prayer for Relief.

173.    29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

174.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the JSA Class seek all available equitable relief against the Benefits Administration Committee to redress its violations of ERISA and 29 U.S.C. § 1104 and to provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer for Relief.

## COUNT V: Excessive QPSA charges

### (ON BEHALF OF THE QPSA CLASS against all Defendants)

175.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

176.    ERISA requires that the QPSA benefit offered to surviving beneficiaries be "not less than the amounts which would be payable as a survivor annuity under the qualified joint and survivor annuity under the plan (or the actuarial equivalent thereof)." 29 U.S.C. § 1055(e)(1)(A).

177.    The Treasury regulations interpreting ERISA's QPSA requirements specify that any charge for a QPSA benefit must be reasonable. 26 C.F.R. § 1.401(a)-20.

178.    Any QPSA charge applied to reduce a joint and survivor annuity benefit must, at minimum, reasonably reflect the actual cost of providing the QPSA utilizing accurate actuarial assumptions.

179.    Plaintiff and the QPSA Class's QPSA charges were excessive and based on outdated and inaccurate actuarial assumptions.

180.    Plaintiff and the QPSA Class also were not provided a sufficient "written explanation with respect to the qualified preretirement survivor annuity" as required under 26 U.S.C. § 417(a)(3)(B).

181.    The excessive and unreasonable QPSA charges, as applied to reduce Plaintiff's and the QPSA Class's joint and survivor annuities, additionally violate the following provisions of ERISA:

a)    29 U.S.C. § 1055(a)-(e), which provides that the qualified preretirement survivor annuity shall be "the actuarial equivalent of a single annuity for the life of the participant."

b)    29 U.S.C. § 1054(c)(3), which requires that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [here

65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit."

c)    29 U.S.C. § 1053(a), which provides that "an employee's right to his normal retirement benefit is non-forfeitable." (The Treasury regulation that "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable." 26 C.F.R. § 1.401(a)-14(c).)

d)    29 U.S.C. § 1104(a)(1), which requires, among other things, that plan fiduciaries act prudently and solely in the interest of plan participants and beneficiaries.

182.    As a direct and proximate result of these violations, the QPSA Class members lost millions of dollars in vested accrued pension benefits.

183.    29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

184.    29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets

of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

185.      Pursuant to 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff and the QPSA Class seek all available and appropriate remedies against Defendants to redress the QPSA-charge violations described herein, including, but not limited to the relief set forth below in the Prayer for Relief.

186.      29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

187.      Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the QPSA Class seek all available equitable relief against the Benefits Administration Committee to redress its violations of ERISA and provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer for Relief.

## VIII.  PRAYER FOR RELIEF

Plaintiff prays that judgment be entered against Defendants on all claims and seeks the following relief:

a)      A declaratory judgment that the Plan's actuarial assumptions and charges for joint and survivor annuities applicable to the Classes violate ERISA's

actuarial equivalence requirement set forth in 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at 29 U.S.C. § 1053(a).

b)    A declaratory judgment that the Plan's actuarial assumptions and charges for joint and survivor annuities applicable to the Classes violate ERISA's joint and survivor annuity requirements set forth in 29 U.S.C. § 1055(a)-(d).

c)    A declaratory judgment that the Plan's QPSA charges assessed against the QPSA Class members violate ERISA's actuarial equivalence requirement set forth in 29 U.S.C. § 1054(c)(3); ERISA's anti-forfeiture provision at 29 U.S.C. § 1053(a); and ERISA's joint and survivor annuity requirements set forth in 29 U.S.C. § 1055(a)-(e).

d)    A declaratory judgment that the Benefits Administration Committee breached its fiduciary duties in violation of 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participant in conformance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

e)    Reformation of the Plan: (i) to provide that Class members receive joint and survivor annuities that are the actuarial equivalent of single life annuities; (ii) to ensure that QPSA charges, if any, are reasonable and do not reduce Class members' joint and survivor annuities below the actuarial equivalent of single life annuities; (iii) to bring the Plan into full compliance with ERISA;

and (iv) to pay all benefits owed to Class members based on the reformed plan.

f)      An injunction ordering Defendants: (i) to accurately disclose to all Class members their optional forms of benefits as recalculated under the reformed plan, whether or not that individual has started collecting pension benefits; (ii) to eliminate and bar any future use of actuarial assumptions or charges that result in less than the actuarial equivalent value of the participant's single life annuity or accrued benefits at retirement; (iii) to bring the Plan into compliance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e); and (iv) to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

g)      An order requiring Defendants to provide an accounting of all prior payments of benefits to Class members under the Plan for which the outdated and inaccurate assumptions discussed herein were used to determine joint and survivor annuities, and to provide information to recalculate those payments to Class members in compliance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

h)      Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering

Defendants to pay future benefits in accordance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

i)   Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

j)   Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiff and other Class members in accordance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

k)   Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

l)   An order estopping Defendants from applying to the Class the actuarial assumptions and charges that violate 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

m)   Relief to the Plan from the Benefits Administration Committee for its violations of 29 U.S.C. § 1104, including a declaration that the actuarial assumptions and charges applied to Class members' joint and survivor annuities (including the QPSA charges) violate 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e); restoration of losses to the Plan and its participants caused by the Benefits Administration Committee's fiduciary

violations; disgorgement of any benefits and profits the Benefits Administration Committee received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Benefits Administration Committee to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(e).

n)      An award of pre-judgment interest on any amounts awarded to Plaintiff and the Classes pursuant to law.

o)      An award of Plaintiff's attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, 29 U.S.C. § 1132(g), and/or other applicable doctrine.

p)      An order awarding, declaring or otherwise providing Plaintiff and the Classes any other appropriate equitable relief under 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated: September 2, 2022

Respectfully submitted,

AUSTIN & SPARKS, P.C.

By:     */s/ John T. Sparks, Sr.*
John T. Sparks, Sr.
Georgia Bar No. 669575
2974 Lookout Place, N.E., Suite 200
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)
jsparks@austinsparks.com

Michelle C. Yau (*pro hac vice* forthcoming)
Daniel R. Sutter (*pro hac vice* forthcoming)
Eleanor Frisch (*pro hac vice* forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
efrisch@cohenmilstein.com

Peter K. Stris (*pro hac vice* forthcoming)
John Stokes (*pro hac vice* forthcoming)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
pstris@stris.com
jstokes@stris.com

Shaun P. Martin (*pro hac vice* forthcoming)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

Todd Jackson (*pro hac vice* forthcoming)
Nina Wasow (*pro hac vice* forthcoming)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

**Attorneys for Plaintiff**