## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM DRUMMOND and RICHARD ODOM, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action File No. 2:22-CV-00174-SCJ |
| v. | ) ) | |
| SOUTHERN COMPANY SERVICES, INC.; THE SOUTHERN COMPANY PENSION PLAN; and THE BENEFITS ADMINISTRATION COMMITTEE; | ) ) ) ) ) ) | |
| Defendants. | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs William Drummond and Richard Odom, by and through their attorneys, on behalf of themselves and all others similarly situated, and allege the following:

## I.  SUMMARY OF THE ACTION

1.      Plaintiffs and the Classes (as defined below) are vested participants and/or beneficiaries of participants in the Company Pension Plan (the "Plan"), which denies them their full ERISA-protected pension benefits.[1] Specifically, Plaintiffs and

---

[1] ERISA refers to the Employee Retirement Income Security Act of 1974.

many Class members receive pension benefits in the form of a joint and survivor annuity—a benefit that pays out a participant's annuity both for the participant's life and, once the participant dies, for the life of the participant's surviving spouse. In determining the amount of Plaintiffs' and Class members' joint and survivor annuities, Defendant Southern Company Services, Inc. ("Southern" or "Southern Company") and Defendant the Benefits Administration Committee employed actuarial assumptions that are as much as *70 years* out of date.

2.      As part of their benefits calculations, Defendants[2] also deducted an excessive and illegal charge for the qualified pre-retirement survivor annuity ("QPSA") benefit, which was applied to and reduced Plaintiffs' and many QPSA Class members' joint and survivor annuities as well as certain QPSA Class members' single life annuities. In determining the amount of Plaintiffs' and the QPSA Class members' QPSA charges, Defendants again made these reductions based on actuarial assumptions that are as much as 70 years out of date.

---

[2] References to "Defendants" hereinafter refer specifically to Southern and the Benefits Administration Committee unless otherwise stated. The Plan is a nominal Defendant and is only included to ensure that complete relief may be granted.

3.     As a result, Plaintiffs and Class members have received and continue to receive less than the actuarial equivalent of their vested accrued benefit, contrary to ERISA.

4.     Generally, a participant's pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit solely to the participant for his entire life (*i.e.*, from the time he retires until his death). This is the default form of pension payment for an unmarried participant.

5.     For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." A joint and survivor annuity provides the participant a payment stream for his own life, and then, if he has a surviving spouse when he dies, for the life of his spouse. 29 U.S.C. § 1055(a)-(d). The survivor annuity is expressed as a percentage of the benefit paid during the participant's life; typically, the surviving spouse will receive 50%, 75%, or 100% of the benefit the participant received.

6.     A pre-retirement survivor annuity, or QPSA, is a death benefit paid in the form of a life annuity to the surviving spouse of a vested pension-plan participant who dies before retirement. *See* 29 U.S.C. § 1055(a)(2). A tax-qualified ERISA plan (like the one at issue here) must provide a QPSA to all married participants unless

3

the participant and spouse both consent in writing to waive the QPSA. *See* 26 U.S.C. § 417(a).

7.    To calculate a married participant's (and their spouse's) annuity, the Plan starts with the participant's accrued benefit, then (absent a QPSA waiver) applies a QPSA charge based on unreasonable actuarial assumptions to create a reduced single life annuity, and then converts that reduced single life annuity into a joint and survivor annuity, again utilizing unreasonable actuarial assumptions.

8.    When the Plan makes those conversions, ERISA requires the joint and survivor annuity to be the "actuarial equivalent" of "a single annuity for the life of the participant," 29 U.S.C. § 1055(d), and prohibits any QPSA charge in excess of reasonable actuarial reductions to a participant's accrued benefit, *see* 29 U.S.C. § 1053(a); 26 C.F.R. § 1.411(a)-4(a).

9.    Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of pension payments have the same economic value. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time value of money, while a mortality table accounts for the expected likelihood of that payment being paid to

the participant or their survivor based on the statistical life expectancy of a person at a given age.

10.     When plans make these actuarial conversions, multiple provisions of ERISA and the relevant regulations require that the employer in fact provide participants with a joint and survivor annuity that has the same economic value as the single life annuity their unmarried counterparts would receive. As explained above, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii). Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors . . . ." 26 C.F.R. § 1.401(a)-11(b)(2).[3] The Treasury regulations also make clear that any deduction in excess of reasonable actuarial assumptions is an illegal forfeiture of vested benefits. 26 C.F.R. § 1.411(a)-4(a).

11.     Additionally, multiple provisions of ERISA and the relevant regulations require that any QPSA reduction result in a benefit with the same

---

[3]  The Tax Code contains numerous provisions which correspond to ERISA; here, the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

economic value as the accrued benefit—i.e., the unreduced single life annuity an unmarried participant receives. 29 U.S.C. § 1053(a) provides that an employee's right to their normal retirement benefit (i.e., their accrued benefit) is non-forfeitable and, as explained above, the Treasury regulations make clear that any deduction in excess of reasonable actuarial assumptions is an illegal forfeiture of the accrued benefits. 26 C.F.R. § 1.411(a)-4(a); *see also* 26 C.F.R. § 1.401(a)-20 Q/A-21.

12.     The Plan violates each of these rules. When the Plan applies a QPSA charge to a participant's normal retirement benefit or converts a single life annuity to a joint and survivor annuity, it relies on mortality assumptions that are as much as 70 years out of date, despite massive increases in life expectancy in the intervening decades.

13.     The members of the Classes are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA. The Class members are additionally harmed by the Benefit Administration Committee's disclosures because Class members did not receive the accurate information that is mandated by law and thus made retirement decisions based on misimpressions about the value of benefits available to them and the reasonableness and actuarial equivalence of the Plan's actuarial methodology.

## II.  JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

15.    Defendant Southern is a corporation organized and duly existing pursuant to the laws of the state of Alabama. Southern is qualified to do business in Georgia. Southern's registered agent in Georgia is Myra Bierria, 30 Ivan Allen Jr. Blvd, Atlanta, Fulton County, Georgia 30308. This Court has personal jurisdiction over Southern because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

16.    This Court has personal jurisdiction over the Plan because it offers and pays pension benefits to participants and beneficiaries in this District, because it is in part administered and managed from this District, and because ERISA provides for nationwide service of process. This Court similarly has personal jurisdiction over the Benefits Administration Committee because it transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process.

17.    Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because Southern may be found in, employed Plaintiff Drummond and other Class members in, and otherwise does business in this District, and also because Plaintiff Drummond and many other Plan participants and Class members reside in this District. Venue is proper in this Division because Plaintiff Drummond resides in Blairsville, Georgia within this Division and receives his pension benefit payments in this Division, and because Southern has substantial operations in this Division.

## III.  THE PARTIES AND INTERNAL EXHAUSTION

18.    **Plaintiff William Drummond** resides in Blairsville, Georgia and is a participant in the Plan. He worked for Southern as a financial analyst, became vested and accrued benefits in the Plan, and left employment with the company before he retired. When Mr. Drummond retired at age 65, he elected the 100% joint and survivor annuity offered by the Plan. Mr. Drummond received his benefit calculations in a benefits package and elected his form of pension benefit within six years of the filing of this action. His benefits were calculated and continue to be calculated based on inaccurate actuarial assumptions that are decades out of date. Specifically, the Plan calculated his joint and survivor annuity utilizing the modified 1951 Group Annuity Mortality Table ("1951-GAM") and a 5% interest rate. That calculation included a QPSA reduction that, on information and belief, was also

based on the modified 1951-GAM. Had Mr. Drummond's benefits been determined using reasonable actuarial assumptions and reasonable mortality assumptions (such as those set forth in 26 U.S.C. § 417(e)) to calculate the QPSA reduction to his benefits, his monthly and lifetime pension payments in the form of a 100% JSA would be substantially higher. As a result, Plaintiff Drummond suffered and continues to suffer harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions.[4]

19.    **Plaintiff Richard Odom** resides in Pleasant Grove, Alabama and is a participant in the Plan. He worked for Alabama Power as a Protection and Control Field Services Technician, became vested and accrued benefits in the Plan, and left employment with the company upon retirement at age 65. He began receiving benefits on or around April 1, 2018. When Mr. Odom retired, he elected the 50% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity. Mr. Odom received these calculations in a benefits package and elected his form of pension benefit within six years of the filing of this action. His benefits were calculated and continue to be calculated based on form factor tables that do not

---

[4] Mr. Drummond is also the beneficiary of his spouse's pension benefit through the Plan, which, on information and belief, was also calculated utilizing outdated and unreasonable mortality assumptions.

reflect reasonable actuarial assumptions or modern mortality expectations. On information and belief, the tables applied to determine Mr. Odom's pension benefits are based on outdated and unreasonable mortality and/or interest rate assumptions. Had Mr. Odom's benefits been determined using reasonable actuarial assumptions and reasonable mortality assumptions (such as those set forth in 26 U.S.C. § 417(e)) to calculate the QPSA reduction to his benefits, his monthly and lifetime pension payments would be substantially higher. His monthly and lifetime pension payments also would have been substantially higher if reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e)) had been used to calculate the conversion from his reduced single life annuity to his JSA. Plaintiff Odom suffered and continues to suffer harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions.

20.   **Southern Company Services, Inc.** ("Southern") is a gas and electric utility holding company based in the United States. It is one of the largest American utility companies. Southern is headquartered in Birmingham, Alabama according to its annual registration filing with Georgia's Secretary of State. Southern operates throughout the country. Southern has numerous employees in Georgia, including substantial offices in Atlanta, Georgia, and it conducts substantial operations in this District and Division. Southern is the "plan sponsor" for the Plan within the meaning

of 29 U.S.C. § 1002(16)(B). Southern makes contributions to the Plan to fund retirement benefits promised under the Plan.

21.     **The Southern Company Pension Plan** (the "Plan") is a defined benefit plan within the meaning of 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted. The Plan was established on November 1, 1949 and has been amended from time to time thereafter. Pursuant to 29 U.S.C. § 1102, the Plan was "established and maintained pursuant to a written instrument" known as a "Plan Document." The Plan provides retirement benefits to substantially all employees of Southern Company and its affiliates following completion of one year of service. As of the beginning of 2020, the Plan collectively had more than 56,000 participants and assets valued at approximately $16 billion.

22.     **The Benefits Administration Committee** is the Plan's "administrator" within the meaning of 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan. The Committee consists of individuals appointed by the Fiduciary Oversight Committee of Southern's Board of Directors.

23.     Plaintiff Drummond, by and through his counsel, filed a request for relief on behalf of himself and the Plan pursuant to the Plan's administrative procedures. Southern responded "on behalf of the Southern Company Services

Retirement Department," to which the Benefits Administration Committee delegated authority to review claims. Plaintiff Drummond's claim on behalf of himself and the Plan was denied in full. The letter denying Plaintiff Drummond's claims sets forth the Retirement Department's position that the Benefits Administration Committee had no choice but to follow the Plan's unlawful provisions incorporating the outdated mortality tables. Accordingly, given the Retirement Department's position (which is incorrect), any appeal or request for review of the denial by Plaintiff Drummond, and additional administrative claims on behalf of individual Class members, would be futile.

24.      Nevertheless, Plaintiff Drummond submitted a request for review of the denial of his claim. That request for review was also denied.

25.      Plaintiff Odom, by and through his counsel, also filed a request for relief on behalf of himself and the Plan pursuant to the Plan's administrative procedures. Plaintiff Odom's claim on behalf of himself and the Plan was, like Drummond's, denied in full. Plaintiff Odom then submitted a request for review of the denial of his claim. That request for review was also denied. Both Plaintiffs have thus fully exhausted their administrative remedies on behalf of themselves and the Classes.

## IV.  CLASS ALLEGATIONS

26.    Plaintiff Odom brings this action on behalf of himself and a class defined as follows:

**JSA Class**
All participants of the Plan (and their beneficiaries) who are receiving a joint and survivor annuity (or, for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity) through the Plan that is less than the value of the single life annuity when converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

27.    Plaintiff Drummond and Plaintiff Odom bring this action on behalf of themselves and a class defined as follows:

**QPSA Class**
All participants of the Plan (and their beneficiaries) whose accrued benefit was reduced by a QPSA charge that was greater in magnitude than a QPSA charge calculated using the interest rates and mortality table set forth in 26 U.S.C. § 417(e).

## A.    Rule 23(a) Requirements.

28.    The members of the Classes are so numerous that joinder of all members is impractical. To the best of Plaintiffs' knowledge based on the available information, each of the Classes includes thousands of individuals.

29.    There are questions of law and fact common to the Classes, and these questions predominate over questions that only affect individual Class members. Common legal and factual questions include, but are not limited to:

A.   Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to, and charges imposed upon, Class members violate the actuarial equivalence and other requirements of ERISA;

B.   Whether those assumptions and charges illegally caused Class members to forfeit their vested benefits;

C.   For the QPSA Class, whether the QPSA charge imposed an unreasonable actuarial reduction on their normal retirement benefits;

D.   Whether the Benefits Administration Committee violated its ERISA fiduciary duties of loyalty, of prudence, and to follow the Plan Document only if its terms are consistent with ERISA;

E.   Whether the Benefits Administration Committee should be enjoined from applying the outdated and unreasonable actuarial assumptions and charges to the Classes and instead be required to calculate benefits for Class members based on accurate and reasonable assumptions;

F.   Whether the Plan should be reformed to eliminate any actuarial assumptions or charges that reduce pension benefits paid or payable to Class members below the actuarial equivalent value of those benefits;

G.   Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent and reasonable value of their benefit.

30.   Plaintiffs' claims are typical of the claims of the members of the Classes because they arise out of the same policies and practices as alleged herein, and all members of the Classes are affected by Defendants' wrongful conduct.

31.   Plaintiffs will fairly and adequately represent the Classes, and they have retained Counsel experienced and competent in the prosecution of ERISA class

actions. Plaintiffs have no interests antagonistic to those of other members of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

**B.     Rule 23(b) Requirements.**

32.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants. The requirements of Rule 23(b)(1)(B) are independently satisfied because adjudications of these claims by individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members who are non-parties to the action or would substantially impair or impede the ability of other members of the Classes to protect their interests.

33.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

34.     If the Classes are not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Classes predominate over any questions affecting only individual

members. The common issues of law or fact that predominate over any questions affecting only individual members include, but are not limited to, those listed above in Section IV.A. Further, there are no difficulties in managing this case as a class action, and a class action is the superior method for adjudicating Plaintiffs' and the Classes' claims.

## V.  CAUSES OF ACTION

**COUNT I: Violations of, *inter alia*, 29 U.S.C. § 1055 Stemming from the JSA Conversion**

**(BY PLAINTIFF ODOM ON BEHALF OF THE JSA CLASS AGAINST SOUTHERN COMPANY SERVICES, INC. and THE BENEFITS ADMINISTRATION COMMITTEE)**

35.    ERISA plans are required to provide participants with a "Qualified Joint and Survivor Annuity," which is an actuarially equivalent annuity "for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse." 29 U.S.C. § 1055(d)(1). A "Qualified Joint and Survivor Annuity" also includes "any annuity in a form having the effect of" such an annuity. *Id.* For unmarried participants, the default form of benefit is the single annuity for the life of that participant. *See* 26 C.F.R. § 1.401(a) 20 Q/A-25.

36.     ERISA plans are also required to provide participants the option of selecting a "Qualified Optional Survivor Annuity," which is an actuarially equivalent joint and survivor annuity that has a different survivor annuity percentage than the Plan's default option for married participants. 29 U.S.C. § 1055(d)(2).

37.     Plaintiff Odom and his spouse did not waive their right to a qualified joint and survivor annuity.

38.     Under the Plan, a participant's normal retirement benefit is expressed as a single life annuity, meaning a series of monthly benefit payments beginning at retirement and continuing until a participant's death. This is the default form of payment for unmarried participants.

39.     Under the Plan, for married participants, the default form of payment is a 50% joint and survivor annuity, which is the qualified joint and survivor annuity. That means the participant's surviving spouse receives 50% of whatever amount the participant would have received during his lifetime upon commencement of benefits.

40.     The Plan permits participants to elect 50%, 75%, and 100% joint and survivor annuities without spousal consent. Accordingly, Plaintiff Odom had the ability to elect JSA benefits with survivor annuity percentages of 50%, 75%, or 100%. Plaintiff Odom elected the 50% JSA benefit—a qualified joint and survivor annuity under the Plan.

17

41.     To comply with ERISA, as well as to be considered a qualified plan under the Tax Code, a plan must comply with specified valuation rules. *See* 26 C.F.R. § 1.411(a)-11(a)(1). In addition to these valuation rules, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan also must comply with certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a).

42.     The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

43.     ERISA provides that a joint and survivor annuity shall be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii). This requirement is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant") and § 417(g)(1)(B) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant").

44.     Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity must be at least the

actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors . . . ." 26 C.F.R. § 1.401(a)-11(b)(2). Treasury regulations explain that "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be at least as valuable as any other optional form of benefit payable under the plan at the same time." 26 C.F.R. § 1.401(a)-20 Q/A-16.

45.    In other words, ERISA and 29 U.S.C. § 1055(d) require that, at the time a participant retires, if he takes his benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of the single life annuity available to a similarly situated *unmarried participant*.

46.    A QPSA benefit, or pre-retirement death benefit, must also provide the surviving spouse with the "actuarial equivalent" of the qualified joint and survivor annuity, 29 U.S.C. § 1055(e), which itself in turn must be the actuarial equivalent of "a single annuity for the life of the participant," 29 U.S.C. § 1055(d). Accordingly, a QPSA benefit, like other forms of joint and survivor annuities, must be the actuarial equivalent of "a single annuity for the life of the participant."[5]

_____

[5] Because the amount of the pre-retirement survivor annuity is a reflection of how the Plan calculates the joint and survivor annuity the participant would otherwise

47.    The Society of Actuaries is an actuarial professional organization that gathers and reviews mortality data for actuarial purposes. The Society periodically measures mortality experience among populations and prepares the predominant mortality trend analyses that are relied upon by insurers, pensions, and healthcare professionals, among others. These mortality trends are published in studies referred to as mortality tables.

48.    In 1951, the Society of Actuaries published the 1951-GAM. The 1951-GAM was a sex-specific table, meaning it was based on mortality data for males, with a five-year setback typically utilized to calculate female mortality. In preparing the 1951-GAM, the Society of Actuaries studied life expectancy during the years 1946 to 1950 among persons at or near retirement age (i.e., persons born in the late 1800s).

49.    The Society of Actuaries replaced the 1951-GAM with the 1971 Group Annuity Mortality Table ("1971-GAM"). They did so after a committee of the Society of Actuaries concluded that the 1951-GAM was materially out of date given the considerable reduction in mortality rates (meaning people were living

---

have received, references herein to the Plan's calculation of joint and survivor annuities also include and apply equally to the Plan's calculation of pre-retirement survivor annuities.

significantly longer on average than the 1951-GAM table would predict). The 1971-GAM was developed utilizing mortality data ranging from 1964 to 1968.

50.     The Society of Actuaries replaced the 1971-GAM with the Unisex Pension (UP) – 1984 Mortality Table ("UP-1984"). This updated table was based on mortality experience data among non-insured private pensioners observed over the years 1965-1970. Because this data was compiled in an era when the American workforce was predominately male, only 20% of the mortality reflected in the UP-1984 Mortality Table is based on female employee experience. The UP-1984 Mortality Table was also based on a cross-section of "blue-collar" workers, who generally have decreased longevity compared to "white-collar workers."

51.     In 1995, the Society of Actuaries released a replacement table for the UP-1984 Mortality Table, called the Unisex Pension (UP) – 1994 ("UP-1994 Mortality Table"). It was developed by the Society of Actuaries to replace the UP-1984 Mortality Table after a study of 1985 mortality experience found mortality rates were between 82 and 86 percent of those expected under the UP-1984 Mortality Table (meaning people were living longer than expected).

52.     The Society of Actuaries has continued to update its published mortality tables to reflect steady long-term improvements in American's longevity resulting from changes in lifestyle and medical technology.

21

53.    The Plan, however, continues to utilize various outdated mortality assumptions when converting a participant's single life annuity to a joint and survivor benefit. For example, to determine the amount of the joint and survivor annuities for many participants, such as Mr. Drummond, as well as survivors of many participants who received a pre-retirement survivor annuity, the Plan utilized the following assumptions: "five percent (5%) interest per annum, compounded annually and the 1951 Group Annuity Mortality Table for males. The ages for all Employees under the above table shall be set back six (6) years and the ages for such Employees' spouses shall be set back one year." The Plan thus assumes many participants and beneficiaries are likely to die at the same rate as people born in the 1800s—i.e., much sooner than recent actuarial experience data supports. The Plan also contains form factor tables, such as those applied to Mr. Odom, that do not reflect current mortality estimates and are therefore based on outdated and unreasonable mortality assumptions. Indeed, Mr. Odom's JSA conversion resulted in a benefit below what he would have received even if calculated under the extremely outdated 1951-GAM-based assumptions specified in the Plan.

54.    The Plan's administrators knew that the actuarial community had adopted updated actuarial assumptions that reflect increased longevity. For purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the

determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1083(h).

55.    Here, the Plan's minimum funding requirements were determined for 2020 using mortality assumptions from an updated 2019 mortality table that incorporates projected future mortality improvements based on present assumptions.

56.    As a publicly traded company, Southern must also disclose the present value of its pension benefit obligations ("PBO") to investors in SEC Filings. The actuarial assumptions Southern uses to calculate these disclosures must be reasonable in order for Southern to accurately report the size of its PBO to the market. Based on information and belief, Southern uses the same updated mortality assumptions to calculate its PBO as it uses to calculate its 29 U.S.C. § 1083(h) minimum funding obligation.

57.    Moreover, for individuals who elect to receive a lump sum payment in lieu of an annuity, the Plan applies the reasonable and regularly updated actuarial assumptions established pursuant to 26 U.S.C. § 417(e).

58.    In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements, SEC disclosures, cash balance joint and survivor annuity conversions, and lump sum payments assume significantly greater longevity than the Plan does when calculating participants' joint and survivor annuities. Meanwhile, the Plan used different assumptions regarding the same variables to calculate ERISA funding requirements, SEC disclosures, and lump sum payments (using updated assumptions) from those it used to calculate the conversion of the reduced single life annuity to a joint and survivor annuity (which used outdated assumptions).

59.    Nonetheless, for Plaintiffs and Class members—married participants that retained statutorily required spousal protections—the Plan continues to employ its outdated and unreasonable assumptions.

60.    Mr. Odom elected a 50% joint and survivor annuity, and 29 U.S.C § 1055(d)(1)(B) requires that this annuity be "the actuarial equivalent of a single life annuity for the life of the participant." The Plan calculated his joint and survivor annuity utilizing mortality Table F1-A in Appendix C of the document governing the Plan. Table F1-A is unreasonable, does not reflect current mortality expectations, and is outdated. Absent the provision of (or charges for) any spousal annuities, Mr. Odom was entitled under the Plan to a single life annuity for his life of

$3588.65/month. Defendants nonetheless are paying him a 50% JSA that is only $2899.12/month, a figure that is substantially less than the actuarial equivalent of a single life annuity for the life of the participant.

61.    Had Mr. Odom's joint and survivor annuity been calculated using reasonable actuarial assumptions, such as those the Treasury Department promulgates under 26 U.S.C. § 417(e), his monthly payment for his 50% JSA would be significantly more than he is currently receiving. This is true also if you ignore the unreasonable actuarial reduction caused by the Plan's QSPA charge. Namely, had Mr. Odom's reduced single life annuity been converted to a 50% JSA using the reasonable actuarial assumptions prescribed by § 417(e), his monthly payment would be approximately 1% higher. This monthly underpayment will have a lifetime impact of over $4,000 on Mr. Odom.

62.    The mortality tables employed by the Plan to calculate Plaintiff Odom's and the JSA Class members' joint and survivor annuities are unreasonable or outdated—often between 40 and 70 years out of date—despite dramatic increases in the longevity of the American public and of the population of workers. Those increases are reflected in the more accurate mortality tables provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department through 26 U.S.C. § 417(e).

63.     Indeed, the calculation of a joint and survivor annuity using reasonable mortality assumptions (for example, those prescribed by 26 U.S.C. § 417(e), which employs regularly updated assumptions published by the Treasury Department which reflect the Society of Actuary's recent analyses), is substantially more favorable for the JSA Class members than the use of the Plan's outdated and unreasonable assumptions.

64.     As a result of the Plan's outdated and unreasonable mortality assumptions, the Plan did not and does not in fact pay to Plaintiff Odom and the JSA Class members the "actuarial equivalent" of their single life annuities, in violation of 29 U.S.C. § 1055(a)-(e). The actuarial assumptions applied to convert Plaintiff Odom's and JSA Class members' benefits to joint and survivor annuities reduced Plaintiff Odom's and JSA Class members' benefits to less than the actuarial equivalent value of their ERISA-protected benefits expressed as the single life annuity at the same retirement date.[6]

---

[6] The combination of the interest rate and mortality assumptions will determine, in the aggregate, whether the joint and survivor annuity is actuarially equivalent to the single life annuity. Here, to be clear, the assumptions the Plan employs to calculate Plaintiff Odom and the JSA Class members' pension benefits are unreasonable and do not provide actuarially equivalent benefits in the aggregate—i.e., when factoring in both the interest rate and the mortality table.

65.    In the aggregate, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused (and will cause) JSA Class members to lose millions of dollars in benefits.

66.    These underpayments will reoccur in Plaintiff Odom's and the JSA Class members' monthly pension payments.

67.    During all relevant times, the Benefits Administration Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

68.    29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff Odom and the JSA Class seek all available and appropriate equitable relief against Defendants Southern and the Benefits Administration Committee to redress the violations of 29 U.S.C. § 1055 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

69.     29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

70.     Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a), Plaintiff Odom and the JSA Class seek all available and appropriate remedies against Defendant the Benefits Administration Committee to redress violations of 29 U.S.C. § 1055 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

### COUNT II: Violations of the Anti-Forfeiture Rules of 29 U.S.C. § 1053 Stemming from the JSA Conversion

### (BY PLAINTIFF ODOM ON BEHALF OF THE JSA CLASS AGAINST SOUTHERN COMPANY SERVICES, INC. and THE BENEFITS ADMINISTRATION COMMITTEE)

71.     29 U.S.C. § 1053(a) sets forth "Nonforfeitability requirements" that provide that "an employee's right to his normal retirement benefit is nonforfeitable

upon the attainment of normal retirement age . . . ." The Treasury regulation that "defines the term 'nonforfeitable' for purposes of these [nonforfeitability] requirements" states that "*adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable.*" 26 C.F.R. § 1.411(a)-4(a) (emphasis added). Thus, distribution of retirement benefits that are less than the actuarial equivalent value of the normal retirement benefit constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

72.    JSA Class members received less than the actuarial equivalent of their accrued normal retirement benefits (expressed as unreduced single life annuities) because the Plan's actuarial assumptions for converting JSA Class members' reduced single life annuities to joint and survivor annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.

73.    The Plan's use of outdated and unreasonable mortality assumptions has reduced Plaintiff Odom's and the JSA Class members' joint and survivor annuity benefits below the actuarial equivalent of their normal retirement benefits, resulting in a forfeiture of those accrued benefits.

74.    If the Plan had used reasonable actuarial assumptions—such as those published by the Treasury Department at 26 U.S.C. § 417(e)—to convert Mr. Odom's normal retirement benefit (unreduced by the QPSA charge) into a joint and

survivor annuity, Mr. Odom would receive $93 more per month. This monthly underpayment is likely to have a lifetime effect of over $15,000 on Mr. Odom's total retirement benefits.

75.     During all relevant times, the Benefits Administration Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

76.     29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff Odom and the JSA Class seek all available and appropriate equitable relief against Defendants Southern and the Benefits Administration Committee to redress the violations of 29 U.S.C. § 1053(a) described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

77.     29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who

breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

78.     Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a), Plaintiff Odom and the JSA Class seek all available and appropriate remedies against Defendant the Benefits Administration Committee to redress violations of 29 U.S.C. § 1053 described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

**COUNT III: Violations of, *inter alia*, 29 U.S.C. § 1053 Stemming from the QPSA Charge**

**(BY PLAINTIFFS ODOM & DRUMMOND ON BEHALF OF THE QPSA CLASS AGAINST SOUTHERN COMPANY SERVICES, INC. and THE BENEFITS ADMINISTRATION COMMITTEE)**

79.     A pre-retirement survivor annuity, or QPSA, is a death benefit paid in the form of a life annuity to the surviving spouse of a vested pension-plan participant who dies before retirement. See 29 U.S.C. §§ 1055(a)(2), (e). Under ERISA and the Treasury regulations, a tax-qualified ERISA plan (like the one at issue here) must provide a QPSA to all married participants unless the participant and spouse both

consent in writing to waive the QPSA. *See* 26 U.S.C. § 417(a). In effect, if a married plan participant dies before retiring, the QPSA benefit would provide a surviving spouse the survivor annuity payable under the QJSA at the time of the participant's death. *See* 29 U.S.C. § 1055(e). Plaintiff Drummond and his spouse did not waive the QPSA, nor did Plaintiff Odom and his spouse.

80.    Any excessive or unreasonable QPSA charge causes an illegal forfeiture by reducing benefits below the actuarial equivalent of a participant's normal retirement benefit. *See* 29 U.S.C. §§ 1053(a) (stating that "an employee's right to his normal retirement benefit is nonforfeitable" and setting forth vesting requirements for an employee's "accrued benefits").

81.    Treasury regulations support this interpretation. The Treasury has advised:

> Once the participant is given the opportunity to waive the QPSA or the notice of the QPSA is later [sic], the plan may charge the participant for the cost of the QPSA. A charge for the QPSA that reasonably reflects the cost of providing the QPSA will not fail to satisfy [the Tax Code's minimum vesting standards, 26 U.S.C. § 411] even if it reduces the accrued benefit.

26 C.F.R. § 1.401(a)-20 Q/A-21.

82.    Thus, the regulations interpreting the QPSA requirements specify that, at a minimum, any QPSA charge must be reasonable to avoid a forfeiture. This is consistent with the Treasury's anti-forfeiture requirements that provide that

"[c]ertain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a).

83.    Accordingly, a QPSA charge applied to reduce a participant's normal retirement benefit must, at minimum, reasonably reflect the actual cost of providing the QPSA utilizing accurate actuarial assumptions. Most plans, however, do not impose a charge for providing QPSA benefits.

84.    The QPSA charge imposed by the Plan reduced Plaintiffs' and the QPSA Class members' benefits below the actuarial equivalent of their normal retirement benefits, which is expressed as a single life annuity unreduced by the QPSA charge. *See* 29 U.S.C. § 1053(a).

85.    Because the Plan's QPSA charges are based on outdated, unreasonable, and inappropriate mortality assumptions, Mr. Drummond's and Mr. Odom's QPSA charges were excessive and unreasonable, and their benefits (in the form of joint and survivor annuities) were unlawfully reduced.

86.    As part of its calculation of Mr. Drummond's joint and survivor annuity, Southern imposed a QPSA charge against Mr. Drummond's accrued benefit. Mr. Drummond's QPSA charge was a 0.875% per-year charge (starting at age 50 and continuing until retirement) that was applied as a reduction to Mr.

Drummond's joint and survivor annuity benefit by multiplying his accrued benefit by 0.86875 (100% - (0.875% x 15 years)). On information and belief, this QPSA charge was calculated utilizing the inaccurate, modified 1951-GAM assumptions and a 5% discount rate.

87.     By using severely outdated actuarial assumptions, the Plan dramatically overestimated the probability Mr. Drummond would pass in any given year and therefore overestimated the likelihood it would be providing Mr. Drummond's wife the statutorily required death benefit. A reasonable QPSA adjustment for Mr. Drummond based on appropriate and updated actuarial assumptions would be no more than approximately 0.3% per year rather than the 0.875% the Plan charged. By making an adjustment using the Plan's outdated and unreasonable actuarial factors, Mr. Drummond's accrued benefit was reduced by nearly 300% more than reasonable actuarial assumptions support. This reduction will have a lifetime impact on Mr. Drummond of over $19,000 in foregone retirement benefits.

88.     Accordingly, the Plan's use of outdated mortality tables has reduced Mr. Drummond's joint and survivor annuity benefit below the actuarial equivalent of his normal retirement benefit, resulting in a forfeiture of his accrued benefits.

89.     As part of its calculation of Mr. Odom's joint and survivor annuity, Southern imposed a QPSA charge against Mr. Odom's accrued benefit. That QPSA

charge was a 0.75% per-year charge that was applied as a reduction to Mr. Odom's joint and survivor annuity benefit by multiplying his final accrued benefit by 0.89563. A reasonable QPSA reduction for Mr. Odom based on appropriate and updated actuarial assumptions would be, at most, no more than approximately 0.6% per year. On information and belief, Mr. Odom's QPSA charge, like his JSA conversion factor, was based on unreasonable mortality and/or interest rate assumptions. As a result, Mr. Odom's accrued benefit was reduced by more than any reasonable actuarial assumptions would support.

90.     By using unreasonable and effectively outdated actuarial assumptions, the Plan dramatically overestimated the probability Mr. Odom would pass in any given year and therefore overestimated the likelihood it would be providing Mr. Odom's wife the statutorily required death benefit. A reasonable QPSA adjustment for Mr. Odom based on reasonable and updated actuarial assumptions would result in a monthly pension benefit that is at least 2% higher than the benefit Mr. Odom currently receives.

91.     Accordingly, the Plan's use of outdated mortality tables has reduced Mr. Odom's joint and survivor annuity benefit below the actuarial equivalent of his normal retirement benefit, resulting in a forfeiture of his accrued benefits.

92.    The excessive and unreasonable QPSA charges, as applied to reduce Plaintiffs' and the QPSA Class's accrued benefits, therefore violate ERISA, 29 U.S.C. § 1053(a).

93.    As a direct and proximate result of these violations, the QPSA Class members lost millions of dollars in vested accrued pension benefits.

94.    During all relevant times, the Benefits Administration Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

95.    29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

96.     Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a), Plaintiffs and the QPSA Class seek all available and appropriate remedies against the Benefits Administration Committee to redress the QPSA-charge violations described herein, including, but not limited to, the relief set forth below in the Prayer for Relief.

97.     29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs and the QPSA Class seek all available equitable relief against Defendants Southern and the Benefits Administration Committee to redress its violations of ERISA and provide all appropriate relief to Plan participants, including, but not limited to, the relief requested below in the Prayer for Relief.

**COUNT IV: Breaches of Fiduciary Duty Under 29 U.S.C. § 1104**

**(BY PLAINTIFF ODOM ON BEHALF OF THE JSA CLASS, and BY PLAINTIFFS ODOM & DRUMMOND ON BEHALF OF THE QPSA CLASS, AGAINST THE BENEFITS ADMINISTRATION COMMITTEE)**

98.     Under the Plan Document, the Benefits Administration Committee is and was a "named fiduciary" of the Plan at all relevant times within the meaning of

29 U.S.C. § 1102(a). As such, the Benefits Administration Committee had and has the authority to control and manage the operation and administration of the Plan.

99.     The Plan Document further provides that the Benefits Administration Committee has "exclusive discretionary authority" for "construing and interpreting the Plan" and "determining all questions affecting the amount of the benefit payable" under the Plan. In addition, the Plan Document grants the Benefits Administration Committee the authority to amend or modify the Plan in order to comply with ERISA. Based on the Benefits Administration Committee's discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, the Benefits Administration Committee is also a Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(iii).

100.    29 U.S.C. § 1104(a)(1)(A) requires the Benefits Administration Committee, as the plan administrator charged with paying benefits consistentwith ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Benefits Administration Committee to communicate with Plaintiffs and other Plan participants honestly and accurately.

101.    29 U.S.C. § 1104(a)(1)(B) requires that the Benefits Administration Committee, as the plan administrator charged with paying benefits consistent with

ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

102.   29 U.S.C. § 1104(a)(1) requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" subchapters I and III of ERISA.

103.   The Benefits Administration Committee, as the Plan's named fiduciary and plan administrator, is and during all relevant times has been responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties require the Benefits Administration Committee to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

104.   Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Benefits Administration Committee must act loyally and prudently to ensure that all participants are receiving the actuarial equivalent of their single life annuity. But, despite having authority under the Plan to provide actuarially equivalent benefits, the Benefits Administration Committee breached its fiduciary

duties and instead calculated retirement benefits using the Plan's outdated and unreasonable assumptions, which penalize Plaintiffs and Class members compared to those who are unmarried and thus receive an (unreduced) single life annuity. That breach, in turn, allowed the entity that ultimately controls the Benefits Administration Committee, Southern Company, to save money by reducing the amount it had to contribute to the Plan to fund benefits.

105.   The Benefits Administration Committee failed to disclose to Plaintiffs and Class members that they would receive less than the actuarial equivalent value of their accrued, vested pension benefit and less than the actuarial equivalent of their normal retirement benefit if they selected a joint and survivor annuity or a single life annuity reduced by a QPSA charge.

106.   The Benefits Administration Committee failed to disclose to Plaintiffs and Class members that they would receive less than the actuarial equivalent of their single life annuity if they selected a joint and survivor annuity.

107.   ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 104 (2d Cir. 2020); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013);

*Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007).

108.   When participants are deciding when to retire and what form of benefit to elect, Treasury regulations require plans to communicate the value of their pension options "in a manner that provides a meaningful comparison of the relative economic values of the two forms of benefit without the participant having to make calculations using interest or mortality assumptions." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(i). Treasury regulations further require that, when preparing these communications, plans use "a single set of interest and mortality assumptions that are reasonable and that are applied uniformly with respect to all such optional forms payable to the participant (regardless of whether those assumptions are actually used under the plan for purposes of determining benefit payments)." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B). Treasury regulations further permit plan administrators to compare the value of the QJSA and other optional forms of benefit "to the value of a QJSA for an unmarried participant (*i.e.*, a single life annuity), but only if that same single life annuity is available to that married participant." 26 C.F.R. § 1.417(a)(3)1(c)(2)(ii)(B).

109.   The Benefits Administration Committee provided information to Plaintiffs and Class members concerning the amount of retirement benefits they would receive under various forms of retirement benefit.

110.   When communicating to Plaintiffs and the Class members, the Benefits Administration Committee compared the value of married participants' optional forms of benefit to a form of benefit the Benefits Administration Committee called a "Single Life Annuity," which the Benefits Administration Committee described as the automatic form for unmarried participants. However, the "Single Life Annuity" used for that comparison was also reduced by a QPSA charge. Therefore, it was *not* the "QJSA for an *unmarried* participant (*i.e.*, a single life annuity)," 26 C.F.R. § 1.417(a)(3)-1(c)(2)(ii)(B) (emphasis added), because the default form of pension for unmarried participants is not reduced by any QPSA charge. The purported "Single Life Annuity" amount the Benefits Administration Committee utilized for the relative value comparison thus was not a permissible basis for comparison and resulted in a deceptive and misleading relative value disclosure.

111.   When deciding if and when to retire, and what form of benefit to elect, Plaintiffs and the Class members presumptively relied upon the accuracy and sufficiency of information provided to them by the Benefits Administration Committee to plan for retirement. But the Benefits Administration Committee

overstated the relative value of Plaintiffs' and the Classes' qualified joint and survivor annuities and hid the magnitude of the actuarial adjustments made to their accrued benefits.

112.   The Benefits Administration Committee did not disclose to Plaintiffs and Class members the amount of pension benefit they would have been entitled to if the Benefits Administration Committee had utilized reasonable actuarial equivalence assumptions required by ERISA. Thus, Plaintiffs and Class members were forced to choose between improperly reduced joint and survivor annuities and forms of benefit that did not necessarily meet their retirement needs, such as a single life annuity or single lump sum payment. Plaintiffs and Class members sacrificed economic value by selecting among the joint and survivor annuities or purported "Single Life Annuities," the full actuarial values of which are protected by ERISA but were not disclosed or provided to Class members.

113.   These misrepresentations and failures to disclose material information prevented Plaintiffs and Class members from adequately assessing what form of benefit to elect and how best to plan for their retirements.

114.   Southern financially benefitted from the Benefit Administration Committee's failure to disclose to Plaintiffs and Class members that they were receiving less than the actuarially equivalent value of their ERISA-protected

pensions. Moreover, Southern in fact received and continues to receive direct financial benefits from paying participants less than the law allows, which reduces Southern's funding obligations to the Plan.

115. The Benefits Administration Committee breached its fiduciary duties by, *inter alia*:

   a)   Disloyally reducing Plaintiffs' and Class members' pension benefits through application of inaccurate and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Plaintiffs and Class members receiving less than the actuarial equivalent of their vested accrued benefit and; (ii) enabled Southern, as Plan Sponsor, to save money by reducing the amount it contributed and contributes to the Plan to fund benefits;

   b)   Disloyally reducing Plaintiffs' and Class members' pension benefits by using inaccurate and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which resulted in Plaintiffs and Class members receiving less than the actuarial equivalent of their vested accrued benefit and enabled

Southern, as Plan Sponsor, to increase profits by reducing its pension funding obligations to the Plan;

c)  Disloyally providing inaccurate and misleading information to Plaintiffs and Class members by misrepresenting that the joint and survivor annuities paid by the Plan were the actuarial equivalent of their single life annuities and by failing to tell Plaintiffs and Class members that the joint and survivor annuities—which are the default option for married participants—are worth less than their single life annuities;

d)  Failing to act prudently when determining benefits owed to Plaintiffs and Class members by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 1053 and 1055, which caused Plaintiffs and Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Benefits Administration Committee's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

e)  Failing to update the unreasonable and inaccurate assumptions applied to Plaintiffs' and Class members' benefits, despite

having discretionary authority under the Plan's terms to update the assumptions; and

f)    Following Plan terms that violate ERISA (specifically 29 U.S.C. §§ 1053 and 1055), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit and the forfeiture of a portion of their vested accrued benefit.[7]

116.   As a direct and proximate result of these fiduciary breaches, Class members lost millions of dollars in vested accrued pension benefits.

117.   29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of

---

[7] To be clear: each Count of this Complaint sets forth actions that constitute a fiduciary breach by the Benefits Administration Committee (in addition to involving a statutory violation). For the sake of completeness and clarity, Plaintiffs plead this separate fiduciary breach Count that includes all of these breaches and others.

such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

118.   Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a), Plaintiffs and the Classes, on behalf of the Plan, seek all available and appropriate remedies against the Benefits Administration Committee to redress and make good to the Plan all losses caused by its violations of 29 U.S.C. § 1104, including, but not limited to, the relief to the Plan requested below in the Prayer for Relief.

119.   29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs and the Classes seek all available equitable relief against the Benefits Administration Committee to redress its violations of ERISA and 29 U.S.C. § 1104 and to provide all appropriate relief to Plan participants, including, but not limited to, the relief requested below in the Prayer for Relief.

## VI.  PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against all Defendants on the claims included in Counts I-III and the Benefits Administration Committee for the claims included in Count IV, and seek the following relief:

a)  A declaratory judgment that the Plan's actuarial assumptions and charges for joint and survivor annuities applicable to the Classes violate ERISA's anti-forfeiture provision at 29 U.S.C. § 1053(a).

b)  A declaratory judgment that the Plan's actuarial assumptions for converting JSA Class members' single life annuities to joint and survivor annuities violate ERISA's joint and survivor annuity requirements set forth in 29 U.S.C. § 1055(a)-(e).

c)  A declaratory judgment that the Plan's QPSA charges assessed against the QPSA Class members' benefits violate ERISA's anti-forfeiture provision at 29 U.S.C. § 1053(a).

d)  A declaratory judgment that the Benefits Administration Committee breached its fiduciary duties in violation of 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participants in conformance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

e)      Reformation of the Plan: (i) to provide that JSA Class members receive joint and survivor annuities that are the actuarial equivalent of single life annuities; (ii) to ensure that QPSA charges, if any, are reasonable and do not reduce QPSA Class members' benefits below the actuarial equivalent of their accrued benefits and/or normal retirement benefits; (iii) to bring the Plan into full compliance with ERISA; and (iv) to pay all benefits owed to Class members based on the reformed plan.

f)      An injunction ordering: (i) the Benefits Administration Committee to accurately disclose to all Class members their optional forms of benefits as recalculated under the reformed plan, whether or not that individual has started collecting pension benefits; (ii) Defendants to eliminate and bar any future use of actuarial assumptions or charges that result in less than the actuarial equivalent value of the participant's single life annuity or accrued benefits at retirement; (iii) Defendants to bring the Plan into compliance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e); and (iv) Defendants to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

g)      An order requiring Defendants to provide an accounting of all prior payments of benefits to Class members under the Plan for which the outdated and

inaccurate assumptions discussed herein were used to determine their benefits, and to provide information to recalculate those payments to Class members in compliance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

h) Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to pay future benefits in accordance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

i) Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of 29 U.S.C. §§ 1053(a) and 1055(a)-(e), and an accounting of profits.

j) Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiffs and other Class members in accordance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

k) Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

l) An order estopping Defendants from applying to the Classes the actuarial assumptions and charges that violate 29 U.S.C. §§ 1053(a) and 1055(a)-(e)

and requiring Defendants instead to pay benefits in accordance with 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

m)    Relief to the Plan from the Benefits Administration Committee for its violations of 29 U.S.C. § 1104, including a declaration that the actuarial assumptions and charges applied to Class members' benefits (including the QPSA charges and the factors used to convert the reduced single life annuity to a joint and survivor annuity) violate 29 U.S.C. §§ 1053(a) and 1055(a)-(e); restoration of losses to the Plan and its participants caused by the Benefits Administration Committee's fiduciary violations; disgorgement of any benefits and profits the Benefits Administration Committee received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Benefits Administration Committee to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in 29 U.S.C. §§ 1053(a) and 1055(a)-(e).

n)   An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Classes pursuant to law.

o)   An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, 29 U.S.C. § 1132(g), and/or other applicable doctrine.

p)   An order awarding, declaring, or otherwise providing Plaintiffs and the Classes any other appropriate equitable relief under 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated: September 15, 2023

Respectfully submitted,

AUSTIN & SPARKS, P.C.
By:   */s/ John T. Sparks, Sr.*
John T. Sparks, Sr.
Georgia Bar No. 669575
2974 Lookout Place, N.E., Suite 200
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)
jsparks@austinsparks.com

Michelle C. Yau (admitted *pro hac vice*)
Daniel R. Sutter (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Eleanor Frisch (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
400 South 4th Street #401-29
Minneapolis, MN 55415
Telephone: (202) 408-4600
Fax: (202) 408-4699
efrisch@cohenmilstein.com

Peter K. Stris (admitted *pro hac vice*)
John Stokes (admitted *pro hac vice*)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
pstris@stris.com
jstokes@stris.com

Shaun P. Martin (admitted *pro hac vice*)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

Todd Jackson (admitted *pro hac vice*)
Nina Wasow (admitted *pro hac vice*)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

***Attorneys for Plaintiffs***