**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| WILLIAM DRUMMOND and RICHARD ODOM, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>SOUTHERN COMPANY SERVICES, INC.; THE SOUTHERN COMPANY PENSION PLAN; and THE BENEFITS ADMINISTRATION COMMITTEE;<br><br>　　　　　　Defendants. | Civil Action No. 2:22-CV-174-SCJ |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ...............................................................4

    A.    The Southern Company Pension Plan & Pertinent Plan Terms..........4

    B.    Plaintiffs' Elected Pension Benefits.....................................7

    C.    Plaintiffs' Administrative Claims and Appeals ........................8

    D.    Procedural History..........................................................9

APPLICABLE LEGAL STANDARD .................................................11

ARGUMENT ............................................................................11

I.     PLAINTIFF ODOM FAILS TO STATE VIABLE ERISA
      STATUTORY CLAIMS IN COUNTS I AND II BASED ON THE
      CALCULATION OF HIS JSA...................................................11

    A.    Counts I and II Fail to State a Claim Because ERISA Does Not
          Mandate Specific Actuarial Assumptions Be Used to Convert
          Plaintiff Odom's SLA to a JSA..........................................11

    B.    Count II Fails to State a Claim Because Plaintiff Odom Fails to
          Allege a Forfeiture Under 29 U.S.C. § 1053 Stemming From
          the Conversion of His SLA to a JSA. .................................14

II.    PLAINTIFFS FAIL TO STATE A CLAIM IN COUNT III
      BECAUSE THEY FAIL TO ALLEGE A FORFEITURE UNDER 29
      U.S.C. § 1053 STEMMING FROM THEIR QPSA CHARGES.................16

III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
      FIDUCIARY DUTY IN COUNT IV. ...........................................17

    A.    ERISA Imposes No Fiduciary Duty to Amend a Plan's
          Actuarial Assumptions. ..................................................18

    B.    ERISA Imposes No Fiduciary Duty to Deviate from Plan
          Terms.......................................................................20

    C.    Plaintiffs Fail to Allege any Misrepresentations the BAC
          Supposedly Made in Violation of its Fiduciary Duties....................22

CONCLUSION..........................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981)...............................................................................14, 15, 16

*Amgen Inc. v. Harris*,
    577 U.S. 308 (2016).............................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................11

*Belknap v. Partners Healthcare Sys., Inc.*,
    588 F. Supp. 3d 161 (D. Mass. 2022)............................................................12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................11

*Brown v. United Parcel Serv. of Am., Inc.*,
    No. 1:20-CV-460-TCB, slip op. (N.D. Ga. Aug. 27, 2020) ...............................5

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico
    Cas. Co.*,
    387 F. Supp. 2d 175 (E.D.N.Y. 2005) ................................................................21

*Counts v. Am. Gen. Life & Accident Ins. Co.*,
    111 F.3d 105 (11th Cir. 1997) ............................................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014).............................................................................................20

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002).............................................................................................22

*Herrington v. Household Int'l, Inc.*,
    No. 02-C-8257, 2004 WL 719355 (N.D. Ill. Mar. 31, 2004)............................23

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
  910 F.3d 1186 (11th Cir. 2018) ..........................................................5

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)................................................................19, 20

*In re Coca-Cola Enters. Inc., ERISA Litig.*,
  No. 1:06-CV-0953-TWT, 2007 WL 1810211 (N.D. Ga. June 20,
  2007) ...........................................................................................23, 24

*In re ING Groep, N.V. ERISA Litig.*,
  749 F. Supp. 2d 1338 (N.D. Ga. 2010)......................................23, 24

*Johnson v. Ga.-Pac. Corp.*,
  19 F.3d 1184 (7th Cir. 1994) ......................................................21, 22

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)...........................................................................19

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..............................................................11, 13, 14

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
  446 U.S. 359 (1980)...........................................................................14

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)...........................................................................18

*Roe v. Empire Blue Cross Blue Shield*,
  No. 12-CV-04788 NSR, 2014 WL 1760343 (S.D.N.Y. May 1) .......22

*Sec'y of Labor v. Macy's, Inc.*,
  No. 1:17-CV-541, 2022 WL 407238 (S.D. Ohio Feb. 10, 2022)................21, 22

*Smith v. Delta Air Lines, Inc.*,
  422 F. Supp. 2d 1310 (N.D. Ga. 2006)..............................................19

*Snow v. Bos. Mut. Life Ins. Co.*,
  590 F. App'x 832 (11th Cir. 2014)....................................................19

iii

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,*
    290 F.3d 1301 (11th Cir. 2002) ........................................................23

**STATUTES**

26 U.S.C.
    § 401(a)(25) ...............................................................5, 13, 19, 20
    § 417(e) .........................................................................12, 13, 14

29 U.S.C.
    § 1002(21)(A) .........................................................................18
    § 1053.............................................................................*passim*
    § 1055.............................................................................*passim*
    § 1104(a)(1)(D) .......................................................................21

ERISA ...............................................................................*passim*

**OTHER AUTHORITIES**

Rev. Rul. 79-90, 1979-1 CB 155 (1979).......................................5, 13, 19

Fed. R. Civ. P. 9(b) ...............................................................18, 23, 24

Fed. R. Civ. P. 12(b)(6).................................................................11

## **PRELIMINARY STATEMENT**

Plaintiffs William Drummond ("Drummond") and Richard Odom ("Odom," and together "Plaintiffs"), participants in the Southern Company Pension Plan (the "Plan"), bring a putative class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Plaintiffs retired and began receiving retirement benefits from the Plan at distinct times and under distinct Plan terms: Drummond in 2016 and Odom in 2018. Now, Plaintiffs seek to increase the amount of their monthly pension payments beyond what they are owed under the plain terms of the Plan. As the basis for their claims, they allege that the Plan's use of certain mortality assumptions—set by the Plan—to calculate their (and other participants') respective monthly pension benefit payments violates ERISA because the Plan does not use their preferred mortality assumptions. Plaintiffs ask this Court to: (1) amend ERISA by adding a new requirement that the Plan must use specific mortality assumptions that ERISA does not mandate; and (2) rewrite the Plan contract to require their preferred mortality assumptions. This Court should do neither. The terms of the Plan should be honored, and the Court should decline Plaintiffs' requests to play legislature by altering ERISA's carefully crafted statutory scheme. Plaintiffs' Second Amended Class Action Complaint ("SAC") should be dismissed.

Here, Plaintiffs claim that the Plan violated ERISA by using "outdated

mortality assumptions" to (1) calculate Odom's chosen form of monthly pension benefit and (2) calculate an expense—called a "QPSA charge"—deducted from both Odom and Drummond's monthly payments.

The first challenge concerns Odom's mere disagreement with the actuarial assumptions used to calculate his elected form of benefit according to the terms of the Plan. Odom elected and received a joint and survivor annuity ("JSA") from the Plan, which provides a monthly payment that continues over the joint lives of both the participant and spouse (in the event the spouse outlives, or survives, the Plaintiff). Odom elected a 50% JSA (*i.e.*, 50% of Odom's payment would continue after his death to his surviving spouse). JSAs are distinct from a so-called single life annuity ("SLA"), which ceases payments upon a Plan participant's death. A Plan participant's SLA at normal retirement age is the starting point to calculate his JSA benefit. To convert the monthly SLA payment to a monthly JSA payment, the Plan uses actuarial assumptions expressly stated in the Plan's governing document (as is required by law)—namely, mortality assumptions and an interest rate. Plaintiff Odom claims his JSA was not "actuarily equivalent" to his SLA because the Plan applied outdated mortality assumptions to calculate his JSA.[1] He further claims that had the Plan used his preferred mortality assumptions, his monthly benefit payment

---

[1] Plaintiffs dropped their JSA claims brought on behalf of Drummond with the filing of the SAC. *See* SAC ¶¶ 35–78.

would be higher.  Based on these allegations, Odom contends the Plan violated ERISA.  Odom further contends that the Plan administrator breached its fiduciary duties by failing to amend, failing to deviate from, and accurately stating the Plan's mortality assumptions.

Plaintiffs' second challenge relates to an expense deducted from their monthly pension amounts to account for costs to provide an ***optional*** qualified preretirement survivor annuity ("QPSA") benefit.  That benefit protected the Plaintiffs' spouses by making available pension payments if the Plaintiffs died prior to retirement and the commencement of their pension payments.  Plaintiffs admit that ERISA permits the Plan to impose a charge for providing this benefit (a "QPSA charge"), which is assessed against the amount of each Plaintiff's monthly pension payment once such payments begin.  Plaintiffs also concede that Defendants followed the Plan terms in calculating the amount of the QPSA charge.  Even so, Plaintiffs claim this charge constituted a "forfeiture" of their accrued pension benefits because the QPSA charges allegedly were based on outdated mortality assumptions and are therefore excessive.   Plaintiffs further contend that the Plan administrator breached its fiduciary duties by failing to amend, failing to deviate from, and accurately stating the Plan's QPSA charge.

Plaintiffs fail to state any valid claim.  ***First***, Odom fails to state statutory claims based on the calculation of his JSA in Counts I and II because (1) ERISA

3

does not require the Plan to use specific (much less Odom's preferred) mortality assumptions to calculate Odom's JSA, and (2) Odom fails to plead a cognizable forfeiture stemming from the calculation of his JSA. **_Second_**, Plaintiffs fail to state a claim for forfeiture in Count III based on their "QPSA charges" because ERISA does not mandate the use of any (much less Plaintiffs' preferred) actuarial assumptions to calculate that charge. **_Third_**, Plaintiffs fail to state a claim for breach of fiduciary duty in Count IV because Plaintiffs do not allege that the Plan's fiduciary failed to comply with any duty imposed by ERISA or made any misrepresentation. Thus, all the all claims in the SAC should be dismissed.

## STATEMENT OF FACTS

Plaintiffs are Plan participants. SAC ¶¶ 18–19, 21. Southern Company Services, Inc. (the "Company") sponsors the Plan, and the Benefits Administration Committee (the "BAC") administers the Plan. *Id.* ¶¶ 20, 22. Plaintiffs name the Plan, the Company, and the BAC as "Defendants."

### A.    The Southern Company Pension Plan & Pertinent Plan Terms

The Plan provides retirement benefits in different forms. *Id.* ¶¶ 21, 38–40. By default, unmarried participants receive their benefits in the form of a SLA, which makes monthly payments to the participant from retirement until death. *Id.* ¶ 38. The Plan also provides alternate benefit forms for married participants—JSAs— which provide monthly payments to a participant's surviving spouse upon the

participant's death, at an elected percentage of the participant's monthly benefit. *Id.*
¶¶ 5, 39–40.  The default form of benefit for married participants is a 50% JSA—the
Plan's qualified JSA ("QJSA")—which, upon the participant's death, provides his
surviving spouse with monthly payments at 50% of what the participant received
during his life.[2] *Id.* ¶ 39.  Odom elected the Plan's QJSA. *Id.* ¶ 19.

To determine the amount of the elected JSA, the Plan converts a SLA monthly
payment to a JSA amount (*i.e.*, spreading payments for the same benefit earned over
two lives instead of one). *Id.* ¶ 7.  As required by law, the Plan sets forth the actuarial
assumptions used for this calculation. *Id.* ¶ 53; Ex. A (2016 Plan Doc.) at 3 &
§ 5.1(a) (explaining how to adjust a SLA to different JSAs based on which
"Participant-Group" an individual belongs); Ex. F (2018 Plan Doc.) at 4 & § 5.1(a)
(same); 26 U.S.C. § 401(a)(25); Rev. Rule 79-90, 1979-1 C.B. 155 (1979).[3]  The
Plan uses these actuarial assumptions, which take into account life expectancy (to
determine the expected duration of benefit payments) and interest rates (to account

---

[2] Married participants can elect other JSA options under the Plan. *Id*. ¶ 40.  As
required by ERISA, the Plan also offers a qualified optional survivor annuity
("QOSA"), which is a 75% JSA per the statute. *See id*. ¶¶ 36, 40.  Participants may
also elect a 100% JSA, which Drummond elected. *Id*. ¶ 18.

[3] This Court can consider the attached Exhibits A through J because "they are
referred to in the complaint, central to the plaintiff's claim, and of undisputed
authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th
Cir. 2018); *see, e.g.*, *Brown v. United Parcel Serv. of Am., Inc.*, No. 1:20-CV-460-
TCB, slip op. at 8 n.4 (N.D. Ga. Aug. 27, 2020) (considering pension plan documents
attached to motion to dismiss).

for the time-value of money), to calculate the "actuarial equivalent" value of its JSAs.  SAC ¶¶ 7–9, 53.  Because JSAs pay pension benefits over the span of two lives, rather than one, a monthly JSA payment will be lower than a monthly SLA payment (*i.e.*, a SLA is reduced by a percentage to a JSA).

Applicable to Odom's JSA benefit, the Plan has tables that provide the percentage factor used to convert a SLA to a JSA based on the relative ages of the participant and spouse.[4]  *See* Ex. F (2018 Plan Doc.) § 5.1(a) (explaining that for participants like Odom, their JSA is calculated by looking at tables in Appendix C of the Plan); *id.* at App. C, Table F1-A (providing the applicable table to convert Odom's SLA to his chosen JSA); *see also* SAC ¶ 53.  The percentage factors are based on actuarial assumptions set by the Plan.  *See* Ex. F (2018 Plan Doc.) at App. C.  The BAC informed Odom that those factors are based on, among other things, a 2014 mortality table (namely, "RP-2014").  Ex. J (Odom's Appeal Denial) at 2.  Odom admits that his monthly benefit under those factors is "below" what he would have received under the "1951-GAM-based assumptions specified in the Plan."

---

[4] Under the prior Plan terms applicable to Drummond's benefit, the Plan defines "actuarial equivalent" as "a benefit of equivalent value when computed on the basis of five percent (5%) interest per annum, compounded annually and the 1951 Group Annuity Mortality Table [('1951-GAM')] for males."  Ex. A (2016 Plan Doc.) at 3; see also SAC ¶ 53.  The definition further provides—as an adjustment to the mortality table—that "[t]he ages for all Participants under the [1951-GAM] shall be set back six (6) years and the ages for such Participants' spouses shall be set back one year."  Ex. A (2016 Plan Doc.) at 3; see also SAC ¶ 53.  Drummond does not bring any JSA claims.  Further, these terms are not applicable to Odom's benefit.

SAC ¶ 53.

The Plan also offers married participants, like Drummond and Odom, *optional* QPSA benefits, which, if the participant dies before retirement, pay the participant's surviving spouse a percentage of the annuity the participant would have received had the participant survived to retirement.  SAC ¶¶ 6, 79.  The Plan offered two *optional* QPSA benefits to participants like Odom and Drummond: (1) a default QPSA equal to the survivor portion of the Plan's QJSA—(*i.e.*, 50%) and (2) an enhanced QPSA equal to the survivor portion of the Plans 100% JSA (*i.e.*, 100%).  *Id.*  ERISA requires that plans offer the default QPSA benefit.  29 U.S.C. § 1055(a)(2).  To fund the cost associated with providing the QPSA, ERISA authorizes a corresponding charge.  SAC ¶ 81; 29 U.S.C. §§ 1055(a)(2), 1055(e)(1)(A), 1055(i).  The Plan imposed such a charge at retirement to participants who left employment with the Company before normal retirement age—like Drummond—or who elected the enhanced QPSA—like Odom.  SAC ¶¶ 79, 86, 89; Ex. C (Drummond's Claim Denial) at 2–4; Ex. H (Odom's Claim Denial) at 3–5.  Participants, including Plaintiffs, could opt out of the QPSA and avoid the charge.  *Id.* ¶ 79.

## B.     Plaintiffs' Elected Pension Benefits

Plaintiffs chose not to waive the QPSA benefit, and each elected a JSA benefit form.  *See id.* ¶¶ 18, 19, 79.  Drummond received 50% QPSA coverage at a charge of 0.875% reduction to his pension benefit for each year of coverage.  SAC ¶ 86;

Ex. C (Drummond's Claim Denial) at 3.  Drummond retired at 65, elected the Plan's 100% JSA, and began receiving benefits on November 1, 2016.  *See* SAC ¶ 18; Ex. C (Drummond's Claim Denial) at 1, 3.

While the Plan provided a 50% QPSA to Odom free of charge, Odom affirmatively elected to receive 100% QPSA coverage at a charge of a 0.75% reduction to his pension benefit for each year of coverage.  Ex. H (Odom's Claim Denial) at 4.  Odom retired at 65, elected the Plan's 50% JSA (the QJSA), and began receiving benefits on April 1, 2018.  *See* SAC ¶ 19; Ex. H (Odom's Claim Denial).

### C.   Plaintiffs' Administrative Claims and Appeals

In February 2022, Drummond submitted a claim for benefits, claiming the Plan used an outdated mortality table—the 1951-GAM—to calculate his JSA and QPSA charge in violation of ERISA and thereby unlawfully reduced his benefit payments.  SAC ¶ 23.  *See generally* Ex. B (Drummond's Claim Letter).  The Company's Retirement Department denied that claim on August 18, 2022, noting that Drummond's pension benefit was calculated properly under the Plan's terms and that he would receive ***a lower pension benefit*** if the Plan calculated his JSA using a more recent mortality table.  SAC ¶ 23; *see also* Ex. C (Drummond's Claim Denial) at 2.  Drummond appealed the Retirement Board's determination to the BAC on August 24, 2022.  SAC ¶ 24; Ex. D (Drummond's Appeal Letter).  The BAC later denied his appeal, noting that Drummond would receive a lower pension benefit if

the Plan calculated his JSA using more recent mortality assumptions.  SAC ¶ 24; Ex.

D (Drummond's Appeal Letter); Ex. E (Drummond's Appeal Denial) at 1–3.

Similarly, Odom submitted a claim for benefits dated February 1, 2023—two

days before joining this lawsuit—claiming the Plan used an outdated mortality table

to calculate his JSA and QPSA charge in violation of ERISA and thereby unlawfully

reduced his benefit payments.  *See* SAC ¶ 25; *see also* Ex. G (Odom's Claim Letter)

at 2–3; ECF No. 27.  The Company's Retirement Department denied that claim on

May 4, 2023, noting that Odom's JSA was correctly calculated under the terms of

the Plan and that the allegedly "outdated" mortality assumptions of which Odom

complained were, in fact, based on a 2014 mortality table.  Ex. H (Odom's Claim

Denial).  The Retirement Department also explained that while employees like

Odom are entitled to receive 50% QPSA coverage free of charge, Odom

affirmatively elected to receive 100% QPSA coverage for a charge of 0.75% per

year reduction to the his retirement benefit.  Ex. H (Odom's Claim Denial) at 3–5.

The BAC later denied Odom's appeal, reiterating that Odom's benefit was calculated

accurately under the terms of the Plan.  SAC ¶ 25; Ex. I (Odom's Appeal Letter);

Ex. J (Odom's Appeal Denial) at 2–4.

### D.   Procedural History

Drummond filed this lawsuit on September 2, 2022, before he exhausted his

administrative remedies with the Plan, as required by the law of the Eleventh Circuit.

9

ECF No. 1; *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).  Defendants timely moved to dismiss on January 13, 2023.  ECF No. 24.

Rather than respond to Defendants' first motion to dismiss, Drummond and a new plaintiff, Odom, filed a First Amended Complaint ("FAC") on February 3, 2023.  ECF No. 27.  Like Drummond, Odom filed suit before he exhausted his administrative remedies with the Plan.  *Id.* at ¶ 128; ECF No. 50 at 2–3.

Defendants moved to dismiss the FAC on February 17, 2023.  *See* ECF No. 38.  Defendants moved to dismiss Odom's claims based on his failure to exhaust administrative remedies, among other bases for dismissal.  ECF No. 38-1 at 9–13.  The parties fully briefed the motion.  ECF No. 40 & 43.

Months after briefing closed on Defendants' second motion to dismiss, Plaintiffs filed a Motion to Supplement the Record seeking to add to the record that Odom has now exhausted his administrative remedies.  *See* ECF No. 48.  Defendants opposed Plaintiffs' motion.  ECF No. 49.  The Court denied Plaintiffs' motion as procedurally improper and directed Plaintiffs to file the SAC.  ECF No. 50.

Plaintiffs filed the SAC on September 15, 2023—over a year after filing the original complaint in this action.  In the SAC, Plaintiffs dropped Drummond's JSA claims (*compare* SAC ¶¶ 35–78 to FAC ¶¶ 141–159), which is consistent with Defendants' repeated explanations that he lacked standing to bring such claims because he did not suffer any harm due to the mortality assumptions the Plan used

10

to calculate his JSA.

## APPLICABLE LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint when a plaintiff fails to allege facts that, if true, would entitle the plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also* Fed. R. Civ. P. 12(b)(6). The pleadings must raise the right to relief beyond the speculative level, and, to do so, a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I. **PLAINTIFF ODOM FAILS TO STATE VIABLE ERISA STATUTORY CLAIMS IN COUNTS I AND II BASED ON THE CALCULATION OF HIS JSA.**

ERISA is a "comprehensive and reticulated statute" that carefully sets out the precise protections provided. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (citation omitted). Odom fails to plead any valid claim regarding the calculation of his JSA under the statutory provisions he invokes. *First*, Counts I and II must be dismissed because the plain text of 29 U.S.C. §§ 1055 and 1053 does not require the Plan to use any specific actuarial assumptions to calculate Odom's JSA. *Second*, Count II also fails because Odom fails to plausibly allege that by the calculation of his JSA he suffered a cognizable forfeiture under 29 U.S.C. § 1053.

   A. **Counts I and II Fail to State a Claim Because ERISA Does Not Mandate Specific Actuarial Assumptions Be Used to Convert Plaintiff Odom's SLA to a JSA.**

Odom's claims in Counts I and II fail because ERISA does not mandate *any*

specific actuarial assumptions—much less his preferred actuarial assumptions—for the calculation of his JSA. Instead, ERISA leaves it to the Plan to set those assumptions. Odom, however, invites the Court to craft and import new requirements into the comprehensive statute. The Court should decline to do so.

Under ERISA, a plan's QJSA (Odom's chosen benefit form) must be the "actuarial equivalent" of a participant's SLA. 29 U.S.C. § 1055(d)(1)(B). Moreover, § 1053(a) requires that "an employee's right to his normal retirement benefit [be] nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). But, unlike other ERISA provisions, §§ 1055(d) and 1053(a) *do not* define the term "actuarial equivalent" and, crucially, *do not* set forth any certain actuarial assumptions a plan must use when converting one benefit form to another. *Compare, e.g.*, *id.* § 1055(g) (requiring that a lump sum payment of a QJSA be calculated using the "applicable mortality table and the applicable interest rate" set forth in the Section 417(e)), *with id.* § 1055(d) (setting no specific actuarial factors). *See Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 175 (D. Mass. 2022) ("[T]he ERISA statute does not define 'actuarial equivalence,' or provide that the calculation of actuarial equivalence requires the use of 'reasonable' assumptions." (citation omitted), *appeal dismissed sub nom. Belknap v. Mass Gen. Brigham, Inc.*, No. 22-1188, 2022 WL 4333752 (1st Cir. Aug. 30, 2022). "In fact, the only place where 'actuarial equivalence' is defined, that is relevant here, is within

12

the Plan itself." *Id.* at 175; *see also* 26 U.S.C. § 401(a)(25) (requiring a plan document to specify the actuarial assumptions used therein in order to be tax-qualified); Rev. Rul. 79-90, 1979-1 C.B. 155 (1979) (permitting a plan to set forth actuarial assumptions in a table of adjustment factors).

Nonetheless, Odom asks the Court to require the Plan to calculate his JSA "using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e)," SAC ¶¶ 26, 61, which only apply to lump sum payments—not Odom's form of benefit. 26 U.S.C. § 417(e).  There is no basis for the Court to import those assumptions.[5] *See* 29 U.S.C. § 1055(g); 26 U.S.C. § 417(e)(3) (specifying mortality tables and interest rates to calculate lump sum payments).  Indeed, "this Court does not have the power to . . . rewrite the Plan, or to create new statutory requirements." *Belknap*, 588 F. Supp. 3d at 176–77.

ERISA's omission of specific actuarial factors in the statutory provisions under which Odom proceeds must be given full effect.  *See Russell*, 473 U.S. at 146 (noting ERISA is a "comprehensive and reticulated statute," so the "assumption of inadvertent omission" is "especially suspect" (citation omitted)).  If Congress

---

[5] Nor is there any basis for the Court to choose any particular assumptions as illustrated by Odom's own claims here.  On the one hand, Odom challenges the actuarial assumptions applied to calculate his JSA payment, which were based on a 2014 mortality table, Ex. J (Odom's Appeal Denial) at 2—*i.e.*, a table published four years before Odom retired in 2018.  On the other hand, Odom admits that his monthly benefit under those factors is "below" what he would have received under the "1951-GAM-based assumptions specified in the Plan."  SAC ¶ 53.

wished to command the use of certain actuarial assumptions to calculate a JSA, and make its command enforceable by plan participants, it certainly could have. *See, e.g.*, 26 U.S.C. § 417(e)(3) (requiring the specified mortality tables and interest rates to calculate lump sum payments). It chose not to. Thus, Odom's attempt to import his preferred actuarial assumptions into ERISA and the Plan must fail. *See Russell*, 473 U.S. at 147 ("We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.").

**B.     Count II Fails to State a Claim Because Plaintiff Odom Fails to Allege a Forfeiture Under 29 U.S.C. § 1053 Stemming From the Conversion of His SLA to a JSA.**

Count II fails for the additional, independent reason that Odom fails to plead a cognizable forfeiture resulting from the calculation of his JSA. As noted above, § 1053(a) requires that "an employee's right to his normal retirement benefit [be] nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). ERISA defines the term "nonforfeitable" as the right to bring an unconditional claim against the Plan for an accrued benefit. *See id.* § 1002(19). The provision is designed to ensure an employee receives their employer-promised accrued pension benefits. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981). It "does not guarantee a particular amount ***or a method for calculating the benefit***." *Id.* at 512 (emphasis added). "[I]t is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" *Nachman*

14

*Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 371 (1980).

And, crucially, the Supreme Court has recognized that it is the terms of the Plan that determine the benefit amount that is immune from forfeiture. *See Alessi*, 451 U.S. at 511 ("That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA."). In other words, § 1053(a) protects from forfeiture the amount of the benefit ***as calculated by the terms of the Plan***. *See id.*

Odom does not dispute that his monthly pension benefit was calculated properly under the Plan's terms. *See* SAC ¶¶ 60–61. He, therefore, concedes the Plan is paying him the contractually promised amount and no sum has been forfeited from that amount. *See* SAC ¶ 74 (conceding that the Plan's terms must be different to obtain a greater pension benefit amount). Odom's § 1053 claim is premised solely on his disagreement with the method—the mortality assumptions—used to calculate his JSA. *Id.* ¶¶ 71–78; *see also id.* ¶¶ 53, 62 (challenging the Plan's use of "outdated" mortality assumptions). The payment of benefits in an amount to which a participant is entitled under the Plan's terms, and properly calculated per the Plan's stated method, is ***not*** a forfeiture under § 1053(a). *See Alessi*, 451 U.S. at 512. Indeed, § 1053 does not address the conversion of one form of benefit to another, and it certainly does not prescribe the use of certain actuarial assumptions for converting a SLA to a JSA—*i.e.*, Plaintiffs' theory here. *Id.* Nor does the Treasury

regulation that Odom relies upon. *See* SAC ¶ 71 (citing 26 C.F.R. 1.411(a)-4(a)). Count II, thus, lacks any basis in ERISA and must be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM IN COUNT III BECAUSE THEY FAIL TO ALLEGE A FORFEITURE UNDER 29 U.S.C. § 1053 STEMMING FROM THEIR QPSA CHARGES.

In Count III, both Plaintiffs allege that the Plan used "outdated mortality tables" to calculate their respective QPSA charges, which resulted in a forfeiture of their accrued benefits. SAC ¶¶ 88, 91. Again, Plaintiffs ask this Court to impose their preferred actuarial assumptions onto ERISA—this time to calculate their QPSA charges. But this claim fails for the same reasons set forth in part I.A. and I.B., *supra.* Specifically, ERISA does not mandate any specific actuarial assumptions to calculate the QPSA charge. 29 U.S.C. §§ 1055(e), (i). Moreover, Plaintiffs fail to state a claim for forfeiture because § 1053 "does not guarantee a particular amount or a method for calculating the benefit." *Alessi*, 451 U.S. at 512.

Further, contrary to Plaintiffs' theory of forfeiture, ERISA specifically allows plans to impose a charge to account for the increased costs of providing a QPSA. 29 U.S.C. § 1055(i). And a participant ***can opt out*** of QPSA coverage, thereby opting out of the charge. *Id.* § 1055(c).

Here, Plaintiffs admit the Plan has a legal right to impose a QPSA charge. SAC ¶ 81–82. They further admit that neither Drummond nor Odom opted out of

16

QPSA coverage, as was their right under ERISA.  SAC ¶ 79.[6]  Plaintiffs, however,

allege the QPSA charges were "excessive and unreasonable" and based on

"outdated, unreasonable, and inappropriate mortality assumptions."  *Id.* ¶ 85; *see*

*also id.* ¶¶ 18–19, 85, 89, 92.  They claim that the QPSA charges should have been

"no more than approximately 0.3% per year" with respect to Drummond and "no

more than approximately 0.6% per year" with respect to Odom.  *Id.* ¶¶ 87, 89.  But

Plaintiffs allege no facts in support of those naked conclusions, and, as noted, ERISA

does not dictate the specific amount of a QPSA charge or mandate the use of specific

actuarial assumptions to derive it.[7]  *See* 29 U.S.C. § 1055(e), (i).  Thus, Count III

fails to state a claim.  *See supra* Section I.A. & I.B.[8]

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY IN COUNT IV.

Plaintiffs' breach of fiduciary duty allegations can be distilled into three

theories.  ***First***, Plaintiffs contend the BAC breached its fiduciary duties because the

Plan used "inaccurate and unreasonable actuarial assumptions," and the BAC failed

---

[6] Odom could have received 50% QPSA coverage free of charge, but instead elected to receive 100% QPSA coverage for a charge.  Ex. H (Odom's Claim Denial).

[7] Moreover, the SAC does not allege that Plaintiffs' QPSA charges failed to account for the costs of providing QPSA coverage.  Yet they admit this is precisely what ERISA allows.  SAC ¶ 81; *see also* 29 U.S.C. § 1055(i).

[8] Plaintiffs label Count III as "Violations of, *inter alia*, 29 U.S.C. § 1053 Stemming from the QPSA Charge."  SAC at 31.  They, however, refer only to alleged violations of § 1053(a) within the paragraphs of Count III.  *Id.* ¶¶ 79–97.  They, thus, *ipso facto* fail to state a violation of any other statutory provisions.

to amend the Plan to change them.  This is a challenge to the Plan's design.  It is hornbook law, however, that plan design is not a fiduciary function.  ***Second***, Plaintiffs contend the BAC breached its fiduciary duties by applying certain Plan terms that allegedly violate ERISA.  ERISA, however, does not impose a fiduciary duty to ignore Plan terms.  Quite the opposite, ERISA imposes a clear duty on the BAC to enforce the Plan as written.  Thus, applying Plan terms is not fiduciary misconduct.  ***Third***, Plaintiffs seek to hold the BAC liable under a misrepresentation theory for accurately reporting the benefits available under the Plan's terms.  But Plaintiffs plead ***no*** misrepresentation, much less with the specificity required by Rule 9(b).  Because none of these theories are legally viable, Plaintiffs' breach of fiduciary duty claim must be dismissed.

### A.   ERISA Imposes No Fiduciary Duty to Amend a Plan's Actuarial Assumptions.

The threshold question of any ERISA fiduciary duty claim is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000).   A person acts as a fiduciary only regarding discretionary management or administration of a plan. 29 U.S.C. § 1002(21)(A).

Plaintiffs try to attach ERISA fiduciary duty requirements to the BAC's alleged failure to amend the Plan to "update" actuarial assumptions that Plaintiffs claim were "inaccurate and unreasonable."  SAC ¶ 115(a)–(b), (d)–(e).  But an

18

employer's choices about the formula used to calculate pension benefits ***are not*** fiduciary acts. They are plan ***sponsor*** decisions regarding plan design outside the scope of ERISA's fiduciary duty requirements. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).[9] This is true even where, as here, the Plan grants the BAC the authority (in its non-fiduciary capacity) to amend the Plan. *See* Ex. A (2016 Plan Doc.) § 11.1(a)(2); Ex. F (2018 Plan Doc.) § 11.1(a)(2); *Jacobson*, 525 U.S. at 444 ("[D]ecision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties[.]").

In fact, the Internal Revenue Code actually ***prevents*** ERISA fiduciaries from exercising discretion to change the method by which benefits are calculated under a plan. 26 U.S.C. § 401(a)(25) (requiring "actuarial assumptions" used to calculate benefits be "specified in the plan in a way which precludes employer discretion"); *see also* Rev. Rul. 79-90, 1979-1 CB 155 (1979) ("employer discretion" includes fiduciary discretion). Thus, the BAC ***cannot*** exercise fiduciary discretion to change the Plan's actuarial assumptions without violating § 401(a)(25) and thereby risking

---

[9] *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where . . . the Plan's [sponsor] makes a decision regarding the form or structure of the Plan such as . . . how [Plan] benefits are calculated."); *Snow v. Bos. Mut. Life Ins. Co.*, 590 F. App'x 832, 835 (11th Cir. 2014) ("[T]he design and adoption of an ERISA Plan is . . . not a fiduciary act."); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1330 n.20 (N.D. Ga. 2006) ("The act of amending the plan . . . is not a fiduciary act; therefore, failure to amend would not be a basis for fiduciary liability under ERISA." (citation omitted)).

the Plan's tax qualification status.  Indeed, "ERISA . . . does not require a fiduciary to break the law." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014).

Moreover, to state a claim for a fiduciary breach, Plaintiffs must allege "an alternative action that the defendant could have taken that would have been consistent with [other federal] laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Amgen Inc. v. Harris*, 577 U.S. 308, 310 (2016) (citation omitted).  Plaintiffs do not allege any action the BAC, in its fiduciary capacity, could have taken to alter the Plan's actuarial assumptions consistent with § 401(a)(25).  Therefore, the allegations predicated on the BAC's use of and failure to amend the Plan's actuarial assumptions—*i.e.*, matters of plan design—fail to state a claim for breach of fiduciary duty.  *See Jacobson*, 525 U.S. at 443–46 (holding that amending a plan is not sufficient to state a claim for fiduciary breach).

### B.    ERISA Imposes No Fiduciary Duty to Deviate from Plan Terms.

Plaintiffs contend the BAC breached its fiduciary duty by applying—instead of deviating from—Plan terms they allege run afoul of ERISA's statutory requirements.  SAC ¶ 115(f).  In essence, Plaintiffs ask this Court to create and enforce a new requirement that plan fiduciaries must (i) independently determine when certain plan terms violate ERISA's comprehensive statutory scheme, and then (ii) proactively abandon their ***explicit*** obligation to administer plan terms.  No such

duty exists, and this Court should not now be the first to legislate that duty into ERISA's carefully crafted and detailed framework.

"ERISA is a highly technical statute," made up of "myriad" different provisions. *Johnson v. Ga.-Pac. Corp.*, 19 F.3d 1184, 1190 (7th Cir. 1994); *Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 184 (E.D.N.Y. 2005). Among those provisions are explicit requirements governing how fiduciaries must perform their duties when administering plans. These include a requirement that fiduciaries must follow plan terms to the extent they are consistent with ERISA. *See, e.g.*, 29 U.S.C. § 1104(a)(1)(D). But the converse is not true: ERISA ***does not require*** plan fiduciaries to deviate from the terms of a plan that are ***not*** consistent with ERISA. *See Sec'y of Labor v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022) (rejecting argument that ERISA implies the existence of any duty to depart from plan provisions based on ERISA's requirement to follow plan terms consistent with ERISA, characterizing the argument as a "logical fallacy"); *see also Ulico*, 387 F. Supp. 2d at 185 ("The proposition that 'a trustee who administers a pension plan knowing it to be in violation of ERISA acts in violation of his fiduciary duties under ERISA,' . . . is based on an overly broad reading of [§ 1104] . . . ." (citation omitted)).

Respectfully, this Court should not upset ERISA's comprehensive framework

and expand the activity regulated by its fiduciary duty provisions. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002) (declining to "attempt to adjust the 'carefully crafted and detailed enforcement scheme' embodied in [ERISA] that Congress has adopted" (citation omitted)); *Johnson*, 19 F.3d at 1190 ("[B]ecause ERISA is a highly technical statute our part is to apply it as precisely as we can, rather than to make adjustments according to a sense of equities in a particular case."). Indeed, courts have already rejected such a requirement, holding that merely presiding over and enforcing a plan whose terms allegedly violate ERISA does not, in and of itself, constitute a breach of fiduciary duty. *See Macy's*, 2022 WL 407238, at *5–7 (collecting cases and noting "the weight of . . . persuasive authority *rejects*" the contention that a fiduciary breaches their duties by enforcing a plan that violates ERISA); *Roe v. Empire Blue Cross Blue Shield*, No. 12-CV-04788 NSR, 2014 WL 1760343, at *8 (S.D.N.Y. May 1, 2014) ("Trustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions . . . ." (quoting *Ulico*, 387 F. Supp. 2d at 184)), *aff'd*, 589 F. App'x 8 (2d Cir. 2014). The result should be the same here, and Plaintiffs' claim for breach of fiduciary duty based on the BAC's failure to deviate from the Plan terms should be dismissed.

### C. Plaintiffs Fail to Allege any Misrepresentations the BAC Supposedly Made in Violation of its Fiduciary Duties.

Under a third theory, Plaintiffs allege the BAC breached its fiduciary duty by

"providing inaccurate and misleading information to Plaintiffs . . . by misrepresenting that the joint and survivor annuities paid by the Plan were the actuarial equivalent of their single life annuities" and by failing to tell Plaintiffs the JSAs "are worth less than their single life annuities."  SAC ¶ 115(c).  Though not styled as such, these allegations attempt to plead a fraudulent misrepresentation claim.  *See Herrington v. Household Int'l, Inc.*, No. 02-C-8257, 2004 WL 719355, at *6–7 (N.D. Ill. Mar. 31, 2004) (finding an ERISA fiduciary duty claim predicated on alleged misrepresentations amounted to a fraudulent misrepresentation claim). Accordingly, the claim must satisfy Rule 9(b)'s heightened pleading standard.  *In re Coca-Cola Enters. Inc., ERISA Litig.* ("*ICCE*"), No. 1:06-CV-0953-TWT, 2007 WL 1810211, at *4–6 (N.D. Ga. June 20, 2007).  Under Rule 9(b), Plaintiffs ***must*** "plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'"  *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citation omitted); Fed. R. Civ. P. 9(b).  Plainly stated, Plaintiffs "must allege the who, what, when, where, and how of the fraudulent misrepresentation."  *ICCE*, 2007 WL 1810211, at *7.  Plaintiffs have not done so.

The SAC does not "identify any ***particular*** communications to [P]lan participants that were allegedly false or misleading."  *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1350 (N.D. Ga. 2010) (emphasis added).  The SAC

23

only generally alleges that the BAC (1) provided inaccurate and misleading information regarding the calculation of JSAs by impermissibly comparing the value of JSAs to SLAs, and (2) failed to disclose that JSAs are "worth less than the" SLAs. SAC ¶¶ 105, 109, 110, 115(c). But those general allegations do not identify *when* the alleged misrepresentations were made, *where* they were made, or *how* they actually constitute a misrepresentation.[10] As such, they do not satisfy Rule 9(b)'s stringent pleading standard. *See ICCE*, 2007 WL 1810211, at *7 (dismissing claims because "[t]he Complaint's general allegations fail to meet [Rule 9(b)]"); *In re ING Groep*, 749 F. Supp. 2d at 1350 (holding "conclusory statements do not support a claim for material misrepresentations"). Rather, they necessitate dismissal. *See In re ING Groep*, 749 F. Supp. 2d at 1350 (dismissing ERISA breach of fiduciary duty claim alleging failure to provide complete and accurate information to plan participants).

Fundamentally, this claim is nothing more than Plaintiffs' attempt to manufacture a misrepresentation claim out of their disagreement with the Plan's actuarial assumptions. *See, e.g.*, SAC ¶ 112 ("The Benefits Administration Committee did not disclose to Plaintiffs . . . the amount of pension benefit they

---

[10] Plaintiffs even concede that some of these supposed "misrepresentations" are not misrepresentations. For instance, Plaintiffs challenge Defendants' description of the SLAs as the "automatic form for unmarried participants," SAC ¶ 110, but admit that SLAs are indeed the default form of benefit for unmarried participants, *see id.* ¶ 4.

would have been entitled to if the Benefits Administration Committee had utilized reasonable actuarial equivalence assumptions[.]").  That is not a misrepresentation. In fact, Plaintiffs do not dispute that Defendants accurately represented (and applied) the Plan's actuarial factors.  This repackaging of Plaintiffs' doomed statutory claims fails to state a claim in Count IV.

## CONCLUSION

The SAC fails to state a claim, and thus must be dismissed in its entirety.

Dated: September 29, 2023

Respectfully submitted,

*/s/ Ashley F. Heintz*
Ashley F. Heintz
(Georgia Bar No. 325323)
John Heron IV
(Georgia Bar No. 193170)
JONES DAY
1221 Peachtree Street, N.E.
Suite 400
Atlanta, GA 30361
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
aheintz@jonesday.com
jheron@jonesday.com

***Attorneys for Defendants***

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this motion has been prepared in Times New Roman, 14-point font, which is one of the fonts approved by Local Rule 5.1(C).

Dated:  September 29, 2023

/s/ Ashley F. Heintz
Ashley F. Heintz
(Georgia Bar No. 325323)

*An Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to all attorneys of record.

Dated:  September 29, 2023

> */s/ Ashley F. Heintz*
> Ashley F. Heintz
> (Georgia Bar No. 325323)
>
> *An Attorney for Defendants*

27