# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM DRUMMOND and RICHARD ODOM, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>SOUTHERN COMPANY SERVICES, INC.; THE SOUTHERN COMPANY PENSION PLAN; and THE BENEFITS ADMINISTRATION COMMITTEE;<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File<br>No. 2:22-CV-174-SCJ |

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND...................................................................3

ARGUMENT ....................................................................................7

I.    Defendants' challenges to Plaintiff Odom's JSA claims under 29 U.S.C. §§ 1055 and 1053 are meritless. ...................................................7

    A.   Defendants' argument that they may elect whatever assumptions they please—no matter how punitive—would render ERISA's actuarial equivalence requirements meaningless (Counts I and II).......................7

    B.   Defendants' challenge to Odom's JSA claim under § 1053 fails (Count II)...................................................................................10

II.   Plaintiffs have stated a claim for an excessive QPSA charge (Count III). ...12

III.  Plaintiffs have stated a claim for breach of fiduciary duty (Count IV).........17

    A.   Defendants' statutory violations also give rise to a breach of fiduciary duty claim.............................................................................17

    B.   Plaintiffs have stated a breach of fiduciary duty claim based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits. .......................................................21

CONCLUSION .................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*,
   451 U.S. 504 (1981).................................................................11, 12

*Bd. of Trs. of Equity League Pension Tr. Fund v. Royce*,
   238 F.3d 177 (2d Cir. 2001) .................................................5

*In re Beazer Homes USA, Inc. ERISA Litig.*,
   2010 WL 1416150 (N.D. Ga. Apr. 2, 2010)........................22

*Belknap v. Mass Gen. Brigham, Inc.*,
   2022 WL 4333752 (1st Cir. Aug. 30, 2022)........................10

*Belknap v. Partners Healthcare Sys., Inc.*,
   588 F. Supp. 3d 161 (D. Mass. 2022)..................................10

*Boggs v. Boggs*,
   520 U.S. 833 (1997)......................................................12, 13

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico*
   *Cas. Co.*,
   387 F. Supp. 2d 175 (E.D.N.Y. 2005) ................................20

*Chevron, USA, Inc. v. NRDC*,
   467 U.S. 837 (1984).............................................................11

*In re Coca-Cola Enterprises Inc., ERISA Litigation*,
   2007 WL 1810211 (N.D. Ga. June 20, 2007)......................23

*Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*,
   559 F.3d 720 (7th Cir. 2009) ...................................10, 11, 12

*Cruz v. Raytheon Co.*,
   435 F. Supp. 3d 350 (D. Mass. 2020)....................................3

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ..........................................24

ii

*Doe v. United Behav. Health*,
  523 F. Supp. 3d 1119 (N.D. Cal. 2021) ............................................................18

*Eddy v. Colonial Life Ins. Co. of Am.*,
  919 F.2d 747 (D.C. Cir. 1990) ...........................................................................22

*Herndon v. Huntington Ingalls Indus., Inc.*,
  2020 WL 3053465 (E.D. Va. Feb. 20, 2020) ...................................................3, 8

*Hill v. BellSouth Corp.*,
  313 F. Supp. 2d 1361 (N.D. Ga. 2004) ..............................................................22

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
  561 F.3d 112 (2d Cir. 2009), *abrogated in part on other grounds
  by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.
  118 (2014) .....................................................................................................18, 19

*Kenseth v. Dean Health Plan, Inc.*,
  722 F.3d 869 (7th Cir. 2013) ..............................................................................22

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) ..............................................................................18

*Masten v. Metro. Life Ins. Co.*,
  543 F. Supp. 3d 25 (S.D.N.Y. 2021) ..................................................3, 11, 12, 16

*New York State Psychiatric Ass'n, Inc., v. UnitedHealth Grp.*,
  798 F.3d 125 (2d Cir. 2015) ..........................................................................18, 19

*Roe v. Empire BCBS*,
  2014 WL 1760343 (S.D.N.Y. May 1, 2014) ......................................................20

*Scott v. AT&T Inc.*,
  2022 WL 2342645 (N.D. Cal. June 29, 2022) ......................................................3

*Scott v. AT&T Inc.*,
  No. 3:20-cv-07094-JD, ECF 47 (N.D. Cal. Apr. 18, 2021) .................................3

*Shea v. Best Buy Homes, LLC*,
  533 F. Supp. 3d 1321 (N.D. Ga. 2021) ..............................................................23

*Smith v. Rockwell Automation, Inc.*,
  438 F. Supp. 3d 912 (E.D. Wis. 2020) ..............................................................8, 9

iii

*Smith v. U.S. Bancorp*,
2019 WL 2644204 (D. Minn. June 27, 2019) ........................................3, 11, 16

*Smith v. Williams*,
819 F. Supp. 2d 1264 (M.D. Fla. 2011)...............................................................22

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*,
961 F.3d 91 (2d Cir. 2020) ............................................................................21, 22

*Tibble v. Edison International*
575 U.S. 523 (2015)..............................................................................................20

*Torres v. Am. Airlines, Inc.*,
416 F. Supp. 3d 640 (N.D. Tex. 2019) .................................................3, 8, 11, 16

*Urlaub v. CITGO Petroleum Corp.*,
2022 WL 523129 (N.D. Ill. Feb. 22, 2022)..................................................*passim*

*Wagner v. First Horizon Pharm. Corp.*,
464 F.3d 1273 (11th Cir. 2006) ...........................................................................23

*Woods v. S. Co.*,
396 F. Supp. 2d 1351 (N.D. Ga. 2005)................................................................22

*Young v. Grand Canyon Univ., Inc.*,
57 F.4th 861 (11th Cir. 2023) ..............................................................................15

**Statutes**

26 U.S.C. § 417(e) ......................................................................................................9

29 U.S.C. § 1002(21)(A)(iii)....................................................................................17

29 U.S.C. § 1002(22) ...............................................................................................12

29 U.S.C. § 1053 ..............................................................................................*passim*

29 U.S.C. § 1054(c)(3)................................................................................................4

29 U.S.C. § 1055 ..............................................................................................*passim*

29 U.S.C. § 1055(a)(2)................................................................................................5

29 U.S.C. § 1055(c)(2)(A) ......................................................................................1, 5

iv

29 U.S.C. § 1055(d)(1)(B) ..........................................................2, 4, 7, 8

29 U.S.C. § 1055(d)(2) .........................................................................7

29 U.S.C. § 1055(d)(2)(A)(ii) ............................................................7, 8

29 U.S.C. § 1055(e) ...........................................................................13

29 U.S.C. § 1055(e)(1)(A) ...............................................................2, 13

29 U.S.C. § 1055(i) ...........................................................................14

29 U.S.C. § 1104 ................................................................................7

29 U.S.C. § 1104(a)(1)(D) ..................................................................18

29 U.S.C. § 1185a(a)(3)(A) .................................................................19

Pub. L. No. 98-397(1984) ...................................................................13

**Other Authorities**

26 C.F.R. § 1.401(a)-11(b)(2) (2003) .....................................................8

26 C.F.R. § 1.401(a)-20 Q/A-21 (2006) ................................6, 13, 14, 16

26 C.F.R. § 1.411(a)-4(a) (2009) ..........................................2, 10, 11, 14

26 C.F.R. § 1.411(d)-3(g)(1) (2009) .......................................................8

26 C.F.R. § 1.417(a)(3)-1(c)(2)(ii)(B) (2006) .......................................24

Restatement (Third) of Trusts § 72 (2007) ...........................................20

Federal Rule of Civil Procedure 9(b)....................................................23

**INTRODUCTION**

Defendants raise a bevy of well-worn arguments challenging the merits of Plaintiffs' claims under ERISA's actuarial equivalence and nonforfeiture provisions. These arguments have been rejected by nearly every court to address them, and the outcome should be no different here.

When Congress passed ERISA, it was concerned that because pension payments normally end once the worker dies, many spouses (and their dependents) were left penniless and reliant on government Social Security benefits. For this reason, ERISA requires companies that offer pensions to: (1) offer all married workers a "joint and survivor annuity" ("JSA") that ensures that a surviving spouse will continue to receive pension payments even after the working spouse's death, and (2) offer all married workers a "qualified preretirement survivor annuity" ("QPSA") that ensures a surviving spouse will receive the equivalent of the JSA even if their spouse dies before retirement. 29 U.S.C. § 1055. Married workers cannot receive a different form of benefit unless the worker and spouse both agree in writing to waive their entitlement to a JSA or QPSA. *Id.* § 1055(c)(2)(A).

Congress also understood that companies might attempt to shortchange families when calculating their JSA or QPSA benefits. Because JSAs by definition promise benefits for the duration of two lives (worker and spouse)—whereas single life annuities ("SLAs") only pay pensions during the worker's life—monthly

1

payments from JSAs are necessarily slightly lower than the monthly payments from equivalent SLAs. However, the JSA payments over two lives must be "actuarially equivalent" to the SLA payments (paid for just a single life).

But some companies fudge these numbers by reducing JSAs so much that they no longer have the same expected value as an SLA. To prevent this, Congress commanded that married retirees' JSAs must be "actuarial[ly] equivalent" to SLAs. 29 U.S.C. § 1055(d)(1)(B); *see also* 26 C.F.R. § 1.411(a)-4(a). Similarly, the QPSA benefit must be at least the "actuarial equivalent" of the survivor portion of the JSA. *Id.* § 1055(e)(1)(A). Any adjustments in excess of reasonable actuarial assumptions constitute an unlawful forfeiture. *See* 29 U.S.C. § 1053; 26 C.F.R. § 1.411(a)-4(a). Defendants violated those requirements here. As a result, married retirees receive pensions that are worth less than the pensions paid to unmarried retirees.

Plaintiffs William Drummond and Richard Odom worked for Defendant Southern Company or its affiliates and now receive JSAs under The Southern Company Pension Plan (the "Plan"). But Defendants calculated Plaintiffs' benefits—and imposed additional QPSA "charges" that reduced their pensions—using mortality assumptions *as much as 70 years* out of date. As a result, they receive substantially smaller pension payments than the law requires. They assert claims under two provisions of ERISA that protect their pensions from being unfairly reduced. Plaintiff Odom asserts claims under 29 U.S.C. §§ 1055 (Count I) and 1053

(Count II), alleging that his JSA has been reduced in excess of actuarial equivalence. Both Plaintiffs Odom and Drummond assert a claim challenging the QPSA charge in excess of reasonable actuarial assumptions (Count III). Finally, Plaintiffs assert breach of fiduciary duty claims based both on these statutory violations and certain misrepresentations made by Defendants (Count IV).

Defendants have now moved to dismiss under Rule 12(b)(6), trotting out a series of arguments that have been almost uniformly rejected by other courts facing claims like Plaintiffs' here. *See Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 34-37 (S.D.N.Y. 2021) (collecting cases); *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022); *Scott v. AT&T Inc.*, No. 3:20-cv-07094-JD, ECF 47, at 19 (N.D. Cal. Apr. 18, 2021) (denying first motion to dismiss); *Scott v. AT&T Inc.*, 2022 WL 2342645 (N.D. Cal. June 29, 2022) (denying second motion to dismiss); *Herndon v. Huntington Ingalls Indus., Inc.*, 2020 WL 3053465 (E.D. Va. Feb. 20, 2020); *Cruz v. Raytheon Co.*, 435 F. Supp. 3d 350 (D. Mass. 2020); *Torres v. Am. Airlines, Inc.*, 416 F. Supp. 3d 640 (N.D. Tex. 2019); *Smith v. U.S. Bancorp*, 2019 WL 2644204 (D. Minn. June 27, 2019). This Court should join this chorus of authorities and deny Defendants' motion.

## FACTUAL BACKGROUND

This case involves the assumptions used to calculate the pensions of thousands of former employees of Southern Company or its affiliates. Plaintiffs receive their

pension as JSAs, which provide monthly benefits for their entire lives and then a continued monthly benefit to their spouses (if their spouses survive them). ECF 51 ("SAC"), at ¶¶ 5,18-19.

The normal form for pension benefits under the Plan is a monthly payment lasting for the life of a single individual (the retiree), which is an SLA. *Id.* ¶ 4. To determine the amounts of JSA benefits for married retirees, the Plan converts the SLA into a JSA. To do this the Plan starts with the retiree's accrued benefit expressed as an SLA, then (absent a QPSA waiver) applies a QPSA charge based on unreasonable actuarial assumptions to arrive at a reduced SLA; it then converts that reduced SLA to a JSA, again utilizing unreasonable actuarial assumptions. *Id.* ¶ 7.

When making a JSA conversion, ERISA requires the JSA to be "actuarial[ly] equivalent" to the SLA. *See* 29 U.S.C. §§ 1055(d)(1)(B), 1054(c)(3). The Plan itself also expressly assures retirees that their JSAs would be "adjusted on an Actuarial Equivalent basis." ECF 53-3 § 5.1(a)(1). Actuarial equivalence means, in essence, that two different forms of benefit (e.g., SLA and JSA) have the same economic value. SAC ¶ 9. An actuarial equivalence computation is based on two assumptions: a mortality assumption and an interest rate assumption. *Id.* The interest rate is used to discount the value of future pension payments, reflecting the time value of money; and the mortality assumption reflects the expected likelihood of each pension payment actually being paid to the retiree (or their survivor), and thus must

4

accurately reflect their true longevity. *Id.* These assumptions are then used to calculate a JSA factor which converts (reduces) the SLA value into a JSA value.

As the expected longevity of retirees increases, the more valuable a pension will be. But if the Plan uses outdated mortality assumptions, such as 1950s mortality rates, to determine the economic value of pensions, this undervalues them. In other words, utilizing outdated mortality assumptions changes the value of the SLA to be smaller than what it's really worth. This results in excessive JSA reductions, which ultimately short-change retirees by paying them less than the true value of their pensions (i.e., the actuarially equivalent value of their SLA). *Id.* ¶¶ 2-3, 60-66.

The Plan also imposed a QPSA charge to further reduce Plaintiffs' benefits. *Id.* ¶¶ 7, 84-91. A QPSA is a death benefit paid in the form of a life annuity to the surviving spouse of vested participants who die before retirement. *See* 29 U.S.C. § 1055(a)(2); SAC ¶ 6. Contrary to Defendants' suggestion, *see* ECF 53-1 ("Defs.' Mem."), at 7, the QPSA is not any more "optional" than the JSA and cannot be waived solely by the participant. Rather, ERISA-governed plans (like the Plan here) *must* provide a QPSA to married participants unless the participant and spouse *both* consent in writing to waive it. *See* 29 U.S.C. § 1055(c)(2)(A); *Bd. of Trs. of Equity League Pension Tr. Fund v. Royce*, 238 F.3d 177, 179 (2d Cir. 2001); SAC ¶¶ 6, 79. While treasury regulations provide that a plan may impose a charge that "reasonably reflects the cost of providing the QPSA," most plans do not charge for QPSA benefits

at all. SAC ¶¶ 81, 83; 26 C.F.R. § 1.401(a)-20 Q/A-21. Here, the Plan imposes QPSA charges based on outdated and unreasonable mortality tables, thereby illegally reducing pensions below their actuarial equivalent value. *Id.* ¶¶ 85-93.

The Plan uses 1950s mortality tables to calculate JSA reduction factors and QPSA charges for some retirees, such as Drummond. *Id.* ¶¶ 18, 53. For other retirees, such as Plaintiff Odom, the Plan uses pre-set JSA reduction factors, which do not reflect reasonable actuarial assumptions or current mortality rates. *Id.* ¶ 19. In fact, the pre-set JSA factors applied to Plaintiff Odom's pension are even more punitive than the JSA reductions derived from the Plan's 1950s mortality tables (applied to Drummond's group).[1] *SAC* ¶ 53. Given the dramatic improvements in longevity over the last seven decades, the Plan's outdated and unreasonable JSA-conversion factors result in the putative JSA Class receiving less than the actuarial equivalent value of their pensions. *Id.* ¶¶ 62-66. Likewise, the Plan's QPSA charges—which are also based on mortality tables that are as much as 70 years or more out of date—are excessive and unreasonable and result in impermissible pension forfeitures for the putative QPSA Class. *Id.* ¶¶ 84-92.

---

[1] While Defendants assert that the mortality tables applicable to Odom were based on a 2014 mortality table, Defs.' Mem. 6, it would be inappropriate to accept these factual assertions, which are supported solely by a letter responding to the threat of litigation, as true. Moreover, Plaintiffs' appeal letter disputes this assertion. *See* ECF 53-11, at 3 (Odom's administrative appeal letter stating his JSA factor does "not resemble" factors based on an RP-2014 mortality table with a 5% interest rate).

Plaintiffs filed this lawsuit to remedy Defendants' unlawful conduct. Counts I and II allege that Defendants reduced Mr. Odom's JSA below what is actuarially equivalent, in violation of 29 U.S.C. §§ 1055 and 1053. Count III challenges Defendants' impermissibly large QPSA charges as to both Plaintiffs, which violate 29 U.S.C. § 1053 and the applicable Treasury regulations. And Count IV asserts a breach of fiduciary duty claim under 29 U.S.C. § 1104 based on these statutory violations and on certain misrepresentations made by Defendants.

## ARGUMENT

I.   **Defendants' challenges to Plaintiff Odom's JSA claims under 29 U.S.C. §§ 1055 and 1053 are meritless.**

Defendants' 12(b)(6) motion raises the same shopworn arguments that have been repeatedly raised by defendants in other actuarial equivalence cases. These arguments have been rejected by nearly every court to address them, and the outcome should be no different here.

A.   **Defendants' argument that they may elect whatever assumptions they please—no matter how punitive—would render ERISA's actuarial equivalence requirements meaningless (Counts I and II).**

ERISA requires that a JSA[2] be the actuarial equivalent of a single annuity for

---

[2] A JSA can be a "qualified joint and survivor annuity" or a "qualified optional survivor annuity," both of which must be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii). A "qualified optional survivor annuity" is simply a JSA with a different survivor annuity percentage than the Plan's default JSA option for married participants. *Id.* § 1055(d)(2); SAC ¶ 36.

the life of the participant. 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii). Defendants'
central argument is that because ERISA does not mandate any specific actuarial
assumptions, they are free to select whatever mortality assumptions they want—
even if the result is a non-actuarially-equivalent JSA. Defendants are wrong, and
their interpretation of the statute would render ERISA's actuarial equivalence
requirement meaningless. That is why every court but one has squarely rejected
Defendants' argument. *Urlaub*, 2022 WL 523129, at *6 (noting if defendants'
argument "were true, the actuarial equivalence requirement would be rendered
meaningless"); *Herndon*, 2020 WL 3053465, at *2 ("In order to achieve
equiveillance, the actuarial assumptions must be 'reasonable.'" (citing 26 C.F.R.
§§ 1.401(a)-11(b)(2); 1.411(d)-3(g)(1))); *Smith v. Rockwell Automation, Inc.*, 438 F.
Supp. 3d 912 (E.D. Wis. 2020); *Torres*, 416 F. Supp. 3d at 647-50.

As the court explained in *Urlaub*, "it cannot possibly be the case that ERISA's
actuarial equivalence requirements allow the use of unreasonable mortality
assumptions." 2022 WL 523129, at *6. If accepted, "the defendants' argument
suggests that they could have used any mortality table—presumably, even one from
the sixteenth century—to calculate the plaintiffs' JSAs." *Id.* This would render the
statute's actuarial equivalence requirement "meaningless." *Id.*

That the statute does not mandate the use of specific assumptions cannot mean
that Defendants are free to ignore the actuarial equivalence requirement. It just

8

means that Congress did not prescribe any particular method of meeting that requirement. *See Rockwell Automation*, 438 F. Supp. 3d at 921 (while ERISA doesn't require plans to "use any specific mortality table or any specific interest rate," plans must choose among "options that fall within the range of reasonableness at the time of the benefit determination, as determined by professional actuaries.").

To that end, Plaintiffs do not contend that ERISA mandates the use of the precise mortality and interest rate assumptions set forth in 26 U.S.C. § 417(e) in calculating a JSA or QPSA. *Contra* Defs.' Mem. 13. Rather, § 417(e)—which is based on *current* mortality tables and prevailing interest rates at the time of a retiree's commencement of benefits—simply provides a conservative benchmark that is helpful in evaluating whether *Defendants'* chosen assumptions result in actuarial equivalence, as required by the statute. Because Odom would receive a larger benefit were his JSA calculated using contemporary mortality assumptions, Odom has plausibly alleged that Defendants are using inaccurate and outdated assumptions that do not result in actuarial equivalence. *See, e.g.*, SAC ¶ 61 ("Had Mr. Odom's joint and survivor annuity been calculated using reasonable actuarial assumptions, *such as* those . . . under 26 U.S.C. § 417(e), his monthly payment . . . would be significantly more . . . ." (emphasis added)).

Even without mandating specific assumptions, Congress's decision to require "actuarial equivalence" has independent force because the "plain meaning of the

term 'actuarial equivalence' . . . supports" the view that defendants cannot simply pick whatever assumptions they please. *Urlaub*, 2022 WL 523129, at *6. "To be equivalent means to be 'equal in force, amount, or value.'" *Id.* (citation omitted). And "[o]nly accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two." *Id.* This Court should reach the same conclusion as almost every other decision on this issue.[3]

## B.  Defendants' challenge to Odom's JSA claim under § 1053 fails (Count II).

Defendants also challenge whether Odom properly states a "forfeiture" claim under 29 U.S.C. § 1053 with respect to the conversion of his JSA. Section 1053 is ERISA's "anti-forfeiture" provision, which bars a plan from reducing a participant's benefits beyond what is actuarially reasonable—as doing so would be an illegal forfeiture. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009); 26 C.F.R. § 1.411(a)-4(a). That is what Odom alleges here: Defendants' use of punitive and outdated assumptions to calculate his JSA reduces his benefit beyond what is actuarially equivalent, resulting in an illegal forfeiture.

---

[3] The lone decision to the contrary—holding that plans can use *unreasonable* actuarial assumptions—offers literally no explanation for why its conclusion would not render ERISA's actuarial-equivalence requirement a dead letter. *See Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 176-77 (D. Mass. 2022). This is presumably why the defendant in that case elected to abandon its position and settle before the appeal was decided. *See Belknap v. Mass Gen. Brigham, Inc.*, 2022 WL 4333752 (1st Cir. Aug. 30, 2022). This Court should disregard it as a non-controlling, unpersuasive out-of-circuit decision, which is also an outlier.

Defendants' only counterargument is that § 1053, in their view, protects only "the benefit *as calculated by the terms of the Plan*," meaning that as long as the benefit was correctly calculated under the Plan's terms, no forfeiture can occur. Defs.' Mem. 15. Not so. Defendants ignore a directly on-point regulation and numerous cases to the contrary. The applicable regulations state that "adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a); *see also Chevron, USA, Inc. v. NRDC*, 467 U.S. 837 (1984) (holding that a federal agency's interpretation of federal statutes is entitled to deference). Numerous courts have also held that excessive actuarial reductions—like those Plaintiffs allege here—do indeed result in illegal forfeitures under § 1053. *Masten*, 543 F. Supp. 3d at 36 (holding that "actuarial assumptions [that] reduced [the plaintiff's] benefits as compared to the Plan's default benefit" give rise to a claim under § 1053); *Torres*, 416 F. Supp. 3d at 650 ("Improper actuarial adjustments that reduce a pension's value is a forfeiture under [29 U.S.C. § 1053]." (citing *Contilli*, 559 F.3d at 722)); *Urlaub*, 2022 WL 523129, at *7-8; *U.S. Bancorp*, 2019 WL 2644204, at *3-4. Defendants do not even attempt to grapple with this on-point authority.

Defendants' reliance on general statements about § 1053 in cases like *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981), is misplaced. *Alessi* does state, for example, "[t]hat the private parties, not the Government, control the level of

11

benefits." *Id.* at 511; *see also* Defs.' Mem 14-16. But excessive actuarial reductions that eliminate "the level of benefits" that Plaintiffs are otherwise entitled to under the Plan are indeed forfeitures, which are prohibited under § 1053. Nothing in *Alessi* says otherwise. *Id*. For example, Odom retired at age 65 with a normal retirement benefit of $3589/month. SAC ¶¶ 19, 60; *see also* 29 U.S.C. § 1002(22) (defining "normal retirement benefit" as the "benefit under the plan commencing at normal retirement age" which is 65 under the Plan). Thus, when the Plan reduced his normal retirement benefit of $3589/month to a JSA of $2899/month (which is less than actuarially equivalent in value), a forfeiture occurred. SAC ¶ 60. *Contilli*, 559 F.3d at 722; *Masten*, 543 F. Supp. 3d at 36.

## II.   Plaintiffs have stated a claim for an excessive QPSA charge (Count III).

Defendants also challenge Count III by arguing (1) that they can impose whatever QPSA charge they please, no matter how punitive and unreasonable, and (2) that in any event their charge was not factually excessive. They are incorrect.

A word of background on QPSAs. Congress designed the provisions of § 1055 to ensure that spouses of married participants would not be left destitute when the working spouse died. "As the Supreme Court stated in *Boggs v. Boggs*, 520 U.S. 833, 843 (1997), '[t]he statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses.'" *Urlaub*, 2022 WL 523129, at *5. "'ERISA's solicitude for the economic

security of surviving spouses would be undermined by allowing' employers to give a married worker a lower pension than an otherwise similarly situated unmarried worker." *Id.* (quoting *Boggs*, 520 U.S. at 843). However, because a JSA only kicks in once the working spouse retires, this left a gap in situations when the working spouse died *before* retiring. To fill this gap, Congress passed the Retirement Equity Act of 1984, an amendment to ERISA that requires pension plans to provide what's known as a QPSA. *See* Pub. L. No. 98-397 (codified in part at 29 U.S.C. § 1055(e)). The Act was explicitly designed to "provide for greater equity under private pension plans for workers and their spouses and dependents by taking into account . . . the status of marriage as an economic partnership." *Id.* Essentially, if the worker dies before retiring, the spouse gets the portion of the JSA he or she *would have* gotten had the worker retired before dying, or the actuarial equivalent thereof.[4] In this way, the QPSA is akin to a form of life insurance.

Most plans provide the QPSA for free, without any reduction to the worker's accrued benefit. SAC ¶ 83. But Treasury regulations do permit a "charge for the QPSA that reasonably reflects the cost of providing the QPSA." 26 C.F.R.

---

[4] Section 1055(e)(1)(A) defines a "QPSA" as "a survivor annuity for the life of the surviving spouse of the participant if the payments to the surviving spouse under such annuity are not less than the amounts which would be payable as a survivor annuity under the qualified joint and survivor annuity under the plan (or the **actuarial equivalent** thereof)" (emphasis added).

13

§ 1.401(a)-20 Q/A-21. (Again, akin to the premium someone would have to pay for a life insurance policy.) This regulation is controlling under 29 U.S.C. § 1055(i), which provides that a "plan may take into account in any equitable manner (as determined by the Secretary of the Treasury) any increased costs resulting from providing . . . a [QPSA]." And as Treasury's nonforfeiture regulation explains, the QPSA charge cannot exceed what is actuarially reasonable to account for the cost of providing the insurance of a QPSA. 26 C.F.R. § 1.411(a)-4(a) ("adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable").

The upshot is that, while a *reasonable* QPSA charge is permitted, plans cannot impose a QPSA charge greater than what is actuarially reasonable to account for the cost of providing the QPSA. SAC ¶ 38. Otherwise, an impermissible forfeiture occurs, in violation of § 1053. That is exactly what Plaintiffs allege here.

In Odom's case, Defendants reduced his monthly pension benefit by $375 per month for the QPSA charge, which caused him to forfeit thousands of dollars of his protected pension benefits in just the five years since he retired. SAC ¶¶ 60, 89. Meanwhile, Drummond's benefit was reduced by nearly 300% more than reasonable actuarial assumptions would support, based on mortality assumptions that are more than 70 years out-of-date. SAC ¶¶ 86-87. This will result in over $19,000 in forfeited pension benefits over the course of his expected life. *Id.* ¶ 87. These are not "naked

conclusions," as Defendants claim, Defs'. Mem. 17; they're factual allegations that must be "accepted as true." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 867 (11th Cir. 2023).

Defendants assert that they can impose any QPSA charge—no matter how great—so long as the charge is set forth in the Plan's terms. Defs.' Mem. 16-17. This is wrong and would render ERISA's anti-forfeiture protections a nullity. Under Defendants' view, an employer could gut a married retiree's normal retirement benefit (which is protected from forfeiture) through the guise of a QPSA charge and reduce Plaintiffs' pensions by 90% with impunity as long as the reduction was set forth in the Plan. Defendants' position cannot be squared with the above-described statutory schema, which is designed to achieve equity between married and unmarried participants by ensuring that married participants and their spouses receive actuarially equivalent benefits compared to similarly situated unmarried participants. *See Urlaub*, 2022 WL 523129, at *5-6. A QPSA charge based on unreasonable and outdated actuarial factors contravenes this framework by imposing an unjust penalty on married participants.

That a participant and spouse can opt out of the QPSA altogether does not somehow alter the requirement that any QPSA reduction must be reasonable and equitable—a requirement established by both the statute and agency regulations. A participant and spouse can also opt out of a JSA altogether—and decide, for example,

15

to take an SLA—but that does not change ERISA's actuarial equivalence requirements or the fact that a JSA that is less than the actuarial equivalent of an SLA constitutes a forfeiture. *Masten*, 543 F. Supp. 3d at 36; *Torres*, 416 F. Supp. 3d at 650; *Urlaub*, 2022 WL 523129, at *7-8; *U.S. Bancorp*, 2019 WL 2644204, at *3-4. The same logic applies to an excessive and unreasonable QPSA charge.

As the SAC explains, in using severely "outdated actuarial assumptions, the Plan dramatically overestimated the probability" that Plaintiffs "would pass in any given year and therefore overestimated the likelihood" the Plan would be providing their spouses "the statutorily required death benefit." SAC ¶¶ 87, 90. The SAC even sets forth what a reasonable QPSA charge would have been for each Plaintiff. *Id.* ¶¶ 87, 89. Nevertheless, Defendants complain that Plaintiffs do not allege that the QPSA charges "failed to account for the costs of providing QPSA coverage." Defs.' Mem. 17 n.7. Defendants leave out key language in the Treasury regulation, which requires that a QPSA charge "*reasonably* reflects the cost of providing the QPSA." 26 C.F.R. § 1.401(a)-20 Q/A-21 (emphasis added). Plaintiffs have clearly alleged that the QPSA charges were calculated based on *unreasonable* actuarial factors that were extremely out of date—which means the QPSA charges did *not* "reasonably reflect" the cost of providing the benefit. SAC ¶¶ 7, 12, 84-92.

Just as with Plaintiffs' § 1055 claim—where courts have routinely found that using tables from the 1970s or 1980s was sufficient to allege unreasonableness for

purposes of a motion to dismiss, *see supra* § I—Plaintiffs have adequately alleged that Defendants' use of severely outdated tables, including tables from the *1950s*, results in an unreasonable and inequitable QPSA charge and an unlawful forfeiture.

## III.   Plaintiffs have stated a claim for breach of fiduciary duty (Count IV).

### A.   Defendants' statutory violations also give rise to a breach of fiduciary duty claim.

Defendants contend that Plaintiffs' fiduciary breach allegations in Count IV fail to state a claim. Defs.' Mem. 17-25. Defendants' argument that they cannot breach fiduciary duties by following or by failing to amend the Plan Document is incorrect. First, Defendants fail to acknowledge that the Benefits Administration Committee, in addition to being the Plan's "named fiduciary" and Plan "administrator," SAC ¶¶ 22, 67, 75, 94, 98, 103, is granted "exclusive discretionary authority" to "constru[e] and interpret[] the Plan," as well as "to amend or modify the Plan in order to comply with ERISA," *Id.* ¶ 99. The fiduciary duties flowing from this express grant of authority are squarely implicated because Plaintiffs are complaining that the Plan's terms did not comply with the law or provide actuarially equivalent benefits. *See id.* Count IV; s*ee also* 29 U.S.C. § 1002(21)(A)(iii) ("[A] person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan.").

While Defendants are correct that, by challenging illegal Plan terms, Plaintiffs' fiduciary breach claim is premised in part on Defendants' statutory

violations, this does not somehow make the fiduciary claim deficient. An ERISA fiduciary is not free to ignore the statute's substantive requirements, much less the Plan's express fiduciary discretion "to amend or modify the Plan in order to comply with ERISA." SAC ¶ 99. Defendants' argument is contradicted by on-point circuit authority that Defendants omit from their opening brief, expressly holding that, through 29 U.S.C. § 1104(a)(1)(D), "[t]he statute *does* impose a general fiduciary duty to comply with ERISA." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120 (2d Cir. 2009), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (emphasis added); *see also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530-31 (5th Cir. 2016) (quoting *Kendall*, 561 F.3d at 120) (same); *Doe v. United Behav. Health*, 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (denying motion to dismiss on identical grounds, holding that Defendants "cannot hide behind the plan terms" since "ERISA imposes specific and independent duties on its fiduciaries to otherwise comply with the provisions of ERISA"). Thus, by failing to comply with ERISA's actuarial equivalence requirements—and by applying plan terms that violate those requirements—Defendants breached their fiduciary duties.

The Second Circuit applied this rule in circumstances directly analogous to this case in *New York State Psychiatric Ass'n, Inc., v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015). There, the plaintiff alleged that defendants breached their

fiduciary duties by following plan terms applying different policies to mental health claims than to medical claims. *Id.* at 130. The plaintiff's fiduciary breach claim was premised entirely on a statutory violation—treating mental health and medical benefits differently violated ERISA's requirement that "treatment limitations applied to mental health benefits be no more restrictive than the . . . requirements and treatment limitations applied to . . . medical and surgical benefits." *Id.* at 128 (citing 29 U.S.C. § 1185(a)(3)(A)). Reiterating that "[t]he statute imposes a general fiduciary duty to comply with ERISA," the Second Circuit held that "[t]here is no serious dispute that Denbo's [fiduciary breach] claims are both adequately and plausibly alleged." *Id.* at 131 (quoting *Kendall*, 561 F.3d at 120) (cleaned up).

This case presents the same situation. Plaintiffs allege that Defendants violated their fiduciary duties by failing to provide benefits that comply with ERISA's actuarial equivalence and QPSA-charge requirements. Just as in *New York State Psychiatric*, ERISA imposes requirements on the benefits offered by the plan, and, by failing to adhere to those requirements (either by applying the illegal terms or failing to use their authority to amend the plan to bring it into compliance), Defendants violated their "general fiduciary duty to comply with ERISA." *Id.*

The weight of authority supports Plaintiffs' position. By contrast, Defendants offer no circuit-level authority supporting their view; moreover, two of their three out-of-circuit cases are no longer good law in light of *Kendall* and *New York State*

*Psychiatric*. *See* Defs.' Mem. 21-22 (citing *Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 184 (E.D.N.Y. 2005), and *Roe v. Empire BCBS*, 2014 WL 1760343, at *8 (S.D.N.Y. May 1, 2014)).

Indeed, in another analogous context, the Supreme Court has recognized a fiduciary's ongoing obligation to ensure that an ERISA plan complies with the law. In *Tibble v. Edison International*, the Court faced the question of whether a fiduciary had an ongoing obligation to ensure that the investment options set forth in the plan complied with ERISA. 575 U.S. 523 (2015). The Court recognized that "under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 530. This duty existed "separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529. Accordingly, the Court held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530.

The same reasoning applies here. Trust law has always imposed an ongoing duty on fiduciaries to comply with the law in their administration of a trust, even if that means going against the trust's terms. *See, e.g.*, Restatement (Third) of Trusts § 72 (2007) ("A trustee has a duty not to comply with a provision of the trust that the trustee knows or should know is invalid because the provision is unlawful or contrary to public policy."); *id.* cmt. (b) ("Not only is the trustee under no duty to

20

comply with a term of the trust that is invalid (Comment *a*), but, as stated by the rule of this Section, the trustee ordinarily has a duty to the beneficiaries *not* to comply. . . . Furthermore, a trustee has a duty not to comply with a trust provision that directs the trustee to refrain from doing an act, if it is unlawful or against public policy for the trustee not to perform that act." (second emphasis added)). Thus, under the reasoning of the Supreme Court in *Tibble*, the longstanding duty imposed by trust law to ensure the trust is administered lawfully applies here as well. Plaintiffs have accordingly stated claims for fiduciary breach.

**B.**    **Plaintiffs have stated a breach of fiduciary duty claim based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits.**

Defendants next contend that Plaintiffs cannot state a breach of fiduciary duty claim based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits. Defendants misapprehend the relevant legal standard and overlook Plaintiffs' detailed allegations about what made Defendants' communications inaccurate and misleading.

It is beyond dispute that ERISA fiduciaries have a duty to communicate clearly and accurately to plan participants. A defendant "breache[s] its fiduciary duty to act with care, skill, prudence, and diligence when it fail[s] to provide [participants] with complete and accurate information on [their] benefits." *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 105 (2d Cir. 2020) (cleaned up); *see also, e.g.,*

*Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013) (Fiduciaries must "disclose material information to beneficiaries . . . [which] encompasses both an obligation not to mislead the participant of an ERISA plan, and also an affirmative obligation to communicate material facts affecting the interests of plan participants." (citation omitted)); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990) ("The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA."); *Smith v. Williams*, 819 F. Supp. 2d 1264, 1281 (M.D. Fla. 2011) (fiduciaries "may not materially mislead" participants (citation omitted)); *In re Beazer Homes USA, Inc. ERISA Litig.*, 2010 WL 1416150, at *8 (N.D. Ga. Apr. 2, 2010) ("[D]ismissal of a claim alleging a failure to fully inform plan participants at the motion to dismiss stage would be inappropriate." (citing *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1377 (N.D. Ga. 2005))); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (recognizing a duty to disclose and to correct misleading information sent to plan participants).

These are often styled as claims for "misrepresentation," but, under ERISA, they do not require intent to defraud. Even "unintentional misrepresentations" give rise to fiduciary liability if the defendant acted imprudently in its communications with participants. *Sullivan-Mestecky*, 961 F.3d at 104-05 (imposing fiduciary liability for failing to communicate accurately regarding benefits where no

intentional misrepresentation was alleged, only imprudence). Plaintiffs' misrepresentation claims sound in negligence, not fraud, and "the heightened pleading standards of Rule 9(b) do not apply to claims of negligent misrepresentation." *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1339 (N.D. Ga. 2021) (citation omitted); SAC ¶¶ 105-13; *see also* Fed. R. Civ. P. 9(b) (presupposing a claim for fraud involving "[m]alice, intent, knowledge," etc.). Here, Plaintiffs have *not* alleged fraud but rather allege claims sounding in negligent misrepresentation—which the 11th Circuit and this district have stated does *not* implicate Rule 9(b). This is in sharp contrast to *In re Coca-Cola Enterprises Inc., ERISA Litigation*, where the court explained, "[i]f plaintiffs bring a [misrepresentation] claim without alleging the misrepresentation at issue in the claim was fraudulent, they would avoid the heightened pleading requirements of Rule 9(b)." 2007 WL 1810211, at *5-6 (N.D. Ga. June 20, 2007) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006)).

At any rate, under any pleading standard, Plaintiffs have adequately alleged that Defendants breached their duty to communicate accurately with participants. As Plaintiffs allege in detail, prior to their benefit elections, Defendants sent communications to them affirmatively telling them that their JSAs *did* have equivalent value to the SLA, when in fact they did not. SAC ¶¶ 105-115. Moreover, the Plan document itself, which Defendants filed in support of their motion,

expressly assures participants that their JSAs would be "adjusted on an Actuarial Equivalent basis." ECF 53-3 § 5.1(a)(1).[5] Even if "unintentional," that is a straightforward failure to communicate accurately with participants, in breach of Defendants' fiduciary duties.

Defendants complain that Plaintiffs have not identified the "particular communications" that contained these misrepresentations. Defs.' Mem. 23. That is untrue. Though Plaintiffs did not attach the document, they described with specificity several offending communications—the mandated relative value disclosures provided to Plaintiffs—and exactly why they were misleading:

> When communicating to Plaintiffs and the Class members, the Benefits Administration Committee compared the value of married participants' optional forms of benefit to a form of benefit the Benefits Administration Committee called a [SLA] which the Benefits Administration Committee described as the automatic form for unmarried participants. However, the [SLA] used for that comparison was also reduced by a QPSA charge. Therefore, it was *not* the "QJSA for an *unmarried* participant (i.e., a single life annuity)," 26 C.F.R. § 1.417(a)(3)-1(c)(2)(ii)(B) (emphasis added), because the default form of pension for unmarried participants is not reduced by any QPSA charge. The purported [SLA] amount the Benefits Administration Committee utilized for the relative value comparison thus was not a permissible basis for comparison and resulted in a deceptive and misleading relative value disclosure.

---

[5] The Plan document, unlike the administrative claim letters, may be considered on a motion to dismiss because it is referenced in and central to Plaintiffs' complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted).

SAC ¶ 110; *see also id.* ¶¶ 108-09. In other words, though the QPSA charge is not in fact deducted from SLAs for unmarried participants, Defendants' disclosures misleadingly compared the Plaintiffs' JSAs to a supposed "single life annuity" that was incorrectly reduced by a QPSA charge. Defendants completely ignore this detailed and specific allegation explaining exactly what they misrepresented to Plaintiffs. *See* Defs.' Mem. 24-25 (citing SAC ¶ 112). Nor do Defendants file a Rule 12(e) motion for a more definite statement (or satisfy its prerequisites) or assert that they have insufficient notice of the allegations against them to file an answer. Plaintiffs' allegations are more than adequate to survive Defendants' Rule 12(b)(6) challenge.

## CONCLUSION

Defendants' motion should be denied. To the extent the Court grants any aspect of Defendants' motion, however, it should allow Plaintiffs leave to amend.

Dated: October 20, 2023

<div style="margin-left: 2em;">

Respectfully submitted,

AUSTIN & SPARKS, P.C.
By:   */s/ John T. Sparks, Sr.*
John T. Sparks, Sr.
Georgia Bar No. 669575
2974 Lookout Place, N.E., Suite 200
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)
jsparks@austinsparks.com

</div>

Michelle C. Yau (admitted *pro hac vice*)
Daniel R. Sutter (admitted *pro hac vice*)
Eleanor Frisch (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
efrisch@cohenmilstein.com

Peter K. Stris (admitted *pro hac vice*)
John Stokes (admitted *pro hac vice*)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
pstris@stris.com
jstokes@stris.com

Shaun P. Martin (admitted *pro hac vice*)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

Todd Jackson (admitted *pro hac vice*)
Nina Wasow (admitted *pro hac vice*)
FEINBERG,   JACKSON,   WORTHMAN   &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

***Attorneys for Plaintiffs***

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been prepared in Times New Roman, 14-point font, which is one of the fonts approved by Local Rule 5.1(C).

Dated: October 20, 2023          AUSTIN & SPARKS, P.C.
                                 By:    */s/ John T. Sparks, Sr.*
                                        John T. Sparks, Sr.
                                        Georgia Bar No. 669575

                                        *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to all attorneys of record.

Dated: October 20, 2023                    COHEN MILSTEIN SELLERS & TOLL
                                           By:    */s/ Eleanor Frisch.*
                                           Eleanor Frisch

                                           *Attorney for Plaintiffs*

28