# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| WILLIAM DRUMMOND and RICHARD ODOM, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:22-CV-174-SCJ |
| SOUTHERN COMPANY SERVICES, INC.; THE SOUTHERN COMPANY PENSION PLAN; and THE BENEFITS ADMINISTRATION COMMITTEE; | |
| Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ....................................................................................................2

I.  PLAINTIFFS' OPPOSITION CONFIRMS THAT PLAINTIFF ODOM
    FAILS TO STATE VIABLE CLAIMS IN COUNTS I AND II. ..................2

    A.  Plaintiff Odom's Concession That ERISA Does Not Mandate the
        Use of Specific Actuarial Assumptions to Calculate a JSA Dooms
        his § 1055 Claim.....................................................................................2

    B.  Plaintiff Odom's Concession That His Benefit Was Calculated
        Per the Plan's Terms Dooms His § 1053 Claim. ...................................5

II. PLAINTIFFS FAIL TO MAKE ANY ALLEGATIONS TO SUPPORT
    A CLAIM FOR EXCESSIVE QPSA CHARGES IN COUNT III. ..............8

III. PLAINTIFFS' OPPOSITION FAILS TO SAVE THEIR DEFICIENT
     BREACH OF FIDUCIARY DUTY CLAIM IN COUNT IV.....................10

    A.  Plaintiffs Provide no Authority to Invent New Fiduciary Duties. .....10

    B.  Plaintiffs' Opposition Confirms the SAC Fails to Satisfy
        Rule 9(b)'s Heightened Pleading Standard. .......................................14

CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

Page

CASES

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981)............................................................................5, 7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................3

*Belknap v. Partners Healthcare Sys., Inc.*,
588 F. Supp. 3d 161, 172-74 (D. Mass. 2022) ............................................3, 4, 5

*Buffington v. McDonough*,
143 S. Ct. 14 (2022) ...............................................................................7

*Burkett v. Heritage Corp.*, No. 1:22-CV-405-HAB, 2023 WL
4579953, at *3 (N.D. Ind. July 18, 2023) .......................................................14

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*,
387 F. Supp. 2d 175 (E.D.N.Y. 2005)..............................................................12

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*,
467 U.S. 837 (1984).................................................................................7

*Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*,
559 F.3d 720 (7th Cir. 2009) ....................................................................6

*Goist v. Coca-Cola Co.*,
No. 1:10-CV-1576-MHS, 2010 WL 11597138 (N.D. Ga. Oct. 5,
2010) .................................................................................................14

*Herndon v. Huntington Ingalls Indus., Inc.*,
No. 4:19-CV-52, 2020 WL 3053465 (E.D. Va. Feb. 20, 2020)..........................3

*In re Coca-Cola Enterprises Inc., ERISA Litig.*,
　　No. 1:06-CV-0953 TWT, 2007 WL 1810211 (N.D. Ga. June 20,
　　2007) ...............................................................................................14

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
　　561 F.3d 112 (2d Cir. 2009) ..............................................................11

*Lockheed Corp. v. Spink*,
　　517 U.S. 882 (1996)...........................................................................11

*Mass. Mutual Life Ins. Co. v. Russell*,
　　473 U.S. 134 (1985)...........................................................................13

*Mertens v. Hewitt Assocs.*,
　　508 U.S. 248 (1993)........................................................................8, 13

*Mora v. Univ. of Texas Sw. Med. Ctr.*,
　　469 F. App'x 295 (5th Cir. 2012) .........................................................3

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*,
　　798 F.3d 125 (2d Cir. 2015) ..............................................................11

*Noell v. Am. Design, Inc.*,
　　764 F.2d 827 (11th Cir. 1985) ..............................................................5

*Rush Prudential HMO, Inc. v. Moran*,
　　536 U.S. 355 (2002)..............................................................................5

*Sec'y of Labor v. Macy's, Inc.*,
　　No. 17-CV-541, 2022 WL 407238 (S.D. Ohio Feb. 10, 2022) .........12

*Skrtich v. Pinnacle West Capital Corp.*,
　　No. 2:22-CV-01753-PHX-SMB, slip op. (D. Ariz. Aug. 7, 2023) ....12

*Smith v. Rockwell Automation, Inc.*,
　　438 F. Supp. 3d 912 (E.D. Wis. 2020) ..................................................4

iii

*Smith v. U.S. Bancorp*,
   No. 18-3405, 2019 WL 2644204 (D. Minn. June 27, 2019) ................................6

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015)..........................................................................................13

*Urlaub v. CITGO Petroleum Corp.*,
   No. 21-C-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022)................................3

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)............................................................................................5

*Young v. Grand Canyon Univ., Inc.*,
   57 F.4th 861 (11th Cir. 2023) .............................................................................9

**STATUTES**

26 U.S.C.
   § 401...............................................................................................................1, 5
   § 411..................................................................................................................7
   § 417..............................................................................................................2, 3

29 U.S.C.
   § 1053.........................................................................................................passim
   § 1055.........................................................................................................passim
   § 1104..................................................................................................10, 12, 13

Retirement Equity Act of 1984, Pub. L. No. 98-397
   § 301(b), 98 Stat. 1426, 1451 (Aug. 23, 1984)....................................................1

**OTHER AUTHORITIES**

26 C.F.R. § 1.411(a)-4 ...............................................................................................8, 10

26 C.F.R. § 1.411(a)-4(a)..........................................................................................6, 7, 9

26 C.F.R. § 1.411(a)-4(c)...............................................................................................8

Restatement (Second) of Trusts § 166 (1959) ............................................................13

Rev. Rul. 79-90, 1979-1 C.B. 155 (1979)....................................................................5

Fed. R. Civ. P. 9 ................................................................................14, 15

The plain language of ERISA and the Plan control the claims Plaintiffs raise in the SAC.[1]  Plaintiffs concede that ERISA does not require the Plan to use any particular actuarial assumptions to calculate their pension benefits.  ERISA leaves it to the Plan to set those assumptions.  Plaintiffs also concede that their respective pension benefits were calculated under the terms of the Plan.  But they still ask the Court to redraft both ERISA and the Plan to incorporate their preferred actuarial assumptions in an attempt to get more money than the Plan contracted to give them.  The text of ERISA, however, provides no basis for the Court to graft Plaintiffs' chosen actuarial assumptions (or any particular actuarial assumptions) onto the Plan.  Without a basis in law or contract, Plaintiffs' Opposition tries to misdirect the Court from the plain language of ERISA and the Plan, including by, among other things, mischaracterizing a Treasury Regulation and unduly limiting the Supreme Court's opinion in *Alessi v. Raybestos-Manhattan, Inc.* to support their forfeiture claims and ignoring relevant precedent to support their fiduciary breach claim.[2]  In short, Plaintiffs' arguments cannot save the SAC from dismissal.

---

[1] Short cites, titles, and capitalized terms correspond to those in ECF No. 53-1 ("Motion," cited as "Mot."). "Opposition" (cited as "Opp.") refers to ECF No. 56.

[2] Indeed, Plaintiffs fail to mention that when Congress added QJSAs and QPSAs to ERISA, Congress made clear that it is the plan that sets the assumptions.  *See* Retirement Equity Act of 1984, Pub. L. No. 98-397 § 301(b), 98 Stat. 1426, 1451 (Aug. 23, 1984), *codified at* 26 U.S.C. § 401(a)(25) ("[W]henever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are [to be] specified in the plan.").

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION CONFIRMS THAT PLAINTIFF ODOM FAILS TO STATE VIABLE CLAIMS IN COUNTS I AND II.**

A. **Plaintiff Odom's Concession That ERISA Does Not Mandate the Use of Specific Actuarial Assumptions to Calculate a JSA Dooms his § 1055 Claim.**

Plaintiff Odom ("Odom") admits that "the statute does not mandate the use of specific [actuarial] assumptions" to calculate an actuarially equivalent JSA benefit and acknowledges that "Congress did not prescribe any particular method of meeting [the actuarial equivalence] requirement." Opp. 8–9. Thus, there is no basis in ERISA or the Plan (*i.e.*, the contract) for Odom to impose his preferred actuarial assumptions on JSA calculations, and the Court must dismiss Odom's JSA claims.

Undeterred by the plain language of § 1055, Odom asks the Court to redraft that statute **and** the Plan by grafting terms and definitions from other inapplicable provisions of ERISA. Specifically, Odom asks the Court to import the mortality and interest rate assumptions from 26 U.S.C. § 417(e) to calculate a JSA. *See* SAC ¶¶ 26 (defining the JSA class as "[a]ll participants of the Plan (and their beneficiaries) who are receiving a [JSA] . . . that is less than the value of the [SLA] when converted to a [JSA] using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e)"). But § 417(e) only applies to lump sum payments—not Odom's JSA—and, thus, this position lacks merit. Apparently recognizing this, Odom disclaims the SAC's class definitions and recharacterizes § 417(e) as a "benchmark" in his

Opposition.  Opp. 9.  Even so, there is still no basis for the Court to import those or any other assumptions into 29 U.S.C. § 1055 or the Plan.[3]  *See* Mot. 13 & n.5.

Odom further urges the Court to redraft the Plan *and* ERISA because some out-of-circuit district courts have let similar novel claims proceed beyond a motion to dismiss.  *See id.* at 8–10 & n.3.  Odom, however, fails to grapple with directly on-point authority precisely explaining how each of those cases came to the wrong conclusion.  *See Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 172–74 (D. Mass. 2022), *appeal dismissed sub nom. Belknap v. Mass Gen. Brigham, Inc.*, No. 22-1188, 2022 WL 4333752 (1st Cir. Aug. 30, 2022) (distinguishing *Urlaub v. CITGO Petroleum Corp.*, No. 21-C-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022) (relied on the dictionary definition of "equivalent"); *Herndon v. Huntington Ingalls Indus., Inc.*, No. 4:19-CV-52, 2020 WL 3053465 (E.D. Va. Feb. 20, 2020) (relied on case that interpreted a different provision of ERISA); and *Torres*

---

[3] Odom's failure to state a claim is further illuminated by his inconsistent theories.  For example, the SAC alleges that Odom (whose JSA was calculated using the factors added to the Plan in 2016) would have been better off using 1951-GAM-based assumptions, but simultaneously alleges that the 1951-GAM was "extremely outdated."  SAC ¶¶ 49, 53.  The SAC also alleges Odom's monthly JSA payment "would be significantly more" using § 417(e)'s assumptions, but then alleges that by using the "assumptions prescribed by § 417(e), his monthly payment would be approximately 1% higher."  SAC ¶ 61.  Alleging a violation of "actuarial equivalence" by pointing to a 1% variance using factors that Odom now contends are not required (Opp. 9) is inconsistent and insufficient to state a claim.  *See Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (affirming dismissal where factual contradictions in the complaint made the claim "implausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009) (requiring plausibility).

*v. Am. Airlines, Inc.*, 416 F. Supp. 3d 640 (N.D. Tex. 2019) (relied on Treasury regulations that are unenforceable under ERISA)).[4]  Instead, Odom misrepresents *Belknap*'s holding and implores this Court to ignore it.  *Compare* Opp. 10 n.3, *with Belknap*, 588 F. Supp. 3d at 175 (holding ERISA does not define actuarial equivalence or require the use of reasonable assumptions).  This is unsurprising because Odom **cannot** argue why this Court should not take counsel from *Belknap*— a more recent decision than any case cited in support of his argument—to address these actuarial equivalence claims.  As *Belknap* recognized, the question before the Court is one of statutory and Plan construction.  Because *Belknap* is the only case to thoroughly look at the text of ERISA to address the meaning of "actuarial equivalent," it is the only case that provides guidance here.

Further, Odom's flippant contention that *Belknap* "render[s] ERISA's actuarial-equivalence requirement a dead letter," Opp. 10 n.3, is dead wrong. *Belknap* makes clear—and, as noted above, Odom concedes—that ERISA does not define "actuarial equivalence," nor does it require the use of specific assumptions to produce an actuarially equivalent benefit.  *Belknap*, 588 F. Supp. 3d at 175; Opp. 8; SAC ¶ 26.  In the absence of any statutory definition, the Plan's terms control what

---

[4] *Smith v. Rockwell Automation, Inc.*, 438 F. Supp. 3d 912 (E.D. Wis. 2020), is also inapposite because it involved a ten-year certain-and-life annuity (not a JSA), and the defendants there agreed that "actuarial equivalence" for such a benefit requires the use of assumptions that were reasonable.  *Id.* at 914–16, 919–20.  Defendants here make no such concession.  *See* Mot. 11–14.

assumptions it uses to determine an actuarially equivalent benefit.  *Belknap*, 588 F. Supp. 3d at 175; *see also Alessi v. Raybestos-Manhattan, Inc*., 451 U.S. 504, 511 (1981) ("That the private parties, not the Government, control the level of benefits is clear from the statutory language . . . of ERISA.").  The statute still has effect, even if Odom does not like that the effect is the Plan sets the assumptions.  *See* 26 U.S.C. § 401(a)(25) (requiring actuarial assumptions to be stated in the plan); Rev. Rul. 79-90, 1979-1 C.B. 155 (1979) (permitting plans to use a table of adjustment factors).  As in *Belknap*, the Court should decline Odom's invitation to redraft the Plan and legislate out of whole cloth a new requirement into ERISA's carefully-crafted framework.  Any other result would "patently violate[] ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities," *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002), and conflict with Congress' "desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place[,]" *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

### B.   Plaintiff Odom's Concession That His Benefit Was Calculated Per the Plan's Terms Dooms His § 1053 Claim.

Under Supreme Court precedent, the Plan terms alone determine the amount of a benefit that is immune from forfeiture.  *Alessi*, 451 U.S. at 511; *see also Noell v. Am. Design, Inc.*, 764 F.2d 827, 831 (11th Cir. 1985).  Odom concedes his benefit was calculated under the Plan's terms.  *See* SAC ¶ 60.  He does not contest that the

Plan has paid his benefit.  These concessions doom his § 1053 claim.

Nonetheless, Odom relies on inapt out-of-circuit authority, his misreading of a single sentence in a Treasury regulation, and an unduly limited reading of *Alessi* to contend that he suffered a forfeiture because the Plan did not use his preferred actuarial assumptions.  Opp. 10–12.  No binding authority supports this theory.

***First***, Odom's out-of-circuit cases are inapt because they rely on selective language from a factually-distinct Seventh Circuit decision, *Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720 (7th Cir. 2009).[5]  There, a plan participant deferred his benefit until after normal retirement age and the plan failed to (i) make benefit payments between his retirement and benefit approval, or (ii) increase his monthly benefit to account for those missed payments.  *Id.* at 722.  But here, Odom does not contend the Plan failed to make any payments.  SAC ¶ 19.  Thus, *Contilli* and the cases relying on it are irrelevant to Odom's forfeiture theory.

***Second***, Odom's reliance on a single, cherry-picked sentence in a Treasury regulation, 26 C.F.R. § 1.411(a)-4(a) (1977), to wedge Plaintiff Odom's claim within § 1053 is unavailing.  *See* Opp. 11.  That sentence says "[c]ertain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions, can

---

[5] The only case that does not rely on *Contilli* is also distinguishable.  Its underlying analysis is based entirely on cases discussing ERISA's anti-forfeiture requirement in the context of lump-sum distributions (that ***are*** subject to precise, statutory actuarial equivalence assumptions), which are not at issue here.  *See Smith v. U.S. Bancorp*, No. 18-3405, 2019 WL 2644204, at *3 (D. Minn. June 27, 2019).

result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a). But that same regulation also says that, "[t]o the extent that rights are not required to be nonforfeitable to satisfy the minimum vesting standards [*i.e.*, 26 U.S.C. § 411(a)], or [rules about highly-paid employees], they may be forfeited without regard to the limitations on forfeitability required by this section." *Id.* Odom makes no attempt to tie their argument to ***vesting*** and the "employee's right to his normal retirement benefit," which is what § 1053(a) addresses. *See Alessi*, 451 U.S. at 508, 510 (noting that § 1053 "prohibits forfeitures of ***vested pension rights***" (emphasis added)).[6]

***Third***, and in any event, Odom's reading of the regulation contradicts the Supreme Court's subsequent holding in *Alessi* that ERISA's anti-forfeiture provision "does not guarantee a particular amount ***or a method for calculating the benefit***." *Alessi,* 451 U.S. at 512 (emphasis added); *see also id*. ("Rather than imposing mandatory pension levels or methods for calculating benefits, Congress in ERISA set outer bounds on permissible accrual practices . . . , and specified three alternative schedules for the vesting of pension rights, 29 U.S.C. § 1053(a)(2)."). None of the cases cited by Odom even mention *Alessi*. And Odom's mere reference to and

---

[6] Odom's invocation of *Chevron* deference is misplaced because the plain text of ERISA is unambiguous and does not support their claims. *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) ("If the intent of Congress is clear, that is the end of the matter[.]"). In any event, the Supreme Court has recently stopped invoking *Chevron*, even in cases where it would seem to apply. *See, e.g.*, *Buffington v. McDonough*, 143 S. Ct. 14, 21–22 (Mem.) (2022) (Gorsuch, J., dissenting from denial of certiorari) (collecting cases).

comparison of the calculated amounts of his SLA and JSA, Opp. 12 & SAC ¶ 60, does not establish a forfeiture. *Alessi*, 451 U.S. at 512 ("[I]t is the claim to the benefit, rather than the benefit itself, that must be 'unconditional[.]'" (citation omitted)). The regulation's "Examples" of forfeitures—involving total loss of rights to benefits—also illustrate that Odom—who suffered no such loss—has not suffered any forfeiture. *See* 26 C.F.R. § 1.411(a)-4(c).

At bottom, Odom's § 1053 claim—like each of Plaintiffs' claims—boils down to Odom's disagreement with the methodology the Plan used to calculate his benefits. But § 1053 does not define actuarial equivalence, address the conversion of one form of benefit to another, or require the use of certain assumptions for converting a SLA to a JSA—*i.e.*, Odom's theory here. *See* 29 U.S.C. § 1053. Nor does Odom's selected regulation. *See* 26 C.F.R. § 1.411(a)-4. Odom cannot plead a "forfeiture" merely by trumpeting his disagreement with the methodology used to calculate his benefit. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) ("[ERISA's] carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" (citation omitted)).

## II.   PLAINTIFFS FAIL TO MAKE ANY ALLEGATIONS TO SUPPORT A CLAIM FOR EXCESSIVE QPSA CHARGES IN COUNT III.

Plaintiffs concede that ERISA, 29 U.S.C. § 1055(i), allows the Plan to impose a charge for the QPSA that "reasonably reflects the cost of providing the QPSA."

Opp. 5, 13; SAC ¶ 81.  But Plaintiffs fail to allege that the Plan's QPSA charge does not do just that.  Simply put, they make no allegations regarding "the cost of providing the QPSA."  29 U.S.C. § 1055(i); *see generally* SAC ¶¶ 79–97.

Instead, the SAC and Plaintiffs' argument can be distilled to three points: (1) they disagree with the methods (which they allege were based on outdated mortality assumptions, SAC ¶ 85) the Plan used to calculate their QPSA charges; (2) they think—without source or authority—that the QPSA charge should be no more than 0.3% per year for Plaintiff Drummond, *id*. ¶ 87, and no more than 0.6% per year for Plaintiff Odom, *id.* ¶ 89; and (3) they conclude their QPSA charges are too high based on those arbitrary percentages and, thus, cannot be "actuarily reasonable"— again without any authority.  Opp. 13–17.  Without any support, the Court cannot accept these assertions as true or sufficient to state a claim.  Per the case Plaintiffs cited (Opp. 15), "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 867 (11th Cir. 2023).  Plaintiffs' *ipse dixit* is not enough.

Plaintiffs' Opposition miscasts Plaintiffs' QPSA charges as an impermissible forfeiture under § 1053, again relying on 26 C.F.R. § 1.411(a)-4(a).  Opp. 14.  But neither the SAC nor the Opposition cite anything for that proposition.  This is because, as noted above, neither the statute nor the regulation define actuarial equivalence.  *See supra* I.B.  Nor do they address a QPSA or require the use of

9

certain assumptions for calculating a QPSA charge.  *See* 29 U.S.C. § 1053; 26 C.F.R. § 1.411(a)-4.  As explained above and as *Alessi* makes clear, it is the right to the normal retirement benefit at normal retirement age that must be nonforfeitable; not the amount or calculation method.  *See supra* I.B.

Finally, Plaintiffs' theory that the QPSA charge "imposes[es] an unjust penalty on married participants," Opp. 15, is a red herring.  QPSAs are only available to married participants, 29 U.S.C. § 1055(e), and Plaintiffs admit a corresponding charge is permitted by law, Opp. 13.

## III. PLAINTIFFS' OPPOSITION FAILS TO SAVE THEIR DEFICIENT BREACH OF FIDUCIARY DUTY CLAIM IN COUNT IV.

### A. Plaintiffs Provide no Authority to Invent New Fiduciary Duties.

Plaintiffs double down on their theory that any time plan terms violate ERISA, a fiduciary breaches its duty by failing to amend or deviate from those terms.  Opp. 17–18.  But no such duty exists.  *See* 29 U.S.C. § 1104.  Nor could it because, as the cases Defendants cited make clear, a decision to amend is not a fiduciary function. *See* Mot. 18–19 & n.9.  Plaintiffs make no attempt to distinguish those cases, and assert no valid basis to save their fiduciary duty claim.

***First***, Plaintiffs assert that the Plan grants the BAC "exclusive discretionary authority" to "amend or modify the Plan in order to comply with ERISA."  Opp. 17 (citing SAC ¶ 99).  This is inaccurate.  The Plan's terms specify limited circumstances in which the BAC may amend the Plan, and the Plan nowhere

provides the BAC with "exclusive discretionary authority" to amend.  *Compare id.*, *with* ECF No. 53-3, at § 11.1(a)(2), (b), *and* ECF No. 53-8, at § 11.1(a)(2), (b).  In any event, failure to amend the Plan is not a basis for fiduciary liability under ERISA. *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("[A]mending a pension plan does not trigger ERISA's fiduciary provisions."); *see also* Mot. 18–19 & n.9.

**Second**, Plaintiffs argue that "a general fiduciary duty to comply with ERISA" requires the BAC to deviate from the Plan's terms.  Opp. 17-19.  But this assertion rests entirely on dicta from two inapposite Second Circuit cases.  *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009), analyzed only whether a plaintiff had standing to sue for an alleged fiduciary breach that did not harm her. *Id.* at 120–21.  And *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015), which relies on *Kendall*, concerned an alleged **breach of the terms of the plan**.[7]  *Id.* at 131.  Neither case had occasion to address the scope of fiduciary duties imposed by ERISA.  For that reason, district courts repeatedly reject the contention that either case recognizes an independent fiduciary duty to deviate from plan terms and, contrary to Plaintiffs' argument, neither case overrules the on-point cases cited in Defendants' opening brief (Mot. at 21–22).

As stated in Defendants' opening brief, "ERISA **does not require** plan fiduciaries to deviate from the terms of a plan that are **not** consistent with ERISA."

---

[7] Plaintiffs concede the BAC followed the terms of the Plan here.  *See* SAC ¶ 115(f).

Mot. 21 (citing *Sec'y of Labor v. Macy's, Inc.*, No. 17-CV-541, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022)); *Macy's*, 2022 WL 407238 at *10 (noting neither *Kendall* nor *UnitedHealth Group* offers "discussion or reasoning to support" a duty to deviate from plan terms and that "district courts in the Second Circuit [do] not" interpret either case to recognize such a duty), and *Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 185 (E.D.N.Y. 2005) ("The proposition that 'a trustee who administers a pension plan knowing it to be in violation of ERISA acts in violation of his fiduciary duties under ERISA,' . . . is based on an overly broad reading of [§ 1104] . . . ." (citation omitted))).  Plaintiffs fail to distinguish these cases. Opp. 20.  Nor could they given the similarity of the allegations here.  Indeed, citing *Macy's* and *Ulico*, a court faced with this precise issue dismissed breach of fiduciary duty claims, rejecting the plaintiffs' argument that there was a fiduciary duty to ignore the plan's chosen mortality table.  *See Skrtich v. Pinnacle West Capital Corp.*, No. 2:22-CV-01753-PHX-SMB, slip op. at 7–8 (D. Ariz. Aug. 7, 2023) (citing *Macy's,* 2022 WL 407238, at *5–6, and *Ulico*, 387 F. Supp. 2d at 185).  This Court should do the same and dismiss Count IV.

Plaintiffs also argue that the Supreme Court has recognized "a fiduciary's ongoing obligation to ensure that an ERISA plan complies with the law," citing *Tibble v. Edison Int'l*, 575 U.S. 523 (2015).  Opp. 20.  *Tibble* created no such duty.  Nor did *Tibble* hold that a fiduciary may violate a Plan's terms.  Instead, *Tibble* made

the unremarkable finding that fiduciary duties attach to investment decisions. *Tibble,* 575 U.S. at 530 ("The parties now agree that the duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]").  Plaintiffs attempt to manipulate that holding to create a new freestanding, ongoing duty to ensure that a defined benefit plan's terms comply with ERISA lacks any basis in *Tibble* or other Supreme Court precedent, much less ERISA itself.  *See* Opp. 20 (implying that *Tibble* found that selecting investment options is akin to plan design, and thus not a fiduciary function, but then quickly admitting that *Tibble* recognized a fiduciary "duty to exercise prudence in selecting investment options at the outset").

**Finally**, Plaintiffs try to draw on the common law of trusts to invent a fiduciary duty to deviate from plan terms.  *See* Opp. 20–21.  The Supreme Court, however, has repeatedly cautioned against incorporating common law duties (including from trust law) not found in ERISA.  *See, e.g.*, *Mertens*, 508 U.S. at 251–62 (holding that ERISA did not incorporate all trust-law remedies and to add such remedies would contradict Congress's intent); Mot. 20–22.  In fact, Congress intentionally omitted from ERISA a duty to deviate from plan terms.  *Compare* Restatement (Second) of Trusts § 166 (1959) *with* 29 U.S.C. § 1104(a)(1)(D) (omitting duty to not comply with terms known to be illegal).  *See also Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (the "assumption of inadvertent omission" is "especially suspect").

**B.      Plaintiffs' Opposition Confirms the SAC Fails to Satisfy Rule 9(b)'s Heightened Pleading Standard.**

Plaintiffs now attempt to characterize their misrepresentation claims as "sound[ing] in negligence, not fraud," to dodge the application of Rule 9(b). Opp. 22–23.[8]  This characterization contradicts the SAC, which plainly attempts to set forth a claim for ***fraudulent*** misrepresentation.  The SAC includes unsupported allegations that the BAC "hid" information, "provid[ed] inaccurate and misleading information," and "misrepresent[ed]" information to "financially benefit[]" SCS (the Plan sponsor).  *See* SAC ¶¶ 110–115(c).  Because Plaintiffs' theory relies on a fraudulent scheme by Defendants, the Court is obligated to apply the heightened pleadings standards contained within Rule 9(b).  *See* Mot. 23 (citing *Herrington v. Household Int'l, Inc*., No. 02-C-8257, 2004 WL 719355, at *6–7 (N.D. Ill. Mar. 31, 2004) (finding an ERISA fiduciary duty claim predicated on alleged misrepresentations amounted to a fraudulent misrepresentation claim)).  *See, e.g., In re Coca-Cola Enterprises Inc., ERISA Litig*., No. 1:06-CV-0953 TWT, 2007 WL 1810211, at *4–6 (N.D. Ga. June 20, 2007) (applying Rule 9(b) to an ERISA claim).

The SAC does not satisfy Rule 9(b).  In fact, Plaintiffs do not suggest they

---

[8] Allowing Plaintiffs to proceed on this new theory mandates dismissal because negligent misstatements are "not actionable under ERISA." *Burkett v. Heritage Corp*., No. 1:22-CV-405-HAB, 2023 WL 4579953, at *3 (N.D. Ind. July 18, 2023); *see also Goist v. Coca-Cola Co*., No. 1:10-CV-1576-MHS, 2010 WL 11597138, at *8 (N.D. Ga. Oct. 5, 2010) (dismissing fiduciary breach claim where complaint included "no allegation of an intent to deceive").

plead the "who, what, when, where, and how" required by the Rule.  *See In re Coca-Cola Enterprises Inc.,* 2007 WL 1810211, at *7; Opp. 21–25; SAC ¶¶ 98–119.

Indeed, the SAC attacks ***accurate*** statements reflecting the Plan's terms.  For example, Plaintiffs' contention that unspecified documents contained a "deceptive and misleading relative value disclosure" because they compared a SLA to a JSA after deducting the Plaintiffs' QPSA charge from each benefit form is baseless and contradicts the Plan.  *Compare* SAC ¶ 110 *and* Opp. 24 *with* ECF Nos. 53-3 & 53-8 at § 4.2(a).  As they concede, Plaintiffs did not waive QPSA coverage.  *Id*. ¶ 79.  Thus, even if they selected a SLA, a QPSA charge would have been deducted from their monthly SLA payment for the time they had the pre-retirement QPSA benefit.  *See* ECF Nos. 53-3 & 53-8 at § 4.2(a).   And Plaintiffs' assertion the BAC misrepresented that Plaintiffs' JSAs were the actuarial equivalent of their SLAs similarly fails.  Opp. 23–24.  The SAC fails to plead how this is a misrepresentation where ERISA neither defines actuarial equivalent, nor requires specific assumptions to adjust a benefit, and Plaintiffs do not dispute their benefits were accurately calculated per the Plan's terms.  *See supra* I.(A).  Without a misrepresentation, and otherwise failing to satisfy Rule 9(b), this claim must be dismissed.

## CONCLUSION

In sum, the Court should reject Plaintiffs' invitation to play legislature or redraft the Plan and GRANT Defendants' Motion to Dismiss.

Dated: November 10, 2023         Respectfully submitted,

*/s/ Ashley F. Heintz*
Ashley F. Heintz
(Georgia Bar No. 325323)
John Heron IV
(Georgia Bar No. 193170)
JONES DAY
1221 Peachtree Street, N.E.
Suite 400
Atlanta, GA 30361
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
aheintz@jonesday.com
jheron@jonesday.com

***Attorneys for Defendants***

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts approved by Local Rule 5.1(C).

Dated:  November 10, 2023

<div style="margin-left: 40%;">

*/s/ Ashley F. Heintz*
Ashley F. Heintz
(Georgia Bar No. 325323)

*An Attorney for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to all attorneys of record.

Dated:  November 10, 2023

<div align="right">

*/s/ Ashley F. Heintz*
Ashley F. Heintz
(Georgia Bar No. 325323)

*An Attorney for Defendants*

</div>