### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

**WILLIAM DRUMMOND and RICHARD ODOM, individually and on behalf of all others similarly situated,**

    **Plaintiffs,**

**v.**

**SOUTHERN COMPANY SERVICES, INC., THE SOUTHERN COMPANY PENSION PLAN; and THE BENEFITS ADMINISTRATION COMMITTEE,**

    **Defendants.**

**CIVIL ACTION FILE**

**No. 2:23-CV-00174-SCJ**

### ORDER

This matter appears before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. No. [53].[1]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers referenced are those imprinted by the Court's docketing software.

## I.     BACKGROUND[2]

This is a putative class action by William Drummond and Richard Odom (collectively, "Plaintiffs"), who are vested participants of a tax-qualified ERISA[3] pension plan (the "Plan")[4] sponsored by Defendant Southern Company Services, Inc. ("Southern Co.") and administered by Defendant Benefits Administration Committee ("Committee," and, with Southern Co., collectively, "Defendants"). Doc. No. [51], ¶¶ 6, 18–20, 22. Plaintiffs are retired and receive pension benefits under the Plan in the form of a joint and survivor annuity ("JSA")—i.e., a default annuity for married participants under which the participant receives pension benefits during his or her life and, upon the participant's death, any surviving spouse receives a (pre-elected) percentage (50%, 75%, or 100%) of the participant's pension benefits. Id. ¶¶ 5, 18–19. [5] Odom's and Drummond's

---

[2]  The factual allegations presented below are compiled from the Second Amended Complaint (Doc. No. [51]) and considered true, for the purposes of analyzing the instant Motion.

[3] ERISA refers to the Employee Retirement Income Security Act of 1974.

[4]  The Plan, titled the Southern Company Pension Plan, which was established in 1949 and is maintained pursuant to a "Plan Document," provides retirement benefits to "substantially all" employees of Southern Co. and its affiliates after they complete one year of service. Doc. No. [51], ¶ 21. Plaintiffs name the Plan as a "nominal defendant" in this action. Id.

[5] Drummond elected a 100% survivor benefit and Odom elected 50%. Doc. No. [51], ¶¶ 18–19.

2

benefits included a qualified pre-retirement survivor annuity ("QPSA")—i.e., "a life annuity paid to the surviving spouse of a vested pension-plan participant who dies before retirement"—which is mandatory, unless waived by both spouses in writing. Doc. No. [51], ¶¶ 2, 6, 79. A pension plan may apply a charge to account for the cost of the QPSA. See id. ¶¶ 8, 80–83. Neither Odom nor Drummond waived the QPSA, and each incurred a charge for the QPSA benefit under the Plan. Id. ¶¶ 81, 86, 89.

To calculate pension benefits for a given JSA, a pension plan applies a QPSA charge (assuming no QPSA waiver),[6] which is determined based on actuarial assumptions, to the plan participant's accrued benefits to generate a single life annuity ("SLA")[7] reduced by the QPSA charge (i.e., a "reduced SLA") and then, again based on actuarial assumptions, converts the reduced SLA into a JSA. See Doc. No. [51], ¶ 8. ERISA qualified pension plans must provide a JSA that is the "'actuarial equivalent' of 'a single annuity for the life of the participant.'" Id. (quoting 29 U.S.C. § 1055(d)). This requirement ensures that "all

---

[6] While many pension plans do not apply a QPSA charge, the Plan does. Doc. No. [51], ¶¶ 83–84.

[7] An SLA is the default retirement benefits provision for unmarried plan participants. Doc. No. [51], ¶ 38. An SLA provides the plan participant monthly retirement benefits solely for his or her life. Id.

else being equal," a JSA has the same economic value as an SLA. Id. ¶¶ 9, 10. To achieve this equivalence, the plan's actuarial assumptions consider "both an interest rate [to account for the time value of money] and the expected longevity [based on a mortality table[8] providing the life expectancy for a person of a given age] of a participant and [his or her] spouse." Id. ¶ 9.

Of the four counts asserted in the Second Amended Complaint, the first two (Counts I and II) are by Odom individually and on behalf of those similarly situated and the remaining two (Counts III and IV) are by Plaintiffs individually and on behalf of those similarly situated.

In Count I, Odom alleges that the Plan calculated his JSA using an unreasonable and outdated mortality table not reflecting current mortality expectations, which renders his JSA less than the actuarial equivalent of an SLA, in violation of 29 U.S.C. § 1055(a)–(e). Doc. No. [51], ¶¶ 54, 60, 64. Odom asserts that if his JSA had been calculated using "reasonable actuarial assumptions," [9]

_____

[8]  Mortality tables present mortality trend analyses for actuarial purposes. Id., ¶ 47. The Society of Actuaries periodically publishes mortality tables. See id., ¶¶ 47, 52.

[9]  As an example of "reasonable actuarial assumptions," Odom points to the actuarial assumptions reflecting the Society of Actuary's "recent analyses" that are published and routinely updated by the Treasury Department (through application of 26 U.S.C. § 417(e)). Doc. No. [51], ¶ 63.

his monthly retirement benefits would be "significantly more" than those he currently receives. Id. ¶ 64.

In Count II, Odom alleges that the Plan violates the anti-forfeiture requirement of 29 U.S.C. § 1053(a), because the Plan's use of outdated and unreasonable mortality assumptions in converting Odom's reduced SLA to his JSA has resulted in Odom receiving JSA benefits that are below the actuarial equivalent of his "normal retirement benefits" (i.e., his SLA unreduced by the QPSA charge). Doc. No. [51], ¶¶ 71–74. Odom contends that if the Plan had instead used reasonable actuarial assumptions (e.g., those published by the Treasury Department) to convert his unreduced SLA into his JSA, he would receive $93 more per month in retirement benefits. Id. ¶ 74. The underpayment of benefits under the Plan, Odom alleges, is a forfeiture of his accrued benefits. Id. ¶¶ 73–74.

Under ERISA, "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age[.]" 29 U.S.C. § 1053(a). Treasury regulations provide that "adjustments in excess of reasonable actuarial reductions[] can result in rights being forfeitable." 26 C.F.R. § 1.411(a)-4(a). Based on these provisions, Odom theorizes that his receipt of less

5

than the actuarial equivalent value of his normal retirement benefits is a forfeiture in violation of § 1053(a).

In Count III, Plaintiffs allege that the Plan violates § 1053(a) by applying an excessive and unreasonable QPSA charge (i.e., one "based on outdated, unreasonable, and inappropriate mortality assumptions"), resulting in an impermissible forfeiture of their accrued benefits. Doc. No. [51], ¶¶ 80, 85, 88. Plaintiffs rely on Treasury Department regulations (i.e., 26 C.F.R. §§ 1.401(a)-20 Q/A-21 and 1.411(a)-4(a))) to assert that a "QPSA charge must be reasonable to avoid a forfeiture." Id. ¶¶ 81–83. According to Plaintiffs, based on outdated actuarial assumptions, the Plan imposed a 0.875% per-year QPSA charge (starting at age 50 until retirement) against Drummond's accrued benefits and a 0.75% per-year QPSA charge against Odom's accrued benefits; had the Plan used reasonable actuarial assumptions, Plaintiffs allege, Drummond's QPSA charge would have been no more than 0.3% per year and Odom's would have been no more than approximately 0.6%. Id. ¶¶ 86–87, 89. Plaintiffs contend that the unreasonable QPSA charge resulted in Drummond forfeiting over $19,000 in lifetime retirement benefits and in lowering Odom's monthly pension by at least 2%. Id. ¶ 87. Thus, Plaintiffs claim, the Plan violates ERISA's non-forfeiture

6

provision by providing JSA benefits below the actuarial equivalent of their normal retirement benefits. Id. ¶¶ 88, 91–92.

Lastly, in Count IV, Plaintiffs allege that the Committee breached its fiduciary duties in violation of 29 U.S.C. § 1104. Plaintiffs allege that the Committee was a "named fiduciary" within the meaning of § 1102(a) and has the authority to control and manage the operation and administration of the Plan. Id. ¶ 98. According to Plaintiffs, the Committee has a duty to "communicate with Plaintiffs and other Plan participants honestly and accurately"; to ensure that all benefits paid pursuant to the Plan conformed with ERISA's requirements and Treasury regulations; where the Plan's terms violate ERISA's provisions, to act in accordance with ERISA (rather than follow the Plan's terms) in calculating and paying benefits; and to treat all Plan participants equally and equitably. Id. ¶¶ 100–01, 103–04. Plaintiffs allege that the Committee violated these duties by: (1) reducing Plaintiffs' benefits by applying inaccurate and unreasonable actuarial assumptions; (2) misrepresenting (through inaccurate and misleading information) to Plaintiffs that their JSAs were the actuarial equivalent of their SLAs and failing to tell them that their JSAs were worth less than their SLAs; (3) failing to ensure that the benefits paid to Plaintiffs conformed with the

7

requirements of §§ 1053 and 1055; (4) failing to update the actuarial assumptions applied to Plaintiffs' benefits; and (5) following Plan terms that violate §§ 1053 and 1055. Id. ¶ 115. The Committee's misrepresentations and failures, Plaintiffs allege, prevented Plaintiffs from adequately assessing the form of benefits that best met their retirement needs and resulted in them receiving less than the actuarial equivalent of their vested accrued benefits. Id. ¶¶ 113, 115.

Plaintiffs' Second Amended Complaint, among other things, seeks declaratory relief, an Order requiring the Plan's reformation, a disgorgement of Defendants' profits resulting from violations of §§ 1053(a) and 1055(a)–(e), and restitution to Plaintiffs. Id. at 48–52.

Defendants seek dismissal of the Second Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Counts I through III fail to state a viable claim for the asserted ERISA violations and Count IV fails to state a viable claim for a breach of fiduciary duty stemming from acts and omissions concerning the asserted ERISA violations because ERISA does not require that the Plan employ reasonable actuarial assumptions to convert one benefit form (e.g., an SLA) to another (e.g., a JSA). Doc. No. [53]. Plaintiffs oppose Defendants' Motion to Dismiss. Doc. No. [56].

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 570 (2007). Labels, legal conclusions, and formulaic recitations of the elements of the cause of action "will not do." Twombly, 550 U.S. at 555; see also Debose v. Univ. of S. Fla., 178 F. Supp. 3d 1258, 1266 (M.D. Fla. 2016) (noting that in its review of the complaint's facts, the court does assume the truth of legal conclusions and eliminates allegations that are merely legal conclusions). To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal

theory." <u>Fin. Sec. Assurance, Inc. v. Stephens</u>, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (cleaned up).

## III.    ANALYSIS

### A.    <u>Improper JSA Conversion in Violation of 29 U.S.C. § 1055 (Count I) and Forfeiture in Violation of § 1053 from JSA Conversion (Count II) and from Improper QPSA Charge (Count III)</u>

Counts I, II, and III of the Second Amended Complaint are each premised on the reasoning that the Plan's use of allegedly outdated and unreasonable actuarial assumptions to calculate JSA benefits violates ERISA, albeit on separate grounds. Specifically, in Count I, Odom alleges that the Plan's use of outdated and unreasonable actuarial assumptions deprives him of JSA benefits that are the actuarial equivalent of his SLA in violation of § 1055(d). In Count II, Odom alleges that his failure to receive JSA benefits that are the actuarial equivalent of his unreduced SLA result in a forfeiture of a nonforfeitable benefit in violation of § 1053(a). And in Count III, Plaintiffs allege that the Plan's use of unreasonable actuarial assumptions in calculating the QPSA charge deducted from their JSA benefits resulted in a forfeiture in violation of § 1053(a).

Defendants challenge the premise underlying Counts I–III, arguing that neither Odom nor Drummond can sustain his ERISA violation claims based on the Plan's use of allegedly outdated and unreasonable actuarial assumptions

10

because none of the relevant provisions (§§ 1055(d), (e), (i) and 1053(a)) define "actuarial equivalent" or require a benefits plan to use any specific (e.g., "reasonable") actuarial assumptions when converting one benefit form to another. Doc. No. [53-1], 16–17, 21. Defendants contend that Congress's omission of a requirement for the use of specific actuarial assumptions from the statutory provisions at issue here is not inadvertent—as evidenced by the fact that other ERISA provisions (e.g., § 1055(g), concerning lump sum payment calculations) expressly require the use of specified mortality tables—and, thus, should be given "full effect." Id. at 18–19.

Defendants maintain that Count II and III also fail because § 1053(a) prohibits the forfeiture of Plaintiffs' pension benefits as calculated under the Plan's terms rather than guarantee them a particular amount or method of calculating plan benefits. Doc. No. [53-1], 19–21. Because Plaintiffs receive the monthly pension benefits they are entitled to under the Plan's terms, Defendants argue, their forfeiture claims fails because they are based on nothing more than Plaintiffs' disagreement with the Plan's method for calculating their JSA benefits (i.e., their challenge to the mortality table used under the Plan's terms as part of the assumptions applied to calculate Odom's and Drummond's benefits). Id.

11

Plaintiffs contend that to meet § 1055(d)'s "actuarial equivalent" requirement, benefits plans must apply *reasonable* actuarial assumptions; otherwise, plan sponsors would have unfettered discretion to apply any actuarial assumptions—thereby rendering § 1055(d)'s actuarial equivalence requirement meaningless. Doc. No. [56], 14–15 (emphasis added). Relying on <u>Urlaub v. CITGO Petroleum Corp.</u>, No. 21-CV-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022), for its interpretation of the "plain meaning" of the term "actuarial equivalence," Plaintiffs maintain that "[o]nly accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two" (i.e., produce actuarial equivalence). Doc. No. [56], 16 (quoting <u>Urlaub</u>, 2022 WL 523129 at *6).

Regarding the forfeiture claims (i.e., Counts II and III), Plaintiffs argue that § 1053(a) prohibits Defendants from "reducing a participant's benefits beyond what is actuarially reasonable." Doc. No. [56], 16. Specifically, Plaintiffs rely on a Treasury regulation, which provides that "adjustments [to plan benefits] in excess of reasonable actuarial reductions[] can result in rights being forfeitable." <u>Id.</u> at 17 (quoting 26 C.F.R. § 1.411(a)-4(a)). As it concerns a QPSA charge, ERISA provides that "[a] plan may take into account in any equitable manner (as

determined by the Secretary of the Treasury) any increased costs resulting from providing . . . a [QPSA.]" § 1055(i). And, Plaintiffs' argue, while Treasury regulations permit a "charge for the QPSA that *reasonably* reflects the cost of providing the QPSA," a charge more than what is actuarially reasonable to account for that cost results in a forfeiture because it represents an adjustment in "excess of reasonable actuarial reductions[.]" Doc. No. [56], 20 (quoting § 1.410(a)-2 Q/A-21 (first quote) (emphasis added) and § 1.411(a)-4(a) (second quote)).

To address this dispute, the Court must determine whether ERISA requires that a plan use "reasonable" actuarial assumptions to calculate a QPSA charge and, ultimately, to convert an SLA to a JSA. In interpreting a statute, the court "start[s] with the text." Heyman v. Cooper, 31 F.4th 1315, 1318 (11th Cir. 2022) (cleaned up). Where a statute leaves a term undefined, the court "presume[s] that Congress intended the words used in the text to be given their common, ordinary meaning" and, thus, the "plain meaning" of the term "controls unless the language is ambiguous or leads to absurd results." United States v. Vineyard, 945 F.3d 1164, 1171 (11th Cir. 2019) (cleaned up).

### *1.    Count I*

ERISA does not define the term "actuarial equivalent," nor does it require, as Plaintiffs concede (Doc. No. [56], 14), the use of any specific actuarial assumptions to calculate JSA benefits. The Eleventh Circuit has not had occasion to define the term, and while other circuit courts have, none have does so in the context of JSA benefits calculations. See Adams v. U.S. Bancorp, 635 F. Supp. 3d 742, 748 n.3 (D. Minn. 2022) (collecting cases). A "majority of [the district] courts that have considered the issue have concluded that § 1055(d) requires the use of reasonable assumptions when measuring actuarial equivalence." Hamrick v. E.I. du Pont de Nemours & Co., No. 23-CV-238-JLH, 2024 WL 359240, at *4 (D. Del. Jan. 31, 2024), R&R adopted, 2024 WL 2817966 (D. Del. June 3, 2024) (collecting cases and holding that the plaintiff had stated a claim for a § 1055(d) violation by alleging that the plan at issue used unreasonable actuarial assumptions).

However, as explained below, this Court agrees with the reasoning of Belknap v. Partners Healthcare Sys., Inc., 588 F. Supp. 3d 161, 175, 177 (D. Mass. 2022), appeal dismissed *sub nom.* Belknap v. Mass Gen. Brigham, Inc., No. 22-1188, 2022 WL 4333752 (1st Cir. Aug. 30, 2022), which held that "the calculation of actuarial equivalence under § 1054(c)(3) of ERISA [does not]

14

require the use of the use of "reasonable" assumptions[.]"[10] See also Reichert v. Bakery, Confectionary, Tobacco Workers and Grain Millers Pension Comm., No. 2:23-CV-12343, 2024 U.S. Dist. LEXIS 113803, at *5–6 (E.D. Mich. Apr. 17, 2024) (declining to read in a reasonableness requirement into the actuarial equivalence computation triggered by § 1055(d) because, considering that Congress included "reasonableness" requirements in other ERISA provisions and identified specific actuarial factors for calculating other benefits payments, its omission of the requirement from the § 1055(d) was intentional).

> The term "reasonable" appears throughout ERISA, but not in . . . the provision relevant here. There are no Treasury Department regulations that define "actuarial equivalence," at least in the context of annuity benefits. There is no clear appellate authority agreeing on a definition of "actuarial equivalence," or agreeing that it requires the use of "reasonable" actuarial assumptions.

588 F. Supp. 3d at 175. First, the omission of a reasonableness requirement is telling. "ERISA is a comprehensive and reticulated statute, which Congress adopted after careful study of private retirement pension plans." Alessi v.

---

[10]  Belknap addressed actuarial equivalence in the context of § 1054(c), an ERISA provision directed to JSA benefits for the purpose of early retirement. While that provision is not at issue here, like § 1055(d), it also requires actuarial equivalence between two forms of retirement benefits but does not define the term nor does it require the use of specific actuarial assumptions. Because of this commonality, the analysis of "actuarial equivalent" in the context of § 1054(c) applies equally to § 1055(d).

Raybestos-Manhattan, Inc., 451 U.S. 504, 510, (1981) (cleaned up). And Congress knew how to require that plans determine actuarial equivalence using reasonable assumptions or calculate benefits using specific assumptions. See Belknap, 588 F. Supp. 3d at 171 (noting ERISA's requirement that withdrawal liability (under 29 U.S.C. § 1393(a)(1)) be calculated using "actuarial assumptions and methods which, *in the aggregate are reasonable*"; that for plan funding purposes (under 29 U.S.C. § 1085a(c)(3)(A)), plans use "actuarial assumptions and methods . . . *each of which is reasonable*"; and that lump-sum benefits (under § 1055(g)) be calculated using "applicable mortality table and the applicable interest rate" that are specified elsewhere in the statute) (quoting the respective ERISA provisions referenced). However, none of the provisions at issue here provide that plans must determine actuarial equivalence using assumptions that are reasonable or using specified interest rates and mortality tables. Considering ERISA's careful and detailed drafting, "[g]enerally, courts must assume that any such omission from the text of ERISA is deliberate." Belknap, 588 F. Supp. 3d at 170.

Second, no controlling regulation provides persuasive guidance for interpreting § 1055(d) to require that the actuarial assumptions be reasonable. Plaintiffs reference 26 C.F.R. § 1.401(a)-11(b)(2), which provides that a JSA "must

be at least the actuarial equivalent of the normal form of life annuity" and explains that "[e]quivalence may be determined, on the basis of consistently applied reasonable actuarial factors," in support of their argument that § 1055(d) should be read to require the use of reasonable actuarial assumptions. Doc. Nos. [51], ¶ 10; [56], 14. However, this regulation is "not enforceable under ERISA." Belknap, 588 F. Supp. 3d at 173; see also 29 U.S.C. § 1202(c). And the Court declines to write into § 1055(d) a requirement that appears solely under a Tax Code regulation—a regulation, moreover, that § 1202(c) does not extend to ERISA.

Third, while courts appear to agree that the term "actuarial equivalent" has an "established meaning," they disagree over whether achieving that equivalence requires the use of reasonable actuarial assumptions. See Adams, 635 F. Supp. 3d at 749–50. According to the D.C. Circuit, "[t]wo modes of payment are actuarially equivalent when their present values are equal under a given set of actuarial assumptions." Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 440 (D.C. Cir. 2011) (providing established meaning of "actuarial equivalent"). Nothing in this meaning, however, expressly requires that the set of actuarial assumptions be *reasonable*. As Belknap notes, the courts that have required

17

reasonableness have done so in the context of statutory provision explicitly requiring it, based on non-applicable tax code provisions or regulations, or by applying the dictionary definition of "equivalent" to the term and requiring the use of reasonable actuarial assumptions to achieve equal value of benefits. Belknap, 588 F. Supp. 3d at 172–74. Moreover, unlike in Adams, 635 F. Supp. 3d at 746, 754, Plaintiffs do not allege that the industry practice is to apply reasonable assumptions to determine actuarial equivalence. Thus, the Court remains unpersuaded that the plain, established meaning of "actuarial equivalent" requires that the benefits calculations be conducted using reasonable actuarial assumptions.

Here, as in Belknap, "[t]he only relevant place where 'actuarial equivalence' is defined is in the Plan itself." 588 F. Supp. 3d at 175.[11] And Plaintiffs do not allege that the Plan's terms were not followed. Although Plaintiffs contend that Defendants should not have the discretion to define the term, in view of Congress's silence on that front and the absence of allegations

---

[11] The Court takes judicial notice of the two Plan Documents at issue (Doc. Nos. [53-3]; [53-8]) because, as Plaintiffs concede (Doc. No. [56], 30 n.5), they are referenced in the Second Amended Complaint, are central to Plaintiffs' claims, and Plaintiffs do not dispute their authenticity. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018).

18

indicating an industry practice of imputing a reasonableness requirement, the Court finds no basis to read in such a requirement. Accordingly, Count I of the Second Amended Complaint fails to state a claim for relief.

### 2.    Counts II and III

Plaintiffs also fail to state a claim for forfeiture under Counts II and III. As discussed above, § 1055(d) does not demand that actuarial equivalence between an SLA and a JSA be achieved through reasonable actuarial assumptions. Thus, Plaintiffs cannot maintain their forfeiture claims, premised as they are on the Plan's failure to use reasonable actuarial assumptions in calculating a QPSA charge (a step in determining JSA benefits) and calculating JSA benefits overall. Plaintiffs argue that Count II states a claim because § 1053(a) requires that an "employee's rights to his normal retirement benefits" under a pension plan be "nonforfeitable" and 26 C.F.R. § 1.411(a)-4(a) provides that "adjustments in excess of reasonable actuarial reductions[]"—that is, use of unreasonable actuarial assumptions in calculating JSA benefits—"can result in rights being forfeitable."[12] With regard to forfeiture based on an unreasonable QPSA charge

---

[12]  Pursuant to 29 U.S.C. § 1202(c), regulations prescribed under 26 U.S.C. §§ 410(a), 411, and 412 (which include 26 C.F.R. § 1.411) apply to the portions of ERISA that are relevant here.

(Count III), Plaintiffs contend that 26 C.F.R. § 1.401(a)-20 Q/A-21 calls for a QPSA charge that "reasonably reflects the cost of providing the QPSA." Plaintiffs argue that § 1.401(a)-20 Q/A-21 is controlling on the question of requiring reasonableness for a QPSA charge because § 1055(i) provides that a "plan may take into account any equitable manner (as determined by the Secretary of the Treasury) any increased costs resulting from providing . . . a [QPSA]." And, Plaintiffs theorize, because Defendants apply unreasonable actuarial assumptions to calculate a QPSA charge, a forfeiture results.

As an initial matter, the Court is not persuaded that § 1.401(a)-20 Q/A-21 was promulgated pursuant to § 1055(i). That regulation merely provides that "[a] charge for the QPSA that reasonably reflects the cost of providing the QPSA will not fail to satisfy section 411 [of the Tax Code] even if it reduces the accrued benefit." It does not reflect a determination by the Secretary of the Treasury that only those QPSA charges that *reasonably* reflect the cost of providing a QPSA are allowable.[13] Thus, the Court declines to borrow a reasonableness requirement from § 1.401(a)-20 Q/A-21 and attach it to the actuarial assumptions

---

[13] Moreover, "[s]ection 1.401 is not enforceable under ERISA, regardless." <u>Adams</u>, 635 F. Supp. 3d at 752.

undergirding the calculations of JSA benefits. Moreover, "§ 1053(a) prohibits forfeitures of vested rights," and while "the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, . . . it does not guarantee a particular amount or a method for calculating the benefit." Alessi, 451 U.S. at 512. Plaintiffs do not allege that the Plan violates the vesting standards of § 1053(a). While they challenge the Plan's terms concerning the calculation of their vested pension rights, Plaintiffs makes no allegation that their benefits calculations are noncompliant with the Plan's terms. Plaintiffs JSA benefits vested under the terms of the Plan, and absent an allegation that the Plan's terms were not followed in calculating benefits payments, in view of Alessi, Plaintiffs cannot state a claim for forfeiture based on the Plan's alleged use of unreasonable actuarial assumptions in calculating Odom's JSA benefits (Count II) or in calculating Odom's and Drummond's QPSA charges (Count III).

**B.    Breach of Fiduciary Duty in Violation of 29 U.S.C. § 1104(a) (Count IV)**

Plaintiffs' breach of fiduciary duty allegations are appropriately channeled into three theories: (1) the Committee's failure to amend the Plan to correct its use of allegedly inaccurate and unreasonable actuarial assumptions; (2) the

21

Committee's application of Plan terms that allegedly violated ERISA; and (3) the Committee's alleged misrepresentations of actuarial equivalence in reporting Plan benefits to participants. Doc. No. [53-3], 22–23. At bottom, Plaintiffs' theories of the Committee's fiduciary duty breaches rest on the presence of an underlying ERISA violation. However, because, as detailed above, "Plaintiffs failed to plead an ERISA violation [under § 1055 or § 1053], they cannot sustain a claim for breach of fiduciary duty based on an ERISA violation." <u>Reichert</u>, 2024 U.S. Dist. LEXIS 113803, at *6–7.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. [53]) is **GRANTED**. Plaintiffs' Second Amended Complaint (Doc. No. [51]) is **DISMISSED**.

As no other matter remains outstanding, the Clerk is **DIRECTED** to **TERMINATE** this action.

**IT IS SO ORDERED** this ___30th___ day of July, 2024.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

22